ROBERT P. VARIAN (SBN 107459)
STEPHEN M. KNASTER (SBN 146236)
LILY I. BECKER (SBN 251145)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759
Emails:  rvarian@orrick.com
        sknaster@orrick.com
        lbecker@orrick.com

JAMES P. CUSICK (PRO HAC VICE PENDING)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY  10103-0001
Telephone:   (212) 506-5000
Facsimile:   (212) 506-5151
Email:   jcusick@orrick.com

Counsel For Defendants
Morgan Stanley & Co., Incorporated and
Credit Suisse Securities (USA) LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CENTURY ALUMINUM COMPANY SECURITIES LITIGATION | Lead Case No.  3:09-cv-01001-SI <br><br> <u>CLASS ACTION</u> <br><br> **UNDERWRITERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:       Friday March 5, 2010 <br> Time:       9:00 a.m. <br> Court:      10, 19th Floor <br> Judge:      Honorable Susan Illston |

1

# TABLE OF CONTENTS

2

Page

3

NOTICE OF MOTION AND MOTION ................................................................................ 1

4

ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3)) ......................................... 1

5

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

6

INTRODUCTION AND OVERVIEW OF KEY FACTS ................................................. 2

7

ARGUMENT ...................................................................................................................... 6

8

9

I.      PLAINTIFFS' SECTION 12(A)(2) CLAIM AGAINST THE UNDERWRITERS
        MUST BE DISMISSED ............................................................................................ 6

10

        A.      The Section 12(a)(2) Claim Fails For Lack Of Standing And Subject
                Matter Jurisdiction .................................................................................... 6

11

12

                1.      Plaintiffs Lack Standing Because They Cannot Allege They
                        Purchased In The Offering ............................................................. 7

                2.      Plaintiffs' Claim Should Also Be Dismissed For Lack of Subject
                        Matter Jurisdiction ........................................................................ 9

13

14

        B.      The Section 12(a)(2) Claim Fails Because The Underwriters Were Not
                Statutory "Sellers".................................................................................. 10

15

16

        C.      Plaintiffs Cannot Plead Facts Showing That The Underwriters Breached
                Their Duty Of "Due Diligence" .............................................................. 11

17

18

        D.      Plaintiffs' Section 12(a)(2) Claim Should Also Be Dismissed Because It
                Fails To Satisfy The Controlling Pleading Standards ............................. 12

19

                1.      Plaintiffs Cannot State A Section 12(a)(2) Claim Based On A Gross
                        Mischaracterization Of The Underlying Documents ..................... 13

                2.      Plaintiffs Fail To Plead Specific And Plausible Facts ................. 16

20

II.     PLAINTIFFS' SECTION 15 CLAIM FOR "CONTROL PERSON" LIABILITY
        AGAINST THE UNDERWRITERS MUST BE DISMISSED..................................... 18

21

22

        A.      Plaintiffs' Section 15 Claim Fails For Lack Of Standing And Subject
                Matter Jurisdiction .................................................................................. 18

23

24

        B.      Plaintiffs Cannot Otherwise Plead A Section 15 Claim Against The
                Underwriters............................................................................................. 19

25

CONCLUSION ................................................................................................................. 20

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## <u>CASES</u>

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .................................................................................. 16, 17, 18

*Bell Atlantic Corp. v. Twombly ,*
550 U.S. 544 (2007).............................................................................................. 16, 17

*Bosse v. Crowell Collier and MacMillian,*
565 F.2d 602 (9th Cir. 1977)...................................................................................... 9

*Brody v. Homestore, Inc.,*
2003 WL 22127108 (C.D. Cal. Aug. 8, 2003).................................................... 8, 19

*Conley v. Gibson,*
355 U.S. 41 (1957)..................................................................................................... 17

*Corrie v. Caterpillar, Inc.,*
503 F.3d 974 (9th Cir. 2007)...................................................................................... 9

*Craftmatic Sec. Litig. v. Kraftsow,*
890 F.2d 628 (3d Cir. 1989)...................................................................................... 10

*Gustafson v. Alloyd Co., Inc.,*
513 U.S. 561 (1995)................................................................................................ 7, 8

*Hertzberg v. Dignity Partners, Inc.,*
191 F.3d 1076 (9th Cir. 1999).................................................................................... 7

*Hollinger v. Titan Capital Corp.,*
914 F.2d 1564 (9th Cir. 1990)................................................................................... 19

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000)................................................................................... 19

*In re Azurix Corp. Sec. Litig.,*
198 F. Supp. 2d 862 (S.D. Tex. 2002),
*aff'd,* 332 F.3d 854 (5th Cir. 2003) ........................................................................... 8

*In re Brooks Automation, Inc. Sec. Litig.,*
2007 WL 4754051 (D. Mass. Nov. 6, 2007)............................................................. 8

*In re Calpine Corp. Sec. Litig.,*
288 F. Supp. 2d 1054 (N.D. Cal. 2003) ................................................................... 14

*In re Countrywide Fin. Corp. Sec. Litig.,*
588 F. Supp. 2d 1132  (C.D. Cal. 2008).................................................................... 12

*In re Exodus Commc'n, Inc. Sec. Litig.,*
2005 WL 1869289 (N.D. Cal. Aug. 5, 2005)........................................................... 19

*In re Exodus Commc'n, Inc. Sec. Litig.,*
2006 WL 2355071 (N.D. Cal. Aug. 14, 2006)..................................................... 9, 19

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*In re Fuwei Films Sec. Litg.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) ................................................................. 7, 8

*In re Impax Labs., Inc. Sec. Litig.*,

5

    2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ............................................. 9, 10, 19

6

*In re Infonet Servs. Sec. Litig.*,
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) ................................................................. 13

7

8

*In re JDN Realty Corp. Sec. Litig.*,
    182 F. Supp. 2d 1230 (N.D. Ga. 2002) ................................................................... 8

9

*In re Late Fee and Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) ............................................................ 11, 16

10

11

*In re Levi Straus & Co. Sec. Litig.*,
    527 F. Supp. 2d 965 (N.D. Cal. 2007) .................................................................... 7

12

*In re MusicMaker.com Sec. Litig.*,
    2001 WL 34062431 (C.D. Cal. June 4, 2001) ................................................... 7, 19

13

*In re Silicon Graphics, Inc. Sec. Litig.*,

14

    183 F.3d 970 (9th Cir. 1999) ................................................................................ 13

15

*In re Sonus Networks, Inc. Sec. Litig.*,
    2006 WL 1308165 (D. Mass May 10, 2006) ......................................................... 10

16

*In re Stac Elec. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .................................................................... 13, 17, 18

17

18

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ................................................................. 10, 19

19

*In re Worlds of Wonder,*
    35 F.3d 1407 (9th Cir. 1994) ................................................................................ 12

20

*In re WRT Energy Sec. Litig.*,
    1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) ......................................................... 18

21

22

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ............................................................................................... 9

23

*Lopes v. Vieira,*
    488 F. Supp. 2d 1000 (E.D. Cal. 2007) .................................................................. 8

24

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ................................................................................ 10

25

*Murphy v. Hollywood Entm't Corp.,*

26

    1996 WL 393662 (D. Or. May 9, 1996) .................................................................. 8

27

*Newcal Indus., Inc. v. Ikon Office Solution,*
    513 F.3d 1038 (9th Cir. 2008) .............................................................................. 16

28

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
     96 F.3d 1151 (9th Cir. 1996)................................................................................ 19

*Pinter v. Dahl*,
     486 U.S. 622 (1988) .......................................................................................... 10

*Port Dock & Stone Co. v. Oldcastle Northeast, Inc.*,
     507 F. 3d 117 (2d Cir. 2007)............................................................................. 17

*Rubke v. Capitol Bancorp Ltd.*,
     460 F. Supp. 2d 1124 (N.D. Cal. 2006),
     *aff'd*, 551 F.3d 1156 (9th Cir. 2009) ................................................................. 19

*Safe Air for Everyone v. Meyer*,
     373 F.3d 1035 (9th Cir. 2004)............................................................................ 9

*Shaw v. Digital Equip. Corp.*,
     82 F.3d 1194 (lst Cir. 1996) ............................................................................. 10

*Sprewell v. Golden State Warriors*,
     266 F.3d 979 (9th Cir. 2001).................................................................... 11, 16

*Steckman v. Hart Brewing, Inc.*,
     143 F.3d 1293 (9th Cir. 1998)........................................................................... 13

*Steel Co. v. Citizens for a Better Env't.*,
     523 U.S. 83 (1998) ............................................................................................. 9

*Warren v. Fox Family Worldwide, Inc.*,
     328 F.3d 1136 (9th Cir. 2003)........................................................................... 13

*Wenger v. Lumisys, Inc.*,
     2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................... 18

*Wilson v. Saintine Exploration & Drilling Corp.*,
     872 F.2d 1124 (2d Cir. 1989)........................................................................... 10

## **STATUTES**

Securities Act of 1933, 15 U.S.C. § 77 et seq.
     Section 10(b) ........................................................................................................ 3
     Section 11 ............................................................................................................. 3
     Section 12(a)(2)............................................................................................ *passim*
     Section 15.................................................................................................... *passim*

Securities Act of 1934
     Section 20(a) ................................................................................................. 3, 19

8 Delaware C.
     Section 141(a) .................................................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

## OTHER AUTHORITIES

2 Fletcher Cyc. Corp.
    Section 495 .................................................................................................................... 19

5A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1357 (3d ed. 2009) ........................................ 16

## RULES

Federal Rules of Civil Procedure
    Rule 8 .......................................................................................................... 1, 16
    Rule 9(b)........................................................................................................ *passim*
    Rule 12(b)(1)............................................................................................... 1, 3, 6
    Rule 12(b)(6)................................................................................................ *passim*

Federal Rules of Evidence
    Rule 201 ...................................................................................................... 13

1

## NOTICE OF MOTION AND MOTION

2

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

   PLEASE TAKE NOTICE THAT on Friday, March 5, 2010 at 9:00 a.m. or as soon

4

thereafter as counsel may be heard, in the courtroom of the Honorable Susan Illston, United

5

States District Judge, at Courtroom 10, 450 Golden Gate Avenue, San Francisco, California,

6

94102, defendants Morgan Stanley & Co., Incorporated ("Morgan Stanley") and Credit Suisse

7

Securities (USA) LLC ("Credit Suisse") (collectively, the "Underwriters"), will and hereby do

8

move this Court for an order granting their motion to dismiss plaintiffs' Consolidated Class

9

Action Complaint dated November 17, 2009 (the "Complaint"). The Underwriters' motion seeks

10

dismissal of all claims against them and is brought pursuant to Rules 8, 9(b), 12(b)(1) and

11

12(b)(6) of the Federal Rules of Civil Procedure.

12

   This motion is based upon this Notice and the accompanying Memorandum of Points and

13

Authorities; the Request for Judicial Notice ("RJN") and the Declaration of Jill Ford ("Ford

14

Decl.") filed herewith; the papers on file in the action; the argument of counsel at the hearing; and

15

other such matters as may be considered by the Court.

16

## ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(A)(3))

17

18

   1.    Whether plaintiffs' claim under Section 12(a)(2) of the Securities Act of 1933 (the

19

"Securities Act") should be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to

20

plead that any plaintiff purchased stock in the secondary offering, or that plaintiffs have standing.

21

   2.    Whether plaintiffs' claim under Section 12(a)(2) of the Securities Act should be

22

dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

23

   3.    Whether plaintiffs' claim under the Section 12(a)(2) of the Securities Act should

24

be dismissed pursuant to Rule 12(b)(6) because the Complaint does not -- and cannot -- plead that

25

the Underwriters were statutory "sellers."

26

   4.    Whether plaintiffs' claim under Section 12(a)(2) of the Securities Act claim should

27

be dismissed pursuant to Rule 12(b)(6) because plaintiffs fail to allege facts sufficient to state a

28

-1-

1  claim that the Underwriters breached their duty to conduct a reasonable due diligence

2  investigation.

3           5.        Whether plaintiffs' claim under Section 12(a)(2) of the Securities Act should be

4  dismissed because it is contradicted by the documents upon which it purports to be based.

5           6.        Whether plaintiffs' claim under the Section 12(a)(2) of the Securities Act should

6  be dismissed pursuant to Rule 12(b)(6) because the Complaint fails to comply with the pleading

7  standards imposed under the Supreme Court's decisions in *Bell Atlantic v. Twombly* and *Ashcroft*

8  *v. Iqbal*, Ninth Circuit and Northern District cases regarding conclusory pleading, and Rule 9(b).

9           7.        Whether plaintiffs' claim under Section 15 of the Securities Act should be

10 dismissed pursuant to Rule 12(b)(6) because the Complaint fails to plead a primary violation,

11 standing or subject matter jurisdiction, or that the Underwriters were control persons.

12

13                   **MEMORANDUM OF POINTS AND AUTHORITIES**

14

15

16               **INTRODUCTION AND OVERVIEW OF KEY FACTS**[1]

17           Plaintiffs' claims against Credit Suisse and Morgan Stanley arise out of a January 29,

18 2009 secondary "shelf" offering by Century Aluminum Company (the "Offering"), which was

19 made on the basis of a prospectus supplement filed by Century Aluminum on January 29, 2009

20 (the "Prospectus Supplement"), at a price of $4.50 per share.  The Prospectus Supplement

21 included financial statements prepared by Century Aluminum and audited and/or reviewed by

22 Deloitte & Touche LLP, and incorporated a series of Securities and Exchange Commission

23 ("SEC") filings previously made by the Company.  Credit Suisse and Morgan Stanley served as

24 the underwriters for the Offering, and played no other role.

25

26

27        [1] Additional background facts relevant to this motion are set forth in the motion to dismiss
   filed by Century Aluminum and several of its officers and directors, in which the Underwriters
28 hereby join and incorporate by reference.

UNDERWRITERS' NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
(CASE NO. 3:09-CV-01001-SI)

Although the Complaint repeatedly refers to a claim under Section 11 of the Securities Act (*see, e.g.*, ¶¶ 3, 16, 25, 58), no such claims are actually asserted against any defendant. Similarly, plaintiffs at times suggest that the Underwriters are included in the Section 10(b) and 20(a) claims against Century Aluminum Company and the individual defendants (*see, e.g.*, Compl. at pp. 48:26, 49:23), but their claims against the Underwriters are in fact confined to Section 12(a)(2) of the Securities Act.[2]  As demonstrated below, the Section 12(a)(2) claim suffers from layers of fatal defects, beginning with plaintiffs' lack of standing to assert them.

While the Complaint is hardly a model of clarity,[3] this much is unmistakably clear:  None of the individual plaintiffs alleges -- or <u>can</u> allege -- that he purchased stock from the Underwriters, in the Offering or at the Offering price.  The best plaintiffs can do is to assert that they "purchased Century Aluminum securities pursuant and/or traceable to" the Offering.  *See, e.g.*, Compl. ¶¶ 16, 28-31, 147, 148.  Under settled law, that is not enough.

The remedy provided in Section 12 is confined to those who purchased in the Offering from the defendant at the Offering price.  Anyone who purchased outside the initial distribution, at a price other than the Offering price, cannot satisfy an essential element of Section 12(a)(2) and lacks standing.  Accordingly, the claims asserted by plaintiffs should be dismissed both under Rule 12(b)(6), and under 12(b)(1) for lack of subject matter jurisdiction.

Because the "pursuant to and/or traceable to" pleading formulation adopted in the Complaint is legally insufficient, plaintiffs' claims fail as a matter of law on that ground alone.  Nor are plaintiffs' problems on this point a matter of pleading formalities.  The Complaint and the

---

[2] Four claims are alleged in the Complaint but only two claims are pled against the Underwriters -- a Section 12(a)(2) and Section 15 claim.  Plaintiffs do not assert a Section 11 claim against any defendant.  Although there are brief references to Section 11 scattered in the Complaint at various points, there are no charging allegations pleading a Section 11 claim.  Nor do plaintiffs allege a Section 10(b) claim against the Underwriters.  The Underwriters are not included in the definition of Exchange Act Defendants (¶¶ 45-46), and the Section 10(b) charging allegations (¶¶ 133-37) do not incorporate ¶¶ 48-50 of the Complaint, which name the Underwriters.

[3] Not only is the Complaint unable to make a coherent presentation regarding the claims asserted and the defendants sued on such claims, plaintiffs cannot manage to allege the correct Offering price on a consistent basis.  Indeed, they only get it right once -- in paragraph 79, which acknowledges that the stock issued in the Offering was sold at $4.50 per share.  The other allegations incorrectly state that the price was <u>$8.00</u> per share.  *See, e.g.*, Compl. ¶¶ 13, 86, 119.

1    individual certifications it incorporates affirmatively establish that plaintiffs: (1) purchased shares

2    on dates other than the January 29, 2009 date of the Offering, and (2) at prices other than the

3    $4.50 Offering price.

4         Plaintiffs' failure to purchase in the Offering -- and the concomitant lack of standing and

5    subject matter jurisdiction -- dispose of their only claim for primary liability against the

6    Underwriters as a matter of law.  Moreover, those fatal defects cannot be cured via an amended

7    pleading.  Although additional grounds are therefore unnecessary, the claims asserted against

8    Credit Suisse and Morgan Stanley are also fatally defective because the Underwriters are not

9    statutory sellers for purposes of Section 12.  Under controlling Supreme Court and Ninth Circuit

10   law, the Underwriters cannot be liable unless they either:  (1) passed title to plaintiffs; or

11   (2) directly solicited their individual purchases.  Plaintiffs do not -- and cannot -- plead that Credit

12   Suisse or Morgan Stanley did either.  Like the absence of standing and subject matter jurisdiction,

13   this shortcoming is fundamental and irremediable.

14        Plaintiffs' assertion that Credit Suisse and Morgan Stanley breached their "duty to make a

15   reasonable and diligent investigation of the statements contained in the Registration Statement"

16   (Compl. ¶ 146) is similarly unavailing.  It is based entirely on a single disclosure event -- the

17   GAAP reporting of a transaction in which Century Aluminum terminated forward contracts with

18   its largest shareholder and affiliate (Glencore International AG) for the sale of aluminum.  *See,*

19   *e.g.*, Compl. ¶¶ 81, 84, 113.  The facts and details of the transaction were fully disclosed in the

20   Prospectus Supplement for the Offering and the Company's prior SEC filings (*see, e.g.*, Compl.

21   ¶¶ 62, 63), but one aspect of the manner in which Century Aluminum accounted for it was later

22   determined to have been in error.

23        Although Century Aluminum's outside auditors had reviewed the accounting for the

24   transaction in three quarterly reviews, and in connection with the Offering itself, the Company

25   later determined that the appropriate treatment under GAAP was to account for it as a financing

26   activity, rather than as an operating activity.  Century Aluminum's statement of cash flows for the

27   nine months ending September 30, 2009 was restated to reflect that reclassification -- and that

28   adjustment <u>alone</u>.  RJN, Ex. B.  The Complaint nevertheless engages in a wholesale misportrayal

1   of the restatement, and attempts to use it as a springboard for claiming that Credit Suisse and

2   Morgan Stanley breached their due diligence duties in connection with the Offering.  Compl.

3   ¶ 146.  That effort fails on multiple grounds.

4         It is not the role of an underwriter to audit or review financial statements, make fine-tuned

5   interpretations of GAAP, or second-guess accountants on esoteric accounting issues, and

6   plaintiffs make no attempt to allege how or why Credit Suisse or Morgan Stanley could or should

7   have done so in this case.  As the Prospectus Supplement makes clear, Century Aluminum's

8   financial statements were audited and reviewed by highly qualified independent auditors, who

9   consented to use of their name in connection with the Offering.  Perhaps not surprisingly, the

10  Complaint makes no attempt to allege how or why it was unreasonable for the Underwriters to

11  rely on Deloitte & Touche with respect to GAAP determinations in Century Aluminum's

12  financial statements.

13        The claims asserted against the Underwriters should also be dismissed because, in

14  addition to the fundamental substantive problems outlined above, the Complaint fails to satisfy

15  the applicable pleading standards.  Plaintiffs' reliance on allegations that are directly contradicted

16  by the documents on which they purportedly are based is the most egregious shortcoming, but the

17  Complaint falls equally short of the specificity and plausibility requirements imposed by the

18  controlling case law and Rule 9(b).

19        Plaintiffs' repeated attempts to portray a single GAAP revision as the correction of a

20  massive inflation of the cash on Century Aluminum's balance sheet, and the Company's liquidity,

21  is directly refuted by the 8-K that they cite as "support" for such claims.  *See* Compl. ¶ 84; RJN

22  Ex. B.  As the 8-K describing the restatement makes clear, there was no change or adjustment to

23  the cash reflected on Century Aluminum's balance sheet.  Nor was there any change to cash at the

24  beginning of the reporting period, or cash at the end of the period, or the net change in cash

25  during the period.  Those numbers were exactly the same before and after the restatement.  All

26  that changed was the GAAP classification between cash from operating activities and cash from

27  financing activities.  RJN Ex. B.  Because the documents control over the Complaint's

28  mischaracterizations, the Complaint's overreaching assertions can simply be disregarded.

1    In addition to being based on a false premise that is exposed by the underlying documents,

2    plaintiffs' conclusory allegations do not come close to supplying the specificity and plausibility

3    required by (1) the Supreme Court's decisions in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*,

4    and (2) Ninth Circuit and Northern District cases regarding conclusory pleading. Rule 9(b),

5    which applies by virtue of the Complaint's unadorned assertions that the Underwriters knew that

6    the Prospectus Supplement contained false statements (¶¶ 55 and 57), imposes additional burdens

7    that plaintiffs also fail to meet. Those pleading defects permeate the entirety of the Complaint's

8    allegations regarding plaintiffs' purchases and the Underwriters' role in the Offering.

9    The Complaint's "control person" claim under Section 15 of the Securities Act is

10   condemned by the same infirmities, and others. It must be dismissed for lack of standing, the

11   absence of subject matter jurisdiction, and failure to allege a primary violation. The Section 15

12   claim further fails because plaintiffs make no attempt to plead that the Underwriters were (or

13   could possibly have been) control persons.

## **ARGUMENT**

### I.   PLAINTIFFS' SECTION 12(a)(2) CLAIM AGAINST THE UNDERWRITERS MUST BE DISMISSED

#### A.   The Section 12(a)(2) Claim Fails For Lack Of Standing And Subject Matter Jurisdiction

20   Plaintiffs do not and cannot allege facts that would establish their standing to pursue a

21   claim under Section 12(a)(2). The Complaint's bare allegations that plaintiffs purchased shares

22   "pursuant to" or "traceable to the offering" are, as a matter of law, insufficient to establish

23   standing for a 12(a)(2) claim under the Securities Act. Nor can the failure to make a legally

24   sufficient allegation be corrected, because it is clear from the face of the pleadings that none of

25   the four plaintiffs purchased shares in the Offering or at the Offering price. The Section 12 claim

26   should therefore be dismissed with prejudice under Rule 12(b)(6). Moreover, absent standing,

27   plaintiffs fail to present a justiciable case or controversy. The 12(a)(2) claim should therefore be

28   dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction as well.

1      **1.      Plaintiffs Lack Standing Because They Cannot Allege They**
            **Purchased In The Offering**

2

3          Section 12(a)(2) liability does not extend to shares purchased in the open market.  Only

4   plaintiffs who purchased in a public offering have standing to assert a claim.  *Gustafson v. Alloyd*

5   *Co., Inc.*, 513 U.S. 561, 578 (1995) (only investors who purchased shares in an offering have

6   standing to sue under Section 12(a)(2)); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081

7   (9th Cir. 1999).  *See also In re MusicMaker.com Sec. Litig.*, 2001 WL 34062431, at *15 (C.D.

8   Cal. June 4, 2001) (dismissing Section 12(a)(2) claim because plaintiffs failed to allege they

9   purchased shares in the offering); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 445

10  (S.D.N.Y. 2009) ("[L]iability pursuant to section 12(a)(2) only attaches to plaintiffs who

11  purchased their shares directly in the initial public offering, and not the so-called 'aftermarket.'")

12  (citing *Gustafson*).

13         Plaintiffs do not claim that they purchased in the Offering, or from the Underwriters, or at

14  the Offering price.  They allege only that they purchased "pursuant and/or traceable to the

15  offering."  *See, e.g.*, Compl. ¶¶ 28-31.  Such allegations are insufficient to state a claim or to

16  confer standing.  *See, e.g.*, *In re Levi Straus & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D.

17  Cal. 2007).

18         Importantly, the Complaint does not merely fail to plead the facts necessary to confer

19  standing or state a claim; it conclusively demonstrates that plaintiffs <u>cannot</u> plead them.  The

20  pleading itself acknowledges that the Offering occurred on January 29, 2009 (¶¶ 17, 55 & 70), at

21  $4.50 per share (¶ 79).  Those indisputable facts are also clear from the Prospectus Supplement

22  (RJN Ex. A), which indicates on its face that it was filed on January 29, 2009, and that the price

23  to the public was $4.50 per share.  The date and price are further confirmed in the Ford

24  Declaration at ¶¶ 4-6.

25         Rather than showing that plaintiffs purchased on January 29 at $4.50, the certifications

26  incorporated by reference in paragraphs 28, 29, 30 and 31 of the Complaint show that <u>none</u> of the

27  plaintiffs purchased a single share on that date or at that price:

28

| PLAINTIFF | DATE(S) | PURCHASE PRICE(S) |
|---|---|---|
| Stuart Wexler | 10/23/08 | $10.14 |
| | 01/28/09 | $ 4.56 |
| | 01/30/09 | $ 3.56 |
| | | |
| Peter Abrams | 01/16/09 | $ 8.08 |
| | 01/28/09 | $ 5.60 |
| | 01/30/09 | $ 3.79 |
| | 02/10/09 | $ 4.10 |
| | 02/26/09 | $ 2.46 |
| | 02/27/09 | $ 2.26 |
| | | |
| Eric Petzchke | 01/28/09 | $ 4.52 |
| | | |
| Cory McClellan | 01/28/09 | $ 4.0950 |
| | 01/30/09 | $ 4.1000 |
| | 01/30/09 | $ 4.0500 |
| | 02/26/09 | $ 2.4388 |

Plaintiffs' certifications[4] thus affirmatively establish that all of their purchases were made outside the Offering, at prices other than the Offering price. Accordingly, the 12(a)(2) claim must be dismissed for lack of standing. *See, e.g., Gustafson*, 513 U.S. at 578; *In re Fuwei*, 634 F. Supp. 2d at 445. [5]

---

[4] Courts routinely evaluate a plaintiff's certification for purposes of establishing standing. *See, e.g., In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051, at *5 (D. Mass. Nov. 6, 2007) (examining certification to determine standing under Sections 11 and 12); *In re JDN Realty Corp. Sec. Litig.*, 182 F. Supp. 2d 1230, 1244 (N.D. Ga. 2002) (examining certification for Section 11 standing). Plaintiffs expressly reference (and thereby incorporate) in the Complaint their certifications that are attached to the Complaint. *See* Compl. ¶¶ 28-31.

[5] *See also Brody v. Homestore, Inc.,* 2003 WL 22127108, at *4 (C.D. Cal. Aug. 8, 2003) (dismissing Section 12 claim because complaint failed to allege that purchase was made in initial public offering); *Murphy v. Hollywood Entm't Corp.,* 1996 WL 393662, at *3 (D. Or. May 9, 1996) (dismissing Section 12 claim because plaintiffs "purchased their shares in the after-market," not initial offering); *Lopes v. Vieira,* 488 F. Supp. 2d 1000, 1024 (E.D. Cal. 2007) (granting motion to dismiss because complaint failed to allege that purchase was made in initial public offering); *In re Azurix Corp. Sec. Litig.,* 198 F. Supp. 2d 862, 892-93 (S.D. Tex. 2002), *aff'd,* 332 F.3d 854 (5th Cir. 2003) (dismissing Section 12(a)(2) claim because purchase was not made within initial public offering).

1

2

**2.      Plaintiffs' Claim Should Also Be Dismissed For Lack of Subject Matter Jurisdiction**

3    In addition to mandating dismissal pursuant to Rule 12(b)(6), plaintiffs' lack of standing

4  requires dismissal with prejudice under 12(b)(1) for lack of subject matter jurisdiction.

5  Moreover, the Court may consider evidence beyond the Complaint without converting the motion

6  into one for summary judgment in evaluating a motion to dismiss under Rule 12(b)(1). *See, e.g.,*

7  *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007); *Safe Air for Everyone v. Meyer*,

8  373 F.3d 1035 (9th Cir. 2004). Because plaintiffs in this action fail to establish standing to assert

9  a 12(a)(2) claim, they cannot establish the minimum constitutional requirements to satisfy subject

10  matter jurisdiction.

11    For subject matter jurisdiction to exist pursuant to Article III, § 2, there must be a

12  justiciable "case" or "controversy." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

13  When a plaintiff cannot allege standing, he or she fails to present a justiciable case or

14  controversy. *See, e.g., Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998) ("Standing to

15  sue is part of the common understanding of what it takes to make a justiciable case.").

16    Because plaintiffs have no standing under Section 12(a)(2), the only claim for primary

17  liability asserted against the Underwriters must be dismissed with prejudice for lack of subject

18  matter jurisdiction. *See, e.g., In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943 (N.D. Cal.

19  Apr. 17, 2008) (dismissing federal securities claims for lack of subject matter jurisdiction because

20  plaintiffs could not establish standing); *In re Exodus Commc'n, Inc. Sec. Litig.*, 2006 WL

21  2355071 (N.D. Cal. Aug. 14, 2006) (granting motion to dismiss for lack of subject matter

22  jurisdiction where plaintiffs did not establish standing to assert a Section 11 claim); *Bosse v.*

23  *Crowell Collier and MacMillian*, 565 F.2d 602, 606 (9th Cir. 1977) (affirming dismissal of

24  complaint for failure to state a claim for lack of subject matter jurisdiction where plaintiffs lacked

25  standing to sue for alleged antitrust violations).

26    Furthermore, in a class action, a lead or named plaintiff "must show that it personally has

27  been injured, not that injury has been suffered by other, unidentified members of the class to

28  which it belongs and which it purports to represent." *In re Impax*, 2008 WL 1766943, at *6

OHS West:260793958.4                    -9-              UNDERWRITERS' NOTICE OF MOTION AND MOTION TO
                                                          DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
                                                                (CASE NO. 3:09-CV-01001-SI)

1    (internal quotations and citations omitted).  That other unidentified members of the class might

2    have purchased in the Offering is thus irrelevant.  *Id.*  Plaintiffs must show that they themselves

3    have a justiciable case or controversy under the statute.  Their inability to do so here mandates

4    dismissal because they cannot satisfy fundamental constitutional requirements for subject matter

5    jurisdiction.

6
            **B.      The Section 12(a)(2) Claim Fails Because The Underwriters Were Not**
7                     **Statutory "Sellers"**

8            Plaintiffs' Section 12(a)(2) claim also fails because the Underwriters were not statutory

9    "sellers" of any shares in the Offering to any plaintiff.  Section 12(a)(2) provides that any person

10   who "offers or sells a security" by means of a materially misleading prospectus shall be liable "to

11   the person purchasing such security from him."  *See* 15 U.S.C. § 77l(a)(2).

12           The Supreme Court has held that for a defendant to be held liable he or she must pass title

13   directly to the purchaser.  *Pinter v. Dahl*, 486 U.S. 622, 643, n.21 (1988) (a defendant is liable

14   only to the "buyer's immediate seller … a buyer cannot recover against his seller's seller").

15           Although in certain limited circumstances not present here liability can extend beyond

16   those who passed title, the fact that a defendant's activities were a "substantial factor" in a sale of

17   securities is insufficient to convert him into a "seller."  *Id.* at 649-50.  Rather, "[t]he purchaser

18   must demonstrate direct and active participation in the solicitation of the immediate sale."

19   *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 636 (3d Cir. 1989).  Performance of services

20   common to offerings in general thus does not bring a defendant within the definition of a seller.

21   *Id. See also Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 537 (9th Cir. 1989); *Wilson*

22   *v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124 (2d Cir. 1989).[6]

23

24           [6] *See also Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (lst Cir. 1996) (dismissing
     12(a)(2) complaint, finding that "sparse" allegations that defendants were "involve[d] in
25   preparing the registration statement, prospectus, and other 'activities necessary to effect the sale
     of the securities to the investing public'" do not show solicitation); *In re Sonus Networks, Inc.*
26   *Sec. Litig.*, 2006 WL 1308165, at *10 (D. Mass May 10, 2006) (finding allegations that
     defendants assisted in "drafting, producing, revising, reviewing, approving and/or executing"
27   documents insufficient to establish seller status); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp.
     2d 1096 (D. Nev. 1998) (holding that mere involvement in the preparation of a registration
28   statement is insufficient to state a claim under Section 12).

1    Here, plaintiffs do not allege any Underwriter sold shares or otherwise passed title to

2    them, and their Complaint and incorporated certifications establish that the Underwriters did not

3    do so.  Nor do plaintiffs allege that they had any contact or dealings of any kind with the

4    Underwriters, much less that their sales were solicited by the Underwriters.  To the contrary, the

5    Complaint (¶¶ 17, 55, 70) accurately states that the Underwriters sold stock to the public -- not

6    plaintiffs -- in an offering that was completed on January 29, 2009.  The Complaint merely

7    alleges that Credit Suisse and Morgan Stanley performed the ordinary services routinely provided

8    by underwriters in all offerings, including that they "served as financial advisors," and

9    "participat[ed]" in the "preparation" and "dissemination" of the Offering documents.  *See, e.g.,*

10   Compl. ¶¶ 49, 55, 144.  Accordingly, the Section 12(a)(2) claim against the Underwriters fails as

11   a matter of law for these reasons as well.

12          C.      **Plaintiffs Cannot Plead Facts Showing That The Underwriters**
                    **Breached Their Duty Of "Due Diligence"**
13

14          The Complaint's naked assertion that the underwriters breached "a duty to make a

15   reasonable and diligent investigation" of the truth of the statements in the Prospectus Supplement

16   (¶ 146) is also woefully insufficient.  Plaintiffs do not, and cannot, plead any facts in support of

17   this conclusion, which is contradicted by the Complaint and the documents from which it

18   purportedly is derived.  That fundamental shortcoming is independently fatal to the

19   Section 12(a)(2) claim.  *See, e.g., In re Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953,

20   957 (N.D. Cal. 2007) ("[c]onclusory allegations of law … are insufficient to defeat a motion to

21   dismiss"); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

22          The misstatement alleged in the Complaint is generated by an esoteric GAAP

23   interpretation that is far outside the expertise or role of Underwriters.  Underwriters are not

24   accounting experts, and do not audit, review or "certify" financial statements for compliance with

25   GAAP.  That is the province of accountants and outside auditors.  As the Prospectus Supplement

26   makes clear, the financial statements used in the Offering and the internal controls used to

27   generate them were audited and/or reviewed by Deloitte & Touche LLP, which consented to use

28   of its name as an expert in connection with the Offering.  RJN Ex. A at S-53, B-6.  The fact that

1    expert accountants failed to identify the GAAP error that later led to the restatement makes clear

2    that it was rooted in complex accounting principles well beyond the scope and expertise of due

3    diligence by the Underwriters.

4        Plaintiffs thus do not -- and cannot -- plead anything that might support the wholly

5    conclusory assertion that the Underwriters violated a duty to conduct a reasonable and diligent

6    investigation.  *See, e. g,, In re Worlds of Wonder*, 35 F.3d 1407, 1421 (9th Cir. 1994) ("It is

7    absurd…for Plaintiffs to suggest that the other defendants, who are not accountants possibly

8    could have known of any mistake by [the auditors].  Therefore, even if there are errors in the

9    financial statements, no defendant except [the auditors] can be liable under section 11 on that

10   basis").  The Complaint makes no attempt of any kind to plead how or why the Underwriters

11   purportedly breached their duties, or why it was not reasonable to rely on Deloitte & Touche in

12   discharging those duties.

13       Moreover, even if the Court were to disregard plaintiffs' repeated allegations that the

14   Underwriters are liable because they breached their duty to conduct reasonable due diligence, and

15   treated due diligence solely as an affirmative defense, dismissal would still be appropriate

16   because the defense would be established on the face of the pleadings.  As a matter of law, the

17   Underwriters were entitled to rely on the accountants' review of the financial statements used in

18   the Offering.  *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 1174-75,

19   1182 (C.D. Cal. 2008):  "Underwriter Defendants have a due diligence defense on the face of the

20   [Complaint] as a matter of law.  The defense only covers <u>accounting-related</u> allegations in one

21   year.  This is because underwriters may reasonably rely on auditors' statements, absent red flags

22   that the underwriters were in a position to see."  (Emphasis in original)

23
24       **D.     Plaintiffs' Section 12(a)(2) Claim Should Also Be Dismissed Because It
                  Fails To Satisfy The Controlling Pleading Standards**

25       Beyond the core substantive defects demonstrated above, the Complaint should be

26   dismissed because it fails to satisfy a series of pleading standards imposed by two major Supreme

27   Court decisions, controlling Ninth Circuit and Northern District precedents, and Rule 9(b).  The

28

1    Complaint's repeated mischaracterizations of the Prospectus Supplement and 8-K describing the

2    restatement must be disregarded in favor of the underlying documents -- which make clear that

3    the claims against the Underwriters are based on a premise that is fundamentally false.  Even if

4    they might otherwise satisfy the substantive elements of a Section 12(a)(2) claim, plaintiffs'

5    assertions regarding their purchases and the Underwriters' role in the Offering would be

6    insufficient because they lack the specificity and plausibility required by the applicable pleading

7    standards.

8                    1.    **Plaintiffs Cannot State A Section 12(a)(2) Claim Based On A**
                          **Gross Mischaracterization Of The Underlying Documents**
9

10           Plaintiffs cannot evade dismissal by mischaracterizing the documents cited in the

11   Complaint.  It is fundamental that the <u>documents</u>, not the Complaint's characterization of them,

12   control for purposes of evaluating a motion to dismiss under Rule 12(b)(6).  *See, e.g., Steckman v.*

13   *Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *Warren v. Fox Family Worldwide,*

14   *Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *In re Infonet Servs. Sec. Litig.*, 310 F. Supp. 2d 1080,

15   1087-88 (C.D. Cal. 2003).  Allegations that conflict with the underlying documents are therefore

16   disregarded.  *See, e.g., In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).  These

17   rules are particularly important here, because the Complaint's allegations regarding the financial

18   restatement and the Prospectus Supplement far exceed the bounds of zealous advocacy, and paint

19   a picture that bears little resemblance to the facts properly before the Court on this motion.[7]

20           The Complaint is founded upon the premise that (1) the Prospectus Supplement and the

21   financial statements it incorporated portrayed Century Aluminum as a "cash rich" company with

22   excellent liquidity that was well-positioned to weather a difficult business environment, and

23   (2) the subsequent restatement radically altered the Company's financial position with respect to

24

25

26   _____

     [7] Documents referenced in the Complaint, or filed with the SEC, may be judicially noticed by
     the Court and considered on a motion to dismiss.  *See*  Fed. R. Evid. 201; *In re Silicon Graphics,*
27   *Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (holding it was proper for district court to
     consider SEC filings incorporated by reference into the complaint)  The Underwriters have
28   concurrently filed a Request for Judicial Notice ("RJN"), contemporaneously with this motion.

1  cash and liquidity.  Neither component can be reconciled with the Prospectus Supplement and 8-

2  K describing the restatement.

3        Plaintiffs repeatedly characterize the restatement as working a massive reduction in the

4  cash reflected on Century Aluminum's balance sheet, as well as the cash at the end of the

5  reporting period, and that there was a massive ($924 million) reduction in the net change in cash

6  flows.  *See, e.g.,* Compl. ¶¶ 8, 10, 13, 18, 77, 80, 83, 116.  In fact, the March 2, 2009 8-K

7  quantifying the differences between the financial statements as originally reported, and as

8  restated, shows that cash at the end of the reporting period and net change in cash before and after

9  the restatement were exactly the same.  RJN Ex. B.  The only change is to an internal

10 characterization regarding "operating activities" and "financing activities."  *Id.*  Moreover, the

11 details of the transaction that was the subject of the adjustment were fully disclosed in the

12 Prospectus Supplement.  *See, e.g.,* RJN Ex. A, at S-5 - S-6, S-37 - S-39, S-41 - S-44.

13       Plaintiffs' various allegations that Century Aluminum's financial statements "inflated" the

14 Company's cash flows (*e.g.*, Compl. ¶¶ 10, 13), and portrayed the Company as "liquid and cash

15 rich" (*e.g.*, ¶¶ 8, 18), and that the Company duped investors who later learned that its cash,

16 "access to cash, and cash on hand" had been dramatically overstated (*e.g.*, ¶ 116), are thus

17 baseless.

18       The restatement reclassified an amount reported on the operating activity line to the

19 financing activity line.  That is all.  RJN Ex. B; Compl. ¶ 113.  The reclassification did not affect

20 or diminish the Company's cash flows in any way whatsoever.  Rather, it occurred entirely within

21 the cash flow statement, and did not alter the overall numbers.  The total cash flows -- and the

22 ending cash number and the cash on the balance sheet -- were the same before and after the

23 restatement.  Plaintiffs' assertions are thus refuted by the very SEC filings upon which they

24 purportedly are based, and should therefore be disregarded.  *See, e.g., In re Calpine Corp. Sec.*

25 *Litig.*, 288 F. Supp. 2d 1054, 1078 (N.D. Cal. 2003).

26       Plaintiffs' allegations that the Company allegedly "inflated" its statement of cash flows in

27 connection with the January 2009 Offering (Compl. ¶ 113) in order to "lead investors . . . to

28 believe that the Company had sufficient resources to cover any shortfalls … allowing Century

Aluminum to easily weather the financial 'storm' which was ravaging the economy" (*id.* at ¶ 114)

are also directly contradicted by both the Prospectus Supplement, and by the Complaint itself.

The Prospectus Supplement repeatedly emphasized the disclosed material adverse effects that

declining aluminum prices and the global financial crisis were having on the Company's cash

flows, liquidity and financial position.  It also specifically warned that actions to reduce costs

would be necessary in order to generate have the liquidity required to operate through 2009, and

that there could be no assurance such actions would be sufficient.  In addition to reporting large

losses, and pointedly emphasizing liquidity concerns,[8] the Prospectus Supplement warned that the

global financial crisis was taking a serious toll on Century Aluminum's access to credit, and that

the Company's credit rating had been reduced by two credit rating agencies.  RJN Ex. A, at S-14,

S-18.

Perhaps most importantly, the Prospectus Supplement specifically warned that the

downturn in aluminum prices "significantly reduced the amount of cash available to meet [the

Company's] current obligations and fund [its] long-term business strategies." *Id.*, at S-18.  It also

explicitly stated: "Because our U.S. operations are not cash flow positive … the Company will

need sources of liquidity other than from its operations to fund operations and investments." *Id.*

at S-2.  Such pointed warnings and disclosures eviscerate plaintiffs' assertions that Century

Aluminum portrayed itself as a cash rich company with ample liquidity, or that it was well-

positioned to ride out any financial storm.

Indeed, the Complaint (¶ 69) <u>itself</u> acknowledges that the Prospectus Supplement

contained disclosures that refute the premise on which it is based, including that the Company

would be required to take "a number of drastic actions," such as granting its controlling

shareholder more voting shares, shutting down the Ravenwood aluminum smelting plant and

---

[8] *See, e.g.*, RJN Ex. A at S-2 ("If prices remain at current levels or continue to decline, we will have to take additional action to reduce costs, including significant curtailment of our operations, in order to have the liquidity required to operate through 2009, and there can be no assurance that these actions will be sufficient."); at S-13 ("Recent declines in aluminum prices have adversely affected our financial position and results of operations and could result in a curtailment of operations"); S-18 ("A continued downturn in primary aluminum prices may force further curtailment of all or a portion of our operations at one or more facilities.").

1   laying off 120 employees, reducing overall staffing by 13%, and curtailing production and

2   development of facilities at another plant.  The Complaint (¶ 70) further notes that the Prospectus

3   Supplement disclosed that "[a]s a result of all these economic pressures, Century Aluminum was

4   forced to seek an additional influx of cash …" through a public offering of stock.[9]

5                    **2.      Plaintiffs Fail To Plead Specific And Plausible Facts**

6          As demonstrated above, both the face of the pleadings and plaintiffs' certifications

7   demonstrate that they did not purchase in the Offering, and thus preclude any supported or

8   plausible implications to the contrary.  Nor do plaintiffs plead any facts that might support the

9   conclusion that the Underwriters were statutory sellers, or that they failed to conduct adequate

10  due diligence in connection with the Offering.  Again, the Complaint and underlying documents

11  demonstrate that any inference to that effect is both unsupported and unsupportable.  Conclusory

12  assertions to the contrary are insufficient to state a claim against the Underwriters.

13         "[C]onclusory allegations of law, unwarranted deductions of fact, or unreasonable

14  inferences are insufficient to defeat a motion to dismiss."  *Sprewell*, 266 F.3d at 988; *In re Late*

15  *Fee*, 528 F. Supp. 2d at 957.  While factual allegations are generally taken as true, that is not a

16  license to rely on allegations or inferences that are unreasonable.  *See Newcal Indus., Inc. v. Ikon*

17  *Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008); *see also* 5A Charles Alan Wright &

18  Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2009) (noting that courts, when

19  examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions,"

20  "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping

21  legal conclusions cast in the form of factual allegations").

22

23  _____

24         [9] The allegations in the Complaint are plainly contradictory; parts of the Complaint include
    allegations that investors believed the Company was "cash rich," yet other parts discuss the
    Company's difficulties due to the downturn in the economy.  *Compare* ¶ 18 (alleging investors
25  invested "believing that the Company was liquid and cash rich") and ¶ 83 ("shareholders and
    potential investors in Century Aluminum were being told that the Company was cash rich") *with*
26  ¶ 61 ("in mid-2008 Century Aluminum found itself in debt to the tune of over three quarters of a
    billion dollars" to Glencore) and ¶¶ 66, 68 (allegations relating to the Company's losses).  Thus,
27  not only do the judicially noticeable documents undermine plaintiffs' baseless theory of the case,
    their own Complaint refutes their central claim that the Company was telling investors it was
28  "cash rich."

These foundational rules were reaffirmed and expanded upon by the Supreme Court's landmark decisions in *Bell Atlantic Corp. v. Twombly* , 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In *Twombly*, the Court held that Rule 8 of the Federal Rules of Civil Procedure require a plaintiff to plead facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Only a complaint that pleads sufficient facts to state a claim for relief "that is plausible on its face" may avoid dismissal for failure to state a claim.  *Id.* at 570.[10]  To determine whether Section 12 claims contain enough factual support to meet the "plausibility" standard, *Iqbal* instructs that a court should begin by identifying pleadings that, because they are no more than "conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950-51.  The Court should then consider whether the remaining fact-based allegations "are not merely consistent with the conclusion that the defendant violated the law, but  . . . actively and plausibly suggest that conclusion." *Port Dock & Stone Co. v. Oldcastle Northeast, Inc.*, 507 F. 3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 557).

Moreover, plaintiffs' allegations that the Underwriters "knew" of the alleged accounting error and intentionally failed to correct it (Compl. ¶¶ 55, 57, 146) "sound in fraud," and the Complaint thus must also comply with the heightened requirements of Rule 9(b), notwithstanding the fact that Section 12(a)(2) does not require scienter.  *See, e.g., In re Stac*, 89 F.3d at 1405-06 (finding Rule 9(b) applies to a Securities Act claim where it is "grounded in fraud").

The Complaint utterly fails to plead the requisite "specific" and "plausible" <u>facts</u> in support of plaintiffs' conclusory assertions.  First, the Complaint does not come close to pleading facts showing that any plaintiff purchased in the Offering, from the Underwriters and at the $4.50 Offering price.  Plaintiffs offer only the non-specific and legally insufficient conclusion that they purchased "pursuant to" or "traceable" to the Offering.  Second, plaintiffs fail to plead facts demonstrating that the Underwriters were "statutory" sellers.  The Complaint pleads no facts that

[10] In abolishing the "no set of facts" standard enunciated in *Conley v. Gibson*, 355 U.S. 41 (1957), the Court noted that this language has been "questioned, criticized and explained away long enough" and is "best forgotten as an incomplete negative gloss" on the pleading standard. *Twombly*, 550 U.S. at 562-63.

1    could possibly show that the Underwriters sold shares or passed title to any plaintiff, or that they

2    "solicited" plaintiffs' purchases.  Again, plaintiffs merely allege that the Underwriters

3    participated in the Offering process and the preparation of the Prospectus Supplement.  Third, the

4    Complaint's conclusory assertion that the Underwriters failed to conduct reasonable due diligence

5    because they did not uncover an esoteric accounting error that was passed on by the accountants

6    who reviewed the financial statements used in the Offering falls far short of the controlling

7    standards.

8            Plaintiffs' bare-bones accusations that the Underwriters *"were aware of"* (¶¶ 55, 57),

9    "knew of," or "should have known of" (¶ 146) the accounting error alleged but went forward with

10   the Offering anyway, are equally defective.  They fail for two essential reasons.

11           First, as noted above, these allegations "sound in fraud" and must be pled with

12   particularity under Rule 9(b).  *See, e.g., In re Stac.*, 89 F.3d at 1405-06.  The Complaint pleads no

13   facts at all regarding who supposedly had this knowledge, or how or when it was obtained.

14   Plaintiffs also do not (and cannot) plead with particularity how the Underwriters could have

15   possibly have detected an arcane accounting error, or why they would or should have second-

16   guessed Century Aluminum's accounting professionals and outside auditors.

17           Second, it is simply not "plausible" that the Underwriters would go forward with an

18   uncorrected Prospectus Supplement that already painted a gloomy picture all the while knowing

19   that the financial statements were misstated within.  *See Iqbal,* 129 S. Ct. at 1949-50.  *See also*

20   *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998) (rejecting argument that

21   underwriters were motivated to commit fraud in order to "get the underwriting business" for the

22   IPO and "pocket millions from the IPO proceeds as the lead underwriters"); *In re WRT Energy*

23   *Sec. Litig.*, 1999 WL 178749, at *9 (S.D.N.Y. Mar. 31, 1999) (finding no motivation to commit

24   fraud, noting "it would be unlikely for the Underwriter Defendants to risk their reputations in

25   order to generate fees likely amounting to only a small percentage of their annual revenues.")

26   (internal punctuation omitted).

27

28

II.   **PLAINTIFFS' SECTION 15 CLAIM FOR "CONTROL PERSON"
LIABILITY AGAINST THE UNDERWRITERS MUST BE DISMISSED**

A.   **Plaintiffs' Section 15 Claim Fails For Lack Of Standing And Subject
Matter Jurisdiction**

To state a claim for control person liability, a plaintiff must allege: (1) a primary violation

of the securities laws; (2) that the defendant exercised actual power or control over the primary

violator; and (3) that the defendant possessed the power to directly or indirectly control the

specific transaction that is the focus of the primary violation.[11]  *Howard v. Everex Sys., Inc.*, 228

F.3d 1057, 1065 (9th Cir. 2000); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d

1151 (9th Cir. 1996).  The Complaint does not come close to alleging a primary violation and

makes no pretense of attempting to allege either of the other two elements.

Because plaintiffs have failed to allege a primary violation of Section 12, their Section 15

claim must likewise be dismissed.  *Howard*, 228 F.3d at 1065 (holding that a primary violation of

the securities laws is required for control person liability); *Rubke v. Capitol Bancorp Ltd.*, 460 F.

Supp. 2d 1124, 1151 (N.D. Cal. 2006), *aff'd,* 551 F.3d 1156 (9th Cir. 2009) (dismissing Section

15 claim for failure to plead primary violation).

In addition, because plaintiffs do not have standing to assert a primary violation of the

securities laws against the Underwriters, they similarly lack standing to assert a claim for

secondary liability under Section 15.  *See In re MusicMaker.com*, 2001 WL 34062431 at *15;

*Brody*, 2003 WL 22127108, at *4.  Absent standing plaintiffs cannot demonstrate subject matter

jurisdiction.  *See In re Impax Labs.,* 2008 WL 1766943; *In re Exodus*, 2006 WL 2355071.

B.   **Plaintiffs Cannot Otherwise Plead A Section 15 Claim Against The
Underwriters**

Even if plaintiffs could show a primary violation, they do not -- and could not possibly --

plead facts demonstrating that the Underwriters were control persons.  In particular, plaintiffs do

not (and cannot) plead any facts demonstrating that the Underwriters possessed the power to

wield any control over the Company's stock offering or the issuer, Century Aluminum.  *Howard*,

---

[11] Controlling person analysis is the same under Section 15 of the 1933 Act and under Section
20(a) of the 1934 Act.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990).

1   228 F.3d at 1065; *In re Exodus Commc'n, Inc. Sec. Litig.*, 2005 WL 1869289, at *45 (N.D. Cal.

2   Aug. 5, 2005).  Underwriters do not control issuers.  Rather, the management of the Company and

3   its officers and directors control the affairs of the corporation.  See 8 Del. C. § 141(a); 2 Fletcher

4   Cyc. Corp. § 495.  Absent facts sufficient to plead control person liability as to the Underwriters,

5   the claim must be dismissed for this reason as well.  *See In re Stratosphere*, 1 F. Supp. 2d at 1122

6   (dismissing Section 15 claim against underwriters for failure to plead sufficient facts that

7   underwriters were control persons, where plaintiffs alleged underwriters had "constant access" to

8   executives and a "close association" to the Company).

9

10                              **<u>CONCLUSION</u>**

11        The core defects discussed above are both fundamental and irremediable.  Accordingly,

12   the Complaint should be dismissed with prejudice.

13   Dated: January 15, 2010              ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15

16              By:  _____ */s/ Robert P. Varian*_____
                                   Robert P. Varian

17                              Attorneys for Defendants
18              MORGAN STANLEY & CO., INCORPORATED
                AND CREDIT SUISSE SECURITIES (USA) LLC

19

20

21

22

23

24

25

26

27

28

OHS West:260793958.4              -20-        UNDERWRITERS' NOTICE OF MOTION AND MOTION TO
                                              DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
                                              (CASE NO. 3:09-CV-01001-SI)