1    PILLSBURY WINTHROP SHAW PITTMAN LLP
     BRUCE A. ERICSON (SBN 76342)
2    bruce.ericson@pillsburylaw.com
     JEFFREY S. JACOBI (SBN 252884)
3    jeffrey.jacobi@pillsburylaw.com
     50 Fremont Street
4    Post Office Box 7880
     San Francisco, California 94120-7880
5    Telephone:  (415) 983-1000
     Facsimile:  (415) 983-1200
6
     Attorneys for Defendants
7    CENTURY ALUMINUM COMPANY,
     LOGAN W. KRUGER, MICHAEL A. BLESS, STEVE
8    SCHNEIDER, JOHN C. FONTAINE, JACK E.
     THOMPSON, PETER C. JONES, JOHN P. O'BRIEN,
9    WILLY R. STROTHOTTE, JARL BERNTZEN, WAYNE
     R. HALE, ROBERT E. FISHMAN and CATHERINE Z.
10   MANNING

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14   |                              | No. C-09-1001-SI
                                    | [Consolidated with Nos. C-09-1103-SI, C-
15   In re CENTURY ALUMINUM COMPANY | 09-1162-SI, C-09-1205-SI]
     SECURITIES LITIGATION
16                                  | **REPLY IN SUPPORT OF CENTURY
                                    | DEFENDANTS' MOTION TO
17                                  | DISMISS CONSOLIDATED CLASS
                                    | ACTION COMPLAINT**
18   |                              |
     This document relates to all actions. | Date:       April 23, 2010 (*see* Doc. 80)
19                                  | Time:       9 a.m.
                                    | Courtroom:  10, 19th Floor
20
                                      Filed herewith:
21
                                      Reply in Support of Century Defendants'
22                                    Request for Judicial Notice

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                          **Page**

3   I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................1

4   II.   ARGUMENT ........................................................................................................2

5         A.   The allegations of material falsity do not suffice ........................................2

6              1.   Plaintiffs ignore the Supreme Court's test for materiality.................2

7              2.   Plaintiffs' legal arguments on materiality lack merit ......................7

8         B.   The allegations of scienter do not suffice...................................................10

9              1.   The "core operations" inference has no application to
10                   Century's officers .............................................................................10

11             2.   Plaintiffs offer no scienter argument as to Century's outside
                     directors ............................................................................................13

12        C.   The allegations of loss causation do not suffice ........................................13

13        D.   The allegations of standing and statutory seller do not suffice ..................14

14        E.   The control person allegations do not suffice............................................14

15  III.  CONCLUSION ..................................................................................................15

16

17

18

19

20

21

22

23

24

25

26

27

28

702122127v4

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Akerman v. Oryx Communications, Inc.,*
       810 F.2d 336 (2d Cir. 1987) ......................................................................... 7

5

*Basic Inc. v. Levinson,*
       485 U.S. 224 (1988) ................................................................................... 2, 7

6

7

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan*
       *Chase Co.,*
       553 F.3d 187 (2d Cir. 2009) ...................................................................... 3, 7

8

9

*Garbini v. Protection One, Inc.,*
       49 Fed. App'x 169 (9th Cir. 2002) ................................................................ 8

10

*In re Atlas Mining Co., Sec. Litig.,*
       670 F. Supp. 2d 1128 (D. Idaho 2009) ......................................................... 8

11

12

*In re Charles Schwab Corp. Sec. Litig.,*
       27 F.R.D. 534 (N.D. Cal. 2009) .................................................................... 4

13

*In re Countrywide Fin. Corp. Sec. Litig.,*
       588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................ 4

14

15

*In re Daou Sys., Inc.,*
       411 F.3d 1006 (9th Cir. 2005) ............................................................ 3, 8, 13

16

*In re DDi,*
       No. CV 03-7063 NM,
       2005 WL 3090882 (C.D. Cal. July 21, 2005) .............................................. 8

17

18

*In re DVI Sec. Litig.,*
       249 F.R.D. 196 (E.D. Pa. 2008) .................................................................... 9

19

*In re Novagold Res. Inc. Sec. Litig.,*
       629 F. Supp. 2d 272 (S.D.N.Y. 2009) .......................................................... 2

20

21

*In re Silicon Graphics Sec. Litig.,*
       183 F.3d 970 (9th Cir. 1999) ...................................................................... 13

22

*In re Stac Elecs. Sec. Litig.,*
       89 F.3d 1399 (9th Cir. 1996) ........................................................................ 4

23

24

*In re Trans World Airlines, Inc. S'holders Litig.,*
       C.A. No. 9844, 1988 WL 111271 (Del. Ch. Oct. 21, 1988)......................... 9

25

*In re UTStarcom, Inc. Sec. Litig.,*
       617 F. Supp. 2d 964 (N.D. Cal. 2009)........................................................... 8

26

27

*In re Worlds of Wonder Sec. Litig.,*
       35 F.3d 1407 (9th Cir. 1994) ...................................................................... 12

28

*Isquith v. Middle S. Utils.,*
    847 F.2d 186 (5th Cir. 1988) ........................................................ 10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
    416 F.3d 940 (9th Cir. 2005) ......................................................... 5

*Marucci v. Overland Data, Inc.,*
    No. 97-CV-0833-TW (JFS),
    1999 WL 1027053 (S.D. Cal. Aug. 2, 1999)........................................ 8

*McCasland v. FormFactor Inc.,*
    No. C-07-5545-SI, 2008 WL 2951275 (N.D. Cal. July 25, 2008) ........................... 13

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008) ....................................................... 14

*O'Malley v. Boris,*
    742 A.2d 845 (Del. 1999)............................................................. 10

*Parnes v. Gateway 2000, Inc.,*
    122 F.3d 539 (8th Cir. 1997) ...................................................... 3, 7

*Romine v. Acxiom Corp.,*
    296 F.3d 701 (8th Cir. 2002) ........................................................ 9

*Rudolph v. UTStarcom,*
    560 F. Supp. 2d 880 (N.D. Cal. 2008)................................................ 13

*Schneider v. Cal. Dept. of Corr.,*
    151 F3d 1194 (9th Cir. 1998) ....................................................... 10

*SEC v. Murphy,*
    626 F.2d 633 (9th Cir. 1980) ........................................................ 7

*SEC v. Reyes,*
    577 F.3d 1069 (9th Cir. 2009) ....................................................... 7

*Shaev v. Saper,*
    320 F.3d 373 (3d Cir. 2003) ......................................................... 9

*Shalala v. Guernsey Mem'l Hosp.,*
    514 U.S. 87 (1995) ................................................................. 11

*Shaw v. Digital Equip. Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ........................................................ 9

*South Ferry LP, No. 2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008) ....................................................... 10

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ................................................................. 2

*Zell v. InterCapital Income Sec. Inc.,*
    675 F.2d 1041 (9th Cir. 1982) ....................................................... 9

Reply ISO Century's Motion to Dismiss
Case No. C 09-1376 (SI)

702122127v4

1   *Zucco Partners v. Digimarc,*
        552 F.3d 981 (9th Cir. 2009) ........................................................................ 10, 13

2

3                                   **Rules and Regulations**

    Federal Rules of Civil Procedure
4       Rule 12(b)(6) ........................................................................................... 4, 5, 8

5   SEC Rule 10b-5,
        17 C.F.R § 240.10b-5 ........................................................................................ 10
6
    SEC Rule 14a-9,
7       17 C.F.R. § 240.14a-9 ....................................................................................... 10

8                                       **Other Authorities**

9   SEC Staff Accounting Bulletin No. 99,
        64 Fed. Reg. 45150 (Aug. 19, 1999) ................................................................... 2
10

    Statement of Financial Accounting Standards No. 95,
11      *Statement of Cash Flows* ........................................................................... 11, 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply ISO Century's Motion to Dismiss
Case No. C 09-1376 (SI)

1        This is the Century Defendants' reply to both of Plaintiffs' opposition memoranda:

2   Doc. 75, the Exchange Act opposition; and Doc. 76, the Securities Act opposition.  In this

3   reply, we shall cite to Plaintiffs' oppositions by their docket numbers, and to Century's

4   motion by its docket number (Doc. 69).

5   **I.**      **INTRODUCTION AND SUMMARY OF ARGUMENT**

6        In 50 pages of opposition, Plaintiffs repeat, mantra-like, certain numbers

7   ($929,480,000, $239,759,000, minus $698,721,000) as if their size gives them talismanic

8   effect.  But repetition is no substitute for analysis, and Plaintiffs offer no reasons why a

9   technical presentation error would matter to any reasonable investor.

10       Of concern to investors last year was Century's liquidity.  Plaintiffs suggest that a

11  footnote in a registration statement (which they misread) could have lulled investors into

12  thinking that liquidity was not a problem.  But this takes 'grasping at straws' to new

13  extremes.  In the registration statement that contains this footnote, Century publicly

14  disclosed its liquidity issues in harrowing detail, explicitly stating, in bold type, that without

15  the cash it hoped to raise via the offering, it might be unable to continue operations.  Not

16  surprisingly therefore, not a single analyst found the restatement worthy of comment, and

17  neither should this Court.  Because this technical presentation error did not affect the

18  bottom line — it had not one cent's effect on Century's assets, liabilities, shareholders'

19  equity, revenues, expenses, net income (or loss), or beginning or ending cash position — it

20  is immaterial as a matter of law.

21       Plaintiffs' scienter arguments are even more feeble.  Plaintiffs offer no argument

22  whatsoever as to the eight outside directors.  For the four remaining individual defendants,

23  all officers, Plaintiffs principally rely on the "core operations" inference, making arguments

24  that the Ninth Circuit rejected just last year on very similar allegations.

25       For these reasons and also because no well-pleaded facts show loss causation,

26  standing and "statutory seller," the FAC should be dismissed without leave to amend.

27

28

1    **II.      ARGUMENT**

2    **A.      The allegations of material falsity do not suffice**

3         Plaintiffs' arguments on this subject appear both in their Exchange Act opposition

4    (Doc. 75) and their Securities Act opposition (Doc. 76), and largely repeat one another.  To

5    avoid burdening the Court with more such repetition, we shall reply to both sets of

6    arguments in this part of our reply.

7    **1.      Plaintiffs ignore the Supreme Court's test for materiality**

8         Plaintiffs' principal argument on material falsity consists of the repetition of certain

9    numbers.  But the Supreme Court has cautioned against any bright-line test for materiality,

10   holding instead that courts must assess the "total mix" of information available to investors

11   to decide if a particular item is material.  *Basic Inc. v. Levinson,* 485 U.S. 224, 231-32, 236

12   (1988) (rejecting "any approach that designates a single fact or occurrence as always

13   determinative of . . . materiality"); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449

14   (1976).  "Though materiality is a question of fact, 'a court may determine as a matter of

15   law, that the alleged misrepresentation is immaterial,' if a 'reasonable investor could not

16   have been swayed by the alleged misrepresentation.'"  *Parnes v. Gateway 2000, Inc.,*

17   122 F.3d 539, 546 (8th Cir. 1997).

18        Plaintiffs cite *In re Novagold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 300-01

19   (S.D.N.Y. 2009) and SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19,

20   1999) ("SAB No. 99") in favor of a quantitative approach to materiality, but fail to

21   acknowledge that "the magnitude of a misstatement is only the beginning of an analysis of

22   materiality; it cannot appropriately be used as a substitute for a full analysis of all relevant

23   considerations."  64 Fed. Reg. at 45151.  SAB No. 99's qualitative factors show why this

24   technical presentation error was immaterial as a matter of law.  It does not: "mask[] a

25   change in earnings or other trends"; "hide[] a failure to meet analysts consensus

26   expectations for the enterprise"; "change[] a loss into income" because the bottom line

27   remained the same; "concern[] a segment or other portion of [Century's] business that has

28   been identified as playing a significant role in [its] operations or profitability"; or

702122127v4

1    "conceal[] an unlawful transaction." *Id.* at 45152.  SAB No. 99 also endorses the "total

2    mix" approach to materiality, adding that "an assessment of materiality requires that one

3    views the facts in the context of the 'surrounding circumstances,' as the accounting

4    literature puts it, or the 'total mix' of information, in the words of the Supreme Court." *Id.*

5    at 45151.  This is exactly what Plaintiffs do not do, other than to offer absurd comparisons,

6    such as comparing the touch-pass to net sales and net income.  Doc. 76, at 14:1-9.

7            Plaintiffs argue, without any support or analysis, that the restatement made a big

8    change in Century's cash position and liquidity, but it did not.  Of the four principal

9    financial statements (balance sheet, income statement, statement of cash flows and

10   statement of changes in shareholders' equity), the restatement had no effect whatsoever on

11   Century's balance sheet, income statement or statement of shareholders' equity, and no

12   bottom-line effect on cash flows:  *Century's beginning and ending cash remained the same,*

13   *to the penny.*  RJN Ex. 30, at 1064.  The statement of cash flows remained exactly the same

14   except for this:  The touch-pass transaction that put cash in Century's hands for all of a

15   second, instead of being netted out, was shown, with the cash coming in as "Issuance of

16   preferred stock" and going out as "Due to affiliates." *Id.*; *see* Doc. 69, at 14:4-15:10.  No

17   reasonable investor would care about this technical presentation error, as opposed to cash

18   actually in the bank.[1]  Certainly Plaintiffs offer no well-pleaded facts even suggesting that

19   anyone did care.  And if someone did care, the cash flows were fully disclosed in SEC

20   filings describing the termination of the Hedges.  *See* Doc. 69, at 7:23-8:14.

21           Accordingly, this presentation error is immaterial by the standard set in *In re Daou*

22   *Sys. Inc.,* 411 F.3d 1006, 1018-19 (9th Cir. 2005), which requires that a complaint allege

23   facts showing that accounting irregularities "were material *in light of the company's overall*

24   *financial position*" (emphasis added).  *See also ECA & Local 134 IBEW Joint Pension*

25   *Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 204 (2d Cir. 2009) (affirming

26   _____

27   [1]     Plaintiffs continually and inappropriately treat cash flow from operations as
         synonymous with balance sheet cash (that is, cash in the bank).  These are very different
28       financial metrics.  It is misleading to suggest otherwise.

Reply ISO Century's Motion to Dismiss
                                                             Case No. C 09-1376 (SI)
702122127v4

1   dismissal under Rule 12(b)(6) of claims that JP Morgan Chase mischaracterized $2 billion

2   of Enron-related transactions).  Courts have dismissed similarly sparse allegations "for

3   failing plausibly to plead a *material* misrepresentation."  *In re Charles Schwab Corp. Sec.*

4   *Litig.,* 27 F.R.D. 534, 561 (N.D. Cal. 2009) (emphasis in original); *see also In re*

5   *Countrywide Fin. Corp. Sec. Litig.,* 588 F. Supp. 2d 1132, 1180 (C.D. Cal. 2008)

6   (dismissing accounting claims for failure to plead sufficient corroborating facts to permit

7   inference of false financial statements).  Because reasonable people could not (and did not)

8   find the alleged misstatement noteworthy, it is immaterial as a matter of law.  *See In re Stac*

9   *Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir. 1996).

10      Plaintiffs claim, by reference to a footnote in the prospectus, that Century concedes

11   the materiality of cash flows from operations.  Doc. 75, at 8:1-10.  But Plaintiffs misread

12   the footnote.  What it says is the GAAP measure of cash flows has *little* significance and

13   one should instead back out non-recurring items to get a better sense of what the continuing

14   operations actually are generating by way of cash.  RJN Ex. 22, at 847, note (8).  And that

15   makes perfect sense.  Anyone predicting future liquidity wants to know about continuing

16   operations, not a one-off contract termination.  By October 2008, the termination of the

17   Hedges was bought and paid for.  The Hedges were history.  Therefore, neither they nor

18   their termination would affect future cash flows.[2]

19      Plaintiffs argue that statements of cash flow are particularly significant to investors,

20   by way of suggesting that a mischaracterization of cash that has no bottom-line impact on a

21   company's cash position must nevertheless be material.  Doc. 76, at 14:10-15:10.  But none

22   of the authorities Plaintiffs cite stands even remotely for such a proposition, and none

23   distinguishes in the slightest between cash from operations and cash from financing.

24   _____

25   [2]     The whole point of the "adjusted" non-GAAP presentation following footnote (8),
        *see* RJN Ex. 22, at 847, note (8), was to show cash flow from continuing operations,
26   backing out anything of a non-recurring nature.  Thus, while GAAP requires that the
        touch-pass payment back to Glencore be included in operations, the payment was a one-
27   off transaction that would not recur, had no significance going forward and certain would
        not "help[] investors evaluate our capacity to fund ongoing cash operating requirements
28   …," which was the stated purpose of the non-GAAP presentation.  *Id.*

- 4 -

1    To distract from their failure to allege any bottom-line effect, let alone a significant

2    bottom-line effect, Plaintiffs raise a non-GAAP concept called EBITDA (income (loss)

3    before income taxes, adjusted to exclude interest expense, depreciation and amortization).

4    Doc. 76, at 4:4-5:20 (referring to RJN Ex. 22, at 847).  Unfortunately for Plaintiffs, the

5    FAC contains no allegations about EBITDA, none whatsoever.  This Court cannot consider

6    new facts alleged in Plaintiffs' opposition papers; such allegations "are irrelevant for Rule

7    12(b)(6) purposes."  *Schneider v. Cal. Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

8    1998).  Even if such allegations were added to the FAC, however, they would have no

9    impact.  "Adjusted net cash provided by operating activities" has nothing to do with

10   Century's EBITDA, aside from the fact that it happens to appear on the same page, albeit in

11   different footnotes addressing different subjects.  *See* RJN Ex. 22, at 847, footnotes (8)-

12   (10).  EBITDA is a non-GAAP adjustment to accrual-basis net income (or loss) as shown

13   on the income statement; it has nothing to do with the GAAP statement of cash flows.

14   Plaintiffs argue that the restatement itself is not forward-looking (Doc. 76, at 16:22-

15   19:6), but this argument ignores the salient point:  The FAC's theory of materiality is that

16   the restatement allowed Century to portray itself as "cash rich" and thereby underplay the

17   significance of its liquidity concerns going forward into the future.  FAC ¶ 76.  Thus,

18   according to the FAC, the restatement — while of a one-off historic number — becomes

19   material because it supported a false forecast.  The trouble with this theory is that the

20   forecast was not false, but accurate (*see* Doc. 69, at 17:4-15), and was accompanied by

21   meaningful cautionary statements (*id.,* citing RJN Ex. 22, at 827-39, 852-66, 873-75).

22   Plaintiffs cite *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940,

23   946-48 (9th Cir. 2005) for the proposition that Century's cautionary statements were

24   somehow insufficient.  Doc. 75, at 17:2-16 & n.15.  But the ambiguous two-sentence

25   cautionary statement in *Livid* is nothing like the Century's pages of spot-on cautionary

26   language.  RJN Ex. 22, at 827-39, 852-66.  In *Livid*, the court rejected the argument that a

27   bland statement that a private placement memorandum "has not been updated or amended"

28   put investors on notice that a $25 million private placement had in fact raised only $2

Reply ISO Century's Motion to Dismiss
Case No. C 09-1376 (SI)

702122127v4

1   million, leaving the issuer with a negative net worth of $743,646 instead of the positive

2   $24.2 million in net worth that would have resulted had the private placement raised $25

3   million.  This cryptic statement bears no resemblance to Century's pages of meaningful

4   cautionary statements, which include unsparing descriptions of Century's liquidity risk:

5   • "[Century's] operating loss in the fourth quarter of 2008 [will] range from $60 to $74

6       million …  Because our price realization is generally on a one-month lag to current

7       LME prices, and because LME prices were stronger earlier in the fourth quarter of

8       2008, results in the first quarter of 2009 can be expected to more fully reflect the recent

9       decline in aluminum prices." *Id.* at 827-29.

10   • "An impairment charge to a portion of our long-lived assets ($1,301 million at

11       September 30, 2008) may be required …" *Id.* at 829.

12   • "***If prices remain at current levels or continue to decline, we will have to take***

13       ***additional action to reduce costs, including significant curtailment of our operations,***

14       ***in order to have the liquidity required to operate through 2009, and there can be no***

15       ***assurance that these actions will be sufficient.***" *Id.* at 829 (bold and italics in original).

16   • "… our U.S. operations are not cash flow positive at recent aluminum prices …" *Id.* at

17       829, 874.

18   • "… we would expect to essentially break even on a cash from operations basis if 2009

19       primary aluminum prices were to average $1,900 per merit ton …" *Id.*  (At the time,

20       aluminum prices were $1,309 — a fact disclosed to investors.  *Id.* at 833.)

21   • "If primary aluminum prices were to remain on average at or around recent levels for

22       the entirety of 2009, or were to decline further, our liquidity would be at risk." *Id.* at

23       852.

24   • "… we do not have other committed sources of capital …" *Id.* at 831, 874.

25   • "Due to these factors, we cannot be certain that funding for our operating or capital

26       needs will be available from the credit and capital markets if needed and to the extent

27       required, or on acceptable terms." *Id.* at 854.

28   Truly, this was meaningful cautionary language that laid out and quantified the risks.

1    Where, as here, a historic number is said to have significance because it might be

2    used to predict future financial performance, courts recognize that the sort of "prolonged

3    cold shower" pessimism that Century's prospectus supplement offered investors undercuts

4    the materiality of any error in the historic number.  Thus, in *Akerman v. Oryx*

5    *Communications, Inc.,* 810 F.2d 336, 341 (2d Cir. 1987), the court said:  "[A]lthough the

6    misstatement may have been "theoretically material," [citation], when it is considered in the

7    context of the prospectus' pessimistic forecast of the performance of Oryx's subsidiary, the

8    misstatement was not likely to cause a stock price decline."  The court reached a similar

9    conclusion in *Parnes,* 122 F.3d at 542-43, 547, noting that risk factors had been

10   prominently disclosed in a prospectus.  Here, Plaintiffs admit that Century made "public

11   admissions relating to" its "critical liquidity situation."  Doc. 75, at 4:7-8.  That's putting it

12   mildly.  Given these sobering disclosures, no reasonable investor could have regarded a

13   technical presentation error in the statement of cash flows as a material falsehood.

14   **2.    Plaintiffs' legal arguments on materiality lack merit**

15   Century's moving papers presented authorities holding that materiality from an

16   accounting perspective does not equate to materiality under the federal securities laws, or

17   amount to an actionable falsehood.  Doc. 69, at 16:7-14 & n.6.  Plaintiffs largely ignore

18   these authorities.  Although Plaintiffs cite several cases supporting the proposition that a

19   restatement may give rise to an inference of falsity, none stands for Plaintiffs' erroneous

20   proposition that a restatement is *per se* material.  *See Basic Inc. v. Levinson,* 485 U.S. at

21   231-32, 236 (rejecting "any approach that designates a single fact or occurrence as always

22   determinative of . . . materiality").  Rather, the test for materiality involves assessment of a

23   broad range of qualitative and quantitative factors.  *See, e.g.*, *ECA,* 553 F.3d at 204-05.  In

24   this context, a misstatement as large as $2 billion has been found to be immaterial.  *Id.*

25   On this point, Plaintiffs misstate their authorities.  Doc. 76, at 9:11-28 & n.7 (citing

26   *SEC v. Reyes,* 577 F.3d 1069, 1076 (9th Cir. 2009); *SEC v. Murphy,* 626 F.2d 633 (9th Cir.

27   1980)).  Neither *Reyes* nor *Murphy* has anything to do with pleadings standards in private

28   securities litigation; both stand for the unexceptionable proposition that financial statements

1   can be important to investors.  Nor do Plaintiffs' other authorities support Plaintiffs'

2   argument; neither even discusses materiality.  *See In re The Goodyear Tire & Rubber Co.*,

3   436 F. Supp. 2d 873, 893-94 (N.D. Ohio 2006); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d

4   1077, 1084 (N.D. Cal. 2001).  In contrast, *In re Atlas Mining Co., Sec. Litig.*, 670 F. Supp.

5   2d 1128, 133-34 (D. Idaho 2009), rejects the argument that a restatement is *per se* material.

6       Attempting unsuccessfully to make lemonade out of lemons, Plaintiffs argue that

7   their case is strong because it involves one SEC filing only and a single restatement

8   involving the classification of a single number on a single financial statement.  Doc. 76, at

9   10:18-12:3.  But far from being a virtue, this is a weakness.  The Ninth Circuit in *Daou*

10  teaches us that a restatement is material only if the changes are "widespread and significant

11  inflation of revenue" and not if they are "minor or technical in nature."  Doc. 69, at 16:7-14

12  (citing *Daou,* 411 F.3d at 1017-18).  The restatement fixed a technical presentation error; it

13  had zero effect on revenue and zero effect on income and zero effect on cash on hand.[3]

14      Plaintiffs cite three cases to support the proposition that a drop in Century's stock

15  price is probative of materiality.  Doc. 75, at 15:20-16:3; Doc. 76, at 15:11-16:4.  Two of

16  the cases cited concern loss causation and have nothing to do with the element of

17  materiality.  *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 977 n. 17 (N.D.

18  Cal. 2009) (noting in discussion of loss causation that complaint alleges stock price drops

19  following corrective disclosures); *Garbini v. Protection One, Inc.*, 49 Fed. App'x 169, 170

20  (9th Cir. 2002).  The third case, *Marucci v. Overland Data, Inc.*, No. 97-CV-0833-TW

21  (JFS), 1999 WL 1027053, at *1 (S.D. Cal. Aug. 2, 1999), does not involve a Rule 12(b)(6)

22  motion, but a summary judgment motion, and thus tells us nothing about pleading

23  _____

24  [3]   Plaintiffs' reliance on *In re DDi*, No. CV 03-7063 NM, 2005 WL 3090882, at **12-13 (C.D. Cal. July 21, 2005), is unavailing.  Far from involving a technical presentation

25  error, as we have here, the complaint in *DDi* alleged that the issuer recognized revenue on premature and phony product shipments (e.g., shipments from one DDi facility to

26  another), overstated the number of its customers by a factor of four (saying it had 2,000 customers when it had 500) and stated that demand was strong when in fact demand had

27  plummeted and it had been forced to institute across-the-board pay cuts.  These were allegations of a "widespread and significant inflation of revenue," within the meaning of

28  *Daou*.  The FAC alleges nothing like that here.

1   materiality.  In any event, the facts are very different here.   Far from being buoyed by the

2   alleged misstatement, Century's stock price plummeted from $79.51 to $1.86 *before* the

3   corrective disclosure (that is, during the period of alleged stock inflation), and fell only

4   pennies more, from $1.86 to $1.68, *after* the corrective disclosure.  RJN Ex. 62, at 1524-25;

5   Ex. 63, at 1528.  If one wishes to judge materiality on the basis of stock movements, the

6   FAC is a loser.  *See ECA,* 553 F.3d at 203, 205 (rejecting the argument that a 19% stock

7   drop demonstrates materiality and deeming market volatility "too blunt an instrument" to

8   determine materiality).

9        Century's moving papers pointed out that all the aspects of the termination of the

10   Hedges, including the touch-pass payment, were disclosed in previous SEC filings, none of

11   which Plaintiffs allege to be inaccurate.  Doc. 69, at 7:1-8:17.  In opposition, Plaintiffs do

12   not argue that these disclosures were inaccurate (nor could they, as the FAC does not allege

13   any such thing, see *Schneider*, 151 F.3d at 1197 n.1); instead, they argue that investors

14   should not be required to review documents outside of the document containing the alleged

15   misstatement.  Doc. 75, at 16:4-28 & n.14.  But:  the SEC filings at issue expressly

16   incorporate by reference the SEC filings disclosing the termination of the Hedges, including

17   the touch-pass (RJN Ex. 17, at 786-87; Ex. 22, at 893); the case law expressly permits such

18   incorporation by reference[4]; and Plaintiffs' own authority, SAB No. 99, says look at the

19   "surrounding circumstances" (64 Fed. Reg. at 45151).

20        Plaintiffs' cases add nothing to their argument.  Four of the cases Plaintiffs cite —

21   *Zell v. InterCapital Income Sec. Inc.*, 675 F.2d 1041, 1049 (9th Cir. 1982), *Shaev v. Saper*,

22   320 F.3d 373, 381 (3d Cir. 2003), *In re Trans World Airlines, Inc. S'holders Litig.*, C.A.

23   No. 9844, 1988 WL 111271, at *10 (Del. Ch. Oct. 21, 1988), and *Isquith v. Middle S.*

24   _____

25   [4]     *E.g., Romine v. Acxiom Corp.,* 296 F.3d 701, 707-09 (8th Cir. 2002); *Shaw v.
        Digital Equip. Corp.,* 82 F.3d 1194, 1206 (1st Cir. 1996); *In re DVI Sec. Litig.,*
26   249 F.R.D. 196, 210 (E.D. Pa. 2008) (noting that certain SEC forms incorporate by
        reference a company's prior public securities filings, which practice "is predicated on the
27   [SEC's] belief that the market operates efficiently for these companies, i.e., that the
        disclosure in Exchange Act reports and other communications by the registrant, such as
28   press releases, has already been disseminated and accounted for by the market place").

1  *Utils.*, 847 F.2d 186, 208 (5th Cir. 1988) — concern proxy statements and laws (such as the

2  Investment Advisors Act of 1940, SEC Rule 14a-9 and Delaware law) that have no

3  relevance here.  The remaining case, *O'Malley v. Boris*, 742 A.2d 845, 851 (Del. 1999), is a

4  Delaware state case, which involves a brokerage firm's fiduciary duty to disclose certain

5  information to clients; it too has no application here.

6       Apart from adding the Section 11 claim, the only substantive change Plaintiffs made

7  between the consolidated complaint and the FAC was to allege an "internal controls"

8  breakdown.  *See* FAC ¶¶ 17-20, 123-25.  Century's moving papers showed why that

9  allegation adds nothing and does not state a Securities Act claim.  Doc. 69, at 22:18-23:2.

10  Plaintiffs' Oppositions do not even attempt to answer these points and authorities; Plaintiffs

11  just ignore them.

12  **B.      The allegations of scienter do not suffice**

13  **1.      The "core operations" inference has no application to Century's officers**

14       Plaintiffs' principal argument is that the "core operations" inference suffices to

15  establish scienter as to Century's officers.  Doc. 75, at 17:17-22:6.  That covers at most four

16  of the 12 individual defendants:  Kruger, Bless, Hale and Schneider.  FAC ¶¶ 33, 42-44.

17  And even with respect to those four defendants, that inference is far from strong.

18       The "core operations" inference generally fails to create a strong inference of

19  scienter in the context of a restatement.  *Zucco Partners v. Digimarc*, 552 F.3d 981, 1000

20  (9th Cir. 2009) (affirming dismissal of 10b-5 claim and rejecting "core operations"

21  inference" as applied to a restatement).  *Zucco* recognized two exceptions to this general

22  principle.  *Id.* (discussing *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)).

23  The first applies where particularized allegations (such as admissions) suggest that certain

24  members of management had regular access to the specific facts contradicting the public

25  misstatement.  *Id.* at 1000.  The second applies where senior management "must have

26  known" the public statement was false.  *Id.* at 1001.

27       As in *Zucco*, neither exception applies here, because the operative facts are not

28  "especially prominent facts" about *the business itself*, but "GAAP's definitions."  *Id.*  In

1   *Zucco,* Digimarc's business was software, not "GAAP's definitions." *Id.* Similarly, here,

2   Century's business is making aluminum, not "GAAP's definitions." As markets crashed

3   late in 2008 and early in 2009, liquidity was a concern. *Cf.* Doc. 76, at 19:3-14. But

4   Century did not make an error as to its liquidity — it made a technical presentation error as

5   to GAAP. It got its cash position exactly right — the restatement did not change Century's

6   beginning cash position or its ending cash position by a penny.[5] Century knew exactly how

7   much money it had in the bank and never misrepresented that fact to investors; all it did

8   was make a presentation error as to money it held for only a second. What Century did not

9   know until its annual audit by its outside auditors was that the Statement of Financial

10  Accounting Standards ("SFAS") No. 95, *Statement of Cash Flows,* required that the "touch-

11  pass" payment Century received from Glencore for the preferred stock and held for only a

12  second before returning it to Glencore needed to be classified under "Cash Flows From

13  Financing Activities" as "Issuance of preferred stock" rather than netted against "Due to

14  affiliates" under "Cash Flows From Operating Activities." *Compare* RJN Ex. 17, at 717

15  (Statement of Cash Flows in original 10-Q), *with* RJN Ex. 30, at 1064 (restatement).

16         Any inference that Century's top management "must have known" the accounting

17  was wrong is a weak inference at best. GAAP is not "a single-source accounting

18  rulebook," but rather "the conventions, rules, and procedures that define accepted

19  accounting practice at a particular point in time." *Shalala v. Guernsey Mem'l Hosp.,*

20  514 U.S. 87, 101 (1995) (internal quotations and citations omitted). There are many

21  different GAAP sources, "any number of which might present conflicting treatments of a

22  particular accounting question." *Id.* Here, nothing in Century's past treatment of the

23  Hedges would have suggested to management that the touch-pass would have to be

24  presented on a gross basis and split between financing and operations, as the external

25  _____

26  [5]      Plaintiffs' argument that Century "informed investors and the market alike that the
    January 2009 Registration Statement was false and misleading" and that Century
27  announced that "the statement of cash flows . . . was materially misstated" (Doc. 76, at
    5:21-26) is hyperbole that cannot be reconciled either with the FAC (FAC ¶¶ 12-13) or with
28  what the restatement actually says (*see* RJN Ex. 30, at 1063).

1    auditors later requested.

2          The Hedges were partial hedges against aluminum price swings, not a capital-

3    raising or financing mechanism.  For years, Century had marked the Hedges to market each

4    quarter, and adjusted the income statement and "Cash Flows From Operating Activities" in

5    its 10-Ks and 10-Qs accordingly.  Mot. 6:12-23; RJN Ex. 2, at 117-18, 132-34.  Thus,

6    Century was accustomed, and correctly so, to showing changes to the forward contracts in

7    operations, not financing.  And Century understood that a termination of the forward

8    contracts — either for cash, or for preferred stock — also would properly be shown as the

9    results of operations, and not a financing.  What Century did not realize was that the touch-

10   pass (the money it received from Glencore and then immediately paid back to Glencore)

11   could not be presented on a net basis, but had to be shown as coming in via a financing, and

12   going out as part of operations.  The two payments, a second apart, still netted to zero, but

13   SFAS No. 95 requires a gross presentation, with the cash coming in as a cash flow from

14   financing activity, and the same amount going out a second later as a cash flow from

15   operating activity.  Gross presentation, for that quarter, meant that cash flow from operating

16   activities (presented on a GAAP basis per SFAS No. 95) swung negative.

17         Plaintiffs suggest that Century had a motive to misstate its cash position to make

18   investors think that liquidity was better than it was.  In the context of the Shelf Offering's

19   gloomy prospectus supplement, that is absurd.  As detailed in Century's moving papers, the

20   prospectus supplement's description of Century's liquidity was indeed a prolonged cold

21   shower.  *See* quotations at 6 above; *see also* Doc. 69, at 2:22-3:7, 18:3-24 & n.7.

22         Plaintiffs ignore Ninth Circuit and Northern District authorities to the effect that a

23   failure to follow GAAP, or a restatement, without more, does not establish scienter.  Doc.

24   69, at 13:12-22; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)

25   ("[Scienter] requires more than a misapplication of accounting principles.").  Instead, they

26   offer thin and conclusory motive-and-opportunity arguments (Doc. 75, at 7:2-8:3, 22:1-6)

27   seemingly oblivious to the fact that the Ninth Circuit has consistently rejected motive-and-

28   opportunity arguments for scienter since *In re Silicon Graphics Sec. Litig.,* 183 F.3d 970,

1    974-79, 988 (9th Cir. 1999) (en banc).  *See Zucco,* 552 F.3d at 991.

2         Citing out-of-district cases, Plaintiffs argue that Kruger's and Bless' signatures on

3    SOX certifications support the inference of scienter as to them.  Doc. 75, at 21 n.20.

4    Plaintiffs ignore decisions of this Court to the contrary, which the Century Defendants cited

5    in their moving papers.  Doc. 69, at 13 n.4 (citing *McCasland v. FormFactor Inc.,* No. C-

6    07-5545-SI, 2008 WL 2951275, at *9 (N.D. Cal. July 25, 2008)*; Rudolph v. UTStarcom,*

7    560 F. Supp. 2d 880, 889 (N.D. Cal. 2008)).  Plaintiffs also ignore controlling Ninth Circuit

8    authority.  *Zucco,* 552 F.3d  at 1000 (holding SOX certifications "are not enough to create a

9    strong inference of scienter and do not make Zucco's otherwise insufficient allegations

10   more compelling by their presence in the same complaint").

11   **2.    Plaintiffs offer no scienter argument as to Century's outside directors**

12        Plaintiffs offer their "core operations" argument only against Century's four

13   officers.  The other eight individual defendants are outside directors.  FAC ¶¶ 34-41.  The

14   Opposition offers no scienter argument whatsoever as to the outside directors.  Nothing.

15   Accordingly, the Exchange Act claims should be dismissed as to all the individual

16   defendants, and as to Century as well.

17   **C.    The allegations of loss causation do not suffice**

18        Plaintiffs repeat, over and over, the canard that an 87% stock drop has some

19   relevance to this case.  Doc. 75, at 2:27, 11:13; Doc. 76, at 7:1-16.  But stock drops that

20   *precede* curative disclosures are not actionable; the Ninth Circuit in *Daou* so held.  *Daou,*

21   411 F.3d at 1027.  Far from being buoyed by the alleged misstatement, Century's stock

22   price plummeted from $79.51 in May 2008 to $1.86 on the morning of March 2, 2009 —

23   the period *before* the alleged corrective disclosure announcing the restatement.  RJN Ex. 62,

24   at 1524-25.  *After* the corrective disclosure late on the morning of March 2, 2009, Century's

25   stock price fell only pennies more, from $1.86 to $1.68.  Ex. 63, at 1528.

26        Once we boil out what *Daou* holds is irrelevant (the drop from $79.51, or $8.00, or

27   $4.50 to $1.86), what remains is an 18-cent drop (from $1.86 to $1.68), or less than 10%.

28   With a stock as volatile as Century's stock was late in 2008 and early in 2009, that drop

1   was a blip and, as *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064

2   (9th Cir. 2008) holds, not actionable.  Plaintiffs attempt unsuccessfully to distinguish

3   *Metzler* as a case where the plaintiffs did not even try to allege loss causation.  Doc. 75, at

4   24:13-25:11.  Not so.  In *Metzler*, the court found insufficient allegations of loss causation

5   where the only fact alleged "to suggest that on August 2 the market became aware that

6   Corinthian was manipulating student records company-wide" was "an undocumented

7   assertion that Corinthian's August 2 stock drop was, by necessity, a result of this market

8   'realization.'"  *Id.*  Similarly, Plaintiffs here have merely offered the conclusory allegation

9   that the stock dropped after the Restatement "due to the market's focus on these items."

10  FAC ¶ 125; *see also id.* ¶¶ 13, 14, 20, 79, 121.

11  **D.     The allegations of standing and statutory seller do not suffice**

12          To avoid repetition, the Century Defendants join in, and incorporate by reference,

13  the forthcoming reply of the Underwriter Defendants, which will cover these issues.  As the

14  Underwriters will show, Plaintiffs did not buy in the Shelf Offering or even traceable to the

15  Shelf Offering.  The FAC does not allege any direct sale or solicitation by the Century

16  Defendants.  Plaintiffs purport to devote pages to these issues (*see* Doc. 76, at 19:7-24:2)

17  but somehow never find the time to discuss the cases cited in Century's moving papers.

18  Doc. 69, at 24:4-25.

19  **E.     The control person allegations do not suffice**

20          Because Plaintiffs have not stated a primary violation either of the Securities Act or

21  of the Exchange Act, and because Plaintiffs lack standing to assert their Securities Act

22  claims, the Court should dismiss their control person claims as well.

23

24

25

26

27

28

Reply ISO Century's Motion to Dismiss
Case No. C 09-1376 (SI)

1    **III.    CONCLUSION**

2           For each of the foregoing reasons, the Court should dismiss the FAC.  And because

3    no conceivable amendment will make a mountain out of this molehill, or give Plaintiffs the

4    standing they by their own admissions lack, the order of dismissal should be with prejudice.

5           Dated: April 2, 2010.

6                                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                                           BRUCE A. ERICSON
7                                          JEFFREY S. JACOBI
                                           50 Fremont Street
8                                          Post Office Box 7880
                                           San Francisco, California 94120-7880
9
                                           By /s/ Bruce A. Ericson
10                                             Bruce A. Ericson

11                                         Attorneys for Defendants
                                           CENTURY ALUMINUM COMPANY,
12                                         LOGAN W. KRUGER, MICHAEL A. BLESS,
                                           STEVE SCHNEIDER, JOHN C. FONTAINE,
13                                         JACK E. THOMPSON, PETER C. JONES, JOHN
                                           P. O'BRIEN, WILLY R. STROTHOTTE, JARL
14                                         BERNTZEN, WAYNE R. HALE, ROBERT E.
                                           FISHMAN and CATHERINE Z. MANNING

15

16

17

18

19

20

21

22

23

24

25

26

27

28