1 | ROBERT P. VARIAN (SBN 107459)
STEPHEN M. KNASTER (SBN 146236)
2 | ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
3 | 405 Howard Street
San Francisco, CA  94105-2669
4 | Telephone:   (415) 773-5700
Facsimile:    (415) 773-5759
5 | *Emails:    rvarian@orrick.com*
*sknaster@orrick.com*
6 |
Counsel For Defendants
7 | Credit Suisse Securities (USA) LLC and Morgan
Stanley & Co. Incorporated
8 |

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* CENTURY ALUMINUM COMPANY SECURITIES LITIGATION | Lead Case No.  3:09-cv-01001-SI |
| | CLASS ACTION |
| | **UNDERWRITERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Date:          Friday April 23, 2010
Time:          9:00 a.m.
Court:         10, 19th Floor
Judge:         Honorable Susan Illston |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.    PLAINTIFFS' '33 ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) FOR FAILURE TO PLEAD KEY ELEMENTS ................................. 3

    A.    The Section 12 Claim Should Be Dismissed Under Rule 12(b)(6) Because Plaintiffs' Allegations Show That They Did Not Purchase In the Offering .......... 3

    B.    The Section 11 Claim Should Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Cannot Allege Tracing ...................................................... 6

II.    PLAINTIFFS' '33 ACT CLAIMS MUST ALSO BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND STANDING. ................................................................................. 7

    A.    Plaintiffs Bear the Burden of Establishing Subject Matter Jurisdiction and Standing ............................................................... 9

    B.    Plaintiffs Cannot Meet Their Burden Of Establishing Subject Matter Jurisdiction Over The Section 12 Claim ........................................ 9

    C.    Plaintiffs Cannot Discharge Their Burden of Establishing Subject Matter Jurisdiction Over the Section 11 Claim ......................................... 10

III.    PLAINTIFFS' '33 ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) ON SEVERAL ADDITIONAL GROUNDS ..................................... 12

    A.    Plaintiffs Cannot Plead Facts Showing That the Underwriters Breached A Duty of Due Diligence ..................................................... 12

    B.    Plaintiffs' Allegations Are Based On A False Premise ........................ 13

    C.    Plaintiffs Have Abandoned the "Forward-Looking" Liquidity Statement ........... 14

    D.    Plaintiffs Fail To Plead A Section 15 Claim For "Control Person" Liability ....... 15

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................................................. *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... *passim*

*Colwell v. Dept. of Health and Human Services*,
558 F.3d 1112 (9th Cir. 2009) ........................................................................................ 9, 10

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
504 F. Supp. 2d 151 (N.D. Tex. 2007) ................................................................................ 8

*Conley v. Gibson*,
355 U.S. 41 (1957) .................................................................................................................. 5

*Corrie v. Caterpillar*,
503 F. 3d 974 (9th Cir. 2007) ............................................................................................. 7, 8

*Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc.*,
2001 WL 300733 (S.D.N.Y. Mar. 28, 2001) ....................................................................... 10

*Grand Lodge of Pa. v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008) ................................................................. 8, 10, 11, 12

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561 (1995) ............................................................................................................... 4

*Hertzberg v. Dignity Partners*,
191 F.3d. 1076 (9th Cir. 1999) ....................................................................................... 4, 6, 11

*In re Countrywide Fin. Corp. Security*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................................... 13

*In re Craftmatic Sec. Litig.*,
890 F.2d 628 (3d Cir. 1989) ................................................................................................... 5

*In re Exodus Commc'n, Inc. Sec. Litig.*,
2006 WL 2355071 (N.D. Cal. April 14, 2006) ................................................................. 8, 12

*In re Iasia Works, Inc. Sec. Litig.*,
2002 WL 1034041 (N.D. Cal. May 15, 2002) ..................................................................... 13

*In re Intrabiotics Pharma., Inc. Sec. Lit.*,
2006 WL 708594 (N.D. Cal. Jan 23, 2006) ......................................................................... 11

*In re Late Fee and Over-Limit Fee Litig.*,
528 F. Supp. 2d 953 (N.D. Cal. 2007) ................................................................................... 3

*In re MusicMaker.com Sec. Litig.*,
2001 WL 34062431 (C.D. Cal. June 4, 2001) ....................................................................... 4

OHS West:260885402.3        - ii -

UNDERWRITERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (CASE NO. 3:09-CV-01001-SI)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re WRT Energy Sec. Litig.*,
   1999 WL 178749 (S.D.N.Y. Mar. 31, 1999) ........................................................ 13

*Krim v. Pcorder.com*,
   402 F.3d 489 (5th Cir. 2005) .................................................................... 8, 11

*Lilley v. Charren*,
   936 F. Supp. 708 (N.D. Cal. 1996) ............................................ 2, 6, 11, 15

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ........................................................................ 5

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ...................................................................................... 5

*Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
   658 F. Supp. 2d 299 (D. Mass. 2009) ......................................................... 8

*Port Dock & Stone Co. v. Old Castle Northeast, Inc.*,
   507 F.3d 117 (2d. Cir. 2007) ....................................................................... 3

*Rubin v. MF Global, Ltd*,
   634 F. Supp. 2d 459 (S.D.N.Y. 2009) ..................................................... 4, 5

*Stack v. Lobo.*,
   903 F. Supp 1361  (N.D. Cal. 1995) ........................................................... 4

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1999) .................................................................. 14

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ....................................................... 13

**STATUTES**

15 U.S.C.
   Section 77l(a)(2) .......................................................................................... 5

**TREATISES**

5B Charles Alan Wright and Arthur R. Miller,
   *Federal Practice and Procedure* § 1350 (3d ed. 2009) .............................. 8

13 Wright & Miller *Federal Practice and Procedure*
   § 3522 (3d ed. 2009) .................................................................................... 8

UNDERWRITERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (CASE NO. 3:09-CV-01001-SI)

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

<u>**RULES**</u>

Federal Rules of Civil Procedure

    Rule 8(a)...................................................................................................................... 1

    Rule 9(b)..................................................................................................................... 13

    Rule 12(b)(1) ...................................................................................... *passim*

    Rule 12(b)(6) ...................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiffs' Omnibus Opposition (the "Opposition" or "Opp.") to the Underwriters' Motion to Dismiss (the "MTD") does nothing to salvage Plaintiffs' claims against Credit Suisse and Morgan Stanley (collectively, "the Underwriters"). To the contrary, it confirms that they should be dismissed with prejudice.

The MTD demonstrated that Plaintiffs' '33 Act claims suffer from multiple layers of defects that are both fatal and irremediable. As the Underwriters showed in detail, those defects require dismissal <u>both</u> under Rule 12(b)(6) for failure to state a claim, and under Rule 12(b)(1) for lack of subject matter jurisdiction. As discussed herein, the Opposition seeks to by-pass the key points requiring dismissal under Rule 12(b)(6), and ignores the Rule 12(b)(1) motion altogether:

<u>First</u>, the Underwriters showed that the Section 12 and Section 11 claims asserted against them must be dismissed under Rule 12(b)(6), on the face of the First Amended Complaint (the "FAC"), because Plaintiffs cannot show that they purchased a single share in the January 29, 2009 Offering (the "Offering") by Century Aluminum (the "Company").[1] Indeed, the certifications incorporated into the FAC affirmatively demonstrate that they did <u>not</u> purchase in the Offering.

The Opposition does not (and cannot) dispute the fact that a purchase in the Offering is required under Section 12. Nor do Plaintiffs contest the fact that they cannot satisfy the elements of Section 12 unless they can establish that the Underwriters were statutory "sellers." Rather, Plaintiffs proceed as if their certifications and other allegations in the FAC did not exist, ignore the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and argue that they have satisfied Rule 8(a) by providing "a short and plain statement of their claims."

Although Plaintiffs cannot assert a Section 11 claim unless they purchased shares that were issued in the Offering, the Opposition ignores the MTD's demonstration that it is impossible for them to meet their tracing burden unless they purchased in the Offering. In so doing, the

---

[1] Any capitalized terms used herein that are not defined have the meaning set forth in the MTD.

- 1 -

1    Opposition gives short shrift to the cases cited in the MTD, the pleading requirements of

2    *Twombly* and *Iqbal*, and this Court's decision in *Lilley v. Charren*, 936 F. Supp. 708 (N.D. Cal.

3    1996), and proceeds as if pleading unadorned conclusions were sufficient to evade dismissal

4    under Rule 12(b)(6).

5        Second, the Underwriters showed that the FAC must also be dismissed under Rule

6    12(b)(1), for failure to meet Plaintiffs' burden to demonstrate subject matter jurisdiction in the

7    form of standing.  Although 12(b)(1) motions are evidentiary, Plaintiffs do not make the slightest

8    effort to challenge or rebut the declarations submitted by the Underwriters.  That failure is

9    decisive because the declarations confirm and underscore the fact that none of the Plaintiffs

10   purchased in the Offering or from the Underwriters, and that they cannot satisfy the jurisdictional

11   prerequisite of standing under Sections 11 or 12: (1) because they did not purchase in the

12   Offering as required by Section 12; (2) cannot satisfy Section 12's requirement that the defendant

13   is a "seller"; and (3) cannot satisfy the tracing element of Section 11.

14       The Opposition does not even acknowledge that Credit Suisse and Morgan Stanley filed

15   declarations, much less undertake the task of making objections to them.  Plaintiffs similarly

16   ignore their own sworn certifications, and the fact that they show clearly that Plaintiffs purchased

17   outside the Offering, on different dates and at prices other than the Offering price.  The

18   Opposition proffers no contradictory evidence that might discharge Plaintiffs' burden of proof on

19   any aspect of subject matter jurisdiction and standing.  Accordingly, the Rule 12(b)(1) motion

20   should be granted on the merits and on the grounds that it is unopposed.

21       Third, the Underwriters demonstrated that the FAC should be dismissed under Rule

22   12(b)(6) on several additional grounds: (1) fails to plead facts showing that the Underwriters

23   breached a duty of due diligence; (2) because it is based on a false premise; (3) seeks to assert

24   claims based on a forward-looking statement that is inactionable as a matter of law; and (4) fails

25   to plead a Section 15 claim for "control person" liability.  Plaintiffs have abandoned their position

26   with respect to the forward-looking statement, and failed to rebut the MTD's showing on the

27   other grounds.

28

1

## ARGUMENT

2  **I.  PLAINTIFFS' '33 ACT CLAIMS SHOULD BE DISMISSED UNDER RULE
      12(b)(6) FOR FAILURE TO PLEAD KEY ELEMENTS.**

3

4       The FAC must be dismissed in its entirety pursuant to Rule 12(b)(6) because Plaintiffs

5  cannot allege facts sufficient to demonstrate the threshold elements of Sections 11 and 12.  In

6  addition to ignoring Plaintiffs' certifications and other allegations in the FAC, the Opposition

7  fails to confront the MTD's detailed showing that these allegations do not state a claim under the

8  controlling legal standards.

9       Because the FAC is based on conclusory and implausible allegations that cannot pass

10  muster under *Twombly* and *Iqbal*, Plaintiffs are forced to seek refuge in assertions that Rule

11  12(b)(6) dismissals are "disfavored" and "rarely granted" (Opp. at 7), and that they can evade

12  dismissal merely by providing a "short plain statement of their claims" (Opp. at 1).  Plaintiffs are

13  wrong on both counts.  Motions to dismiss are routinely granted in securities cases, and the

14  Supreme Court's decisions in *Twombly* and *Iqbal* changed the pleading landscape in '33 Act

15  cases.  *See Twombly*, 550 U. S. at 570; *Iqbal*, 129 S. Ct. at 1950-51; *see also* MTD at 12-13.

16       As the Opposition itself concedes:  "To survive a motion to dismiss, a complaint must

17  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

18  face.'"  Opp. at 9 (quoting *Iqbal* 129 S. Ct. at 1949) (emphasis added).  Not only must the claim

19  rise "above the speculative level" (*Twombly*, 550 U.S. at 570), Plaintiffs must allege facts that

20  "actively and plausibly suggest" that the defendant violated the law.  *See, e.g., Port Dock & Stone*

21  *Co. v. Old Castle Northeast, Inc.*, 507 F.3d 117, 121 (2d. Cir. 2007) (citing *Twombly*, 550 U.S. at

22  557).  Under *Iqbal*, "conclusions are not entitled to a presumption of truth" unless they are

23  supported by "factual allegations."  129 S. Ct. 1937, 1950-51 (2009).

24       **A.    The Section 12 Claim Should Be Dismissed Under Rule 12(b)(6)
               Because Plaintiffs' Allegations Show That They Did Not Purchase In**

25            **the Offering.**

26       The FAC's attempts to plead the purchase requirement under Section 12 fails for two

27  essential reasons.  First, they are based on naked conclusions, without any semblance of the

28  requisite factual allegations.  *See, e.g., Iqbal,* 129 S. Ct. at 1949; *In re Late Fee and Over-Limit*

1   *Fee Litig.*, 528 F. Supp. 2d 953, 957 (N.D. Cal. 2007).  Second, the conclusions are directly

2   contradicted by Plaintiffs' certifications and other portions of the FAC, which affirmatively

3   demonstrate that Plaintiffs did not buy in the Offering.  *See* MTD at 8.

4          The Opposition does not (and cannot) dispute that only Plaintiffs who have purchased <u>in</u> a

5   public offering may assert a Section 12 claim.  *See, e.g., Gustafson v. Alloyd Co., Inc.*, 513 U.S.

6   561, 578 (1995); *Hertzberg v. Dignity Partners*, 191 F.3d. 1076, 1081 (9th Cir. 1999); MTD at 7-

7   9.  Instead, the Opposition (Opp. at 22) claims that conclusory allegations that Plaintiffs

8   "purchased stock either pursuant to, or traceable to, the January 2009 Offering" are sufficient at

9   the pleading stage.  That generic and conclusory formulation is insufficient as a matter of law.

10  *See, e.g., In re MusicMaker.com Sec. Litig.*, 2001 WL 34062431, at *15 (C.D. Cal. June 4, 2001)

11  (dismissing Section 12(a)(2) claim because plaintiffs failed to allege they purchased shares in the

12  offering); *see also* MTD at 7-8.  More important, it is refuted by the FAC and the certifications

13  incorporated therein, which demonstrate that Plaintiffs could not possibly have purchased in the

14  Offering.  As the Underwriters have demonstrated, the FAC and the incorporated certifications

15  show that none of Plaintiffs' purchases were on the date of the Offering, or at the Offering price

16  of $4.50 per share, or involved a purchase from the Underwriters who sold all of the shares in the

17  Offering.  *See* MTD at 7-9.  The Opposition makes no attempt to rebut that showing, which is

18  dispositive.

19         Moreover, the sole case cited by Plaintiffs in support of their Section 12 pleading

20  allegations -- *Stack v. Lobo.*, 903 F. Supp 1361  (N.D. Cal. 1995) -- was decided long before

21  *Twombly* and *Iqbal*, and actually granted the defendants' motion to dismiss the Section 12 claim.

22  As the more recent post-*Twombly* and *Iqbal* cases well-demonstrate, to plead a claim under

23  Section 12, Plaintiffs must allege "plausible" facts -- not mere conclusions -- showing that they

24  purchased <u>in</u> the Offering itself.  *See* MTD at 7-9, n.3 and 5.  Plaintiffs' failure to do so here

25  mandates dismissal.[2]

26         [2] The Opposition at 9 n.7 misconstrues *Rubin v. MF Global, Ltd,* 634 F. Supp. 2d 459
    (S.D.N.Y. 2009) relied on by the Underwriters. *Rubin* explicitly incorporated the requirements of
27  *Twombly* and *Iqbal* into its motion to dismiss pleading standard (*id.* at 465-66), applied Rule 8 as
    construed by *Iqbal* and *Twombly*  (*id.* at 469) and dismissed Section 11 and 12 claims for failure
28  to plead facts that satisfied *Iqbal* and *Twombly's* requirements (*id.* at 470).  For Plaintiffs to

1   Nor does the Opposition offer anything that might undercut the Underwriters'

2   demonstration that they were not statutory sellers for purposes of Section 12.  *See* MTD at 9-10.

3   Plaintiffs do not, and cannot,  plead facts [3] showing that they purchased stock from Credit Suisse

4   or Morgan Stanley.  Indeed, plaintiffs' certifications conclusively demonstrate that they did <u>not</u>

5   do so.  *See* MTD at 8.

6   The Opposition's bare bones assertions (Opp. at 22-23) that the Underwriters "solicited"

7   plaintiffs' purchases by performing the kinds of services routinely provided by all underwriters in

8   all securities offerings add nothing of substance.  As the statute and the seminal Supreme Court

9   case demonstrate, such <u>generic</u> activities cannot be equated with the <u>direct, personal and</u>

10  <u>immediate</u> solicitation necessary to convert someone who does not pass title to a seller.  *See* 15

11  U.S.C. § 77l(a)(2); *Pinter v. Dahl*, 486 U.S. 622, 643 n.21 (1988).  Section 12 limits a seller's

12  liability "to the person purchasing such security <u>from him</u>" -- not anyone who read the

13  registration statement that was prepared with the assistance of underwriters.  15 U.S.C.

14  § 77l(a)(2); s*ee also Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 537 (9th Cir. 1989).

15  Similarly, *Pinter*, 486 U.S. at 643 n.21, makes clear that a plaintiff can only recover

16  against his or her direct and immediate seller -- not someone who merely worked on the offering.

17  A plaintiff must "demonstrate direct and active participation in the solicitation of the immediate

18  sale." *Craftmatic*, 890 F.2d at 636; s*ee also* MTD at 9-10.  Far from satisfying this requirement,

19  Plaintiffs here cannot plead <u>a single fact</u> showing that <u>any</u> plaintiff had <u>any</u> contact or interaction

20  <u>of any kind</u> with Credit Suisse or Morgan Stanley.  Plaintiffs' failure to do so warrants dismissal

21  of the Section 12 claim because they cannot plead that the Underwriters were statutory sellers.

22

23

24

25  suggest that all the *Rubin* court did was apply "Rule 8's notice pleading standard" and nothing
    more (Opp. at 9 n.7) is incorrect.

26  [3] Plaintiffs' citation of *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 637 (3d Cir. 1989) (Opp. at
    22) for a pleading standard is misplaced.  In holding that plaintiffs sufficiently alleged that

27  defendants were "sellers" at the pleading stage, the court relied on the "no set of facts" standard
    set forth in *Conley v. Gibson*, 355 U.S. 41 (1957) which was abolished by the Supreme Court  in

28  *Twombly*, 550 U.S. at 562-63.

1

**B.      The Section 11 Claim Should Be Dismissed Under Rule 12(b)(6)
Because Plaintiffs Cannot Allege Tracing.**

2

3      The MTD (at 10-12) demonstrates in detail how and why Plaintiffs have failed to meet

4  their Section 11 burden of pleading that they purchased shares that were issued in and traceable to

5  the Offering.  As the Underwriters have shown, the FAC's conclusory allegations are insufficient

6  under this Court's 1996 decision in *Lilley*, 936 F. Supp. at 715, and fall even further short of the

7  mark under the Supreme Court's subsequent decisions in *Twombly* and *Iqbal*.

8      Rather than attempting to dispute the Underwriters' demonstration on these pivotal points,

9  the Opposition: (1) asserts that a boilerplate allegation that Plaintiffs purchased "pursuant and/or

10  traceable to" the Offering will suffice (Opp. at 19); (2) says nothing whatsoever about *Lilley v.*

11  *Charren*, *Twombly* or *Iqbal*; (3) offers the irrelevant assertion that a lead plaintiff need not have

12  standing to pursue all claims which may be presented by the Class as a whole (Opp. at 20); and

13  (4) asserts that consideration of tracing is "premature at this stage of the proceedings" (Opp.

14  at 19).[4]  None of these tactics advances Plaintiffs' position.

15      The "pursuant and/or traceable to" conclusion cannot overcome Plaintiffs' certifications

16  and other facts alleged in the FAC and reflected in the documents upon which it purports to be

17  based.  *Lilley* requires Plaintiffs to allege facts showing that they can trace their shares to the

18  Offering.  936 F. Supp. at 716.  Plaintiffs cannot plug gaping holes in their allegations and the

19  FAC based on unalleged facts relating to unnamed members of a purported class.  *Twombly* and

20  *Iqbal* require factual allegations and that unsupported conclusions be disregarded.  *Twombly*, 550

21  U. S. at 557;  *Iqbal*, 129 S. Ct. at 1949.  Most important, Plaintiffs have not merely failed to

22  allege sufficient facts; the facts they <u>do</u> allege show that it is impossible -- not  <u>merely</u>

23

24

25      [4] Moreover, the Opposition's citation of *Hertzberg*, 191 F.3d 1076 (Opp. at 21) merely
underscores Plaintiffs' inability to trace their purchases to the Offering.  As the block quote
included in the Opposition itself makes clear, there was only <u>one</u> offering and registration

26  statement at issue in *Hertzberg*, and the stock at issue was by definition traceable to that offering.
The Ninth Circuit nevertheless went out of its way to emphasize that the situation is different

27  when -- as in this case -- "stock was issued under <u>more than one</u> registration statement."  191 F.3d
at 1080 (emphasis added).  *See also id.* at 1080 n.4 and 1082.

28

1  implausible -- that they can trace any of the shares they purchased to the Offering. *See* MTD at

2  12.

3       As the Supreme Court emphasized in *Twombly*, a plaintiff with an insupportable claim

4  should not be permitted to "take up the time" of litigants and the courts, or waste money and

5  resources. 550 U.S. at 557-58. There is no valid reason why Plaintiffs should be permitted to do

6  so here.

7  **II.**    **PLAINTIFFS' '33 ACT CLAIMS MUST ALSO BE DISMISSED UNDER**
        **RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND**

8          **STANDING.**

9       Plaintiffs' inability to establish either a purchase in the Offering under Section 12, or

10  tracing under Section 11, deprives them of standing to assert claims under both statutes. Absent

11  standing to assert their claims, Plaintiffs cannot meet their burden of establishing subject matter

12  jurisdiction, an alternative and equally compelling ground for dismissal. MTD at 13-14.

13       Motions under Rule 12(b)(1) are not limited to the face of the pleadings. *Corrie v.*

14  *Caterpillar*, 503 F. 3d 974, 980 (9th Cir. 2007). The Court can, and should, consider evidence in

15  making determinations regarding its subject matter jurisdiction. *Id.*; *see also* MTD at 14. The

16  Underwriters submitted declarations that, in conjunction with Plaintiffs' certifications,

17  demonstrate the absence of standing and subject matter jurisdiction. *See* MTD at 8. Although

18  Plaintiffs bear the burden of showing that the Court has subject matter jurisdiction over their

19  claims, they have made no effort whatsoever to do so -- because they cannot. The Opposition

20  does not <u>mention</u> the declarations or the Underwriters' showing, much less attempt to challenge

21  or dispute them.

22       Plaintiffs' only hint of a "response" to the Underwriters' arguments, is the underlined

23  phrase in the following sentence: "All of these arguments -- <u>including Defendants' bootstrapped</u>

24  <u>subject matter jurisdiction assertions</u> -- are premature at this stage of the proceedings, considering

25  that Plaintiffs have pled all that is necessary under the Federal Rules." Opp. at 19 (emphasis

26  added). That sentence is included under a heading stating that "Defendants' Standing Arguments

27  are Unripe and Nonjusticiable at this Stage of the Action." Opp. at 19. To the extent those

28  oblique references can be treated as an argument, it is plainly wrong.

OHS West:260885402.3

- 7 -

UNDERWRITERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (CASE No. 3:09-CV-01001-SI)

Standing and subject matter jurisdiction present a "threshold inquiry" that is "particularly important in securities litigation." *Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 303 (D. Mass. 2009). Plaintiffs' '33 Act claims cannot possibly survive in the absence of standing to assert them. Nor can a federal court proceed in the absence of subject matter jurisdiction. Indeed, standing is "perhaps the most important" of the jurisdictional doctrines and "is not subject to waiver." *In re Exodus Commc'n, Inc. Sec. Litig.*, 2006 WL 2355071, at *2 (N.D. Cal. April 14, 2006) (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)).

Contrary to Plaintiffs' assertions, federal courts frequently dismiss '33 Act claims at the pleading stage for lack of standing and subject matter jurisdiction, on facts less compelling than those before the Court on this motion. *See, e.g., Krim v. Pcorder.com*, 402 F.3d 489 (5th Cir. 2005); *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363 (M.D. Fla. 2008); *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151 (N.D. Tex. 2007); MTD at 13-14.

Indeed, the question of subject matter jurisdiction is so fundamental that it can be raised -- by a party or the Court on its own initiative -- at <u>any</u> stage in the proceedings. 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* §§ 1350 (3d ed. 2009) ("Wright & Miller") (citing Rule 12(h)(3)) ("[I]t has long been well-established that the court's lack of subject matter jurisdiction may be asserted at any time by any interested party"). Federal courts must address and resolve questions regarding subject matter jurisdiction when they arise, because entertaining a case that lacks subject matter jurisdiction "is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." 13 Wright & Miller at § 3522. [5]

---

[5] Nor may Plaintiffs seek to delay this motion until summary judgment. A Rule 56 motion is ordinarily an "inappropriate method for challenging the district court's subject matter jurisdiction." 5B Wright & Miller at § 1350; *see also Corrie,* 503 F.3d at 980 (courts may consider evidence beyond the complaint without converting 12(b)(1) motion to dismiss into a motion for summary judgment).

### A.  **Plaintiffs Bear the Burden of Establishing Subject Matter Jurisdiction and Standing**

The burden of establishing standing rests with the plaintiff asserting the claim, and it is evidentiary.  *Colwell v. Dept. of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009).  A party moving to dismiss for lack of subject matter jurisdiction "may submit affidavits or any other evidence properly before the court …"  *Id*.  It then becomes "necessary for the party opposing the motion to present <u>affidavits or any other evidence</u> necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *Id*. (emphasis added).  In addition to the facts evident from the face of the pleadings and Plaintiffs' own certifications, the Underwriters submitted two sworn declarations.  Plaintiffs offer no response whatsoever.

### B.  **Plaintiffs Cannot Meet Their Burden Of Establishing Subject Matter Jurisdiction Over The Section 12 Claim**

There is no explanation -- other than that they have nothing to say -- for Plaintiffs' failure to respond to the Underwriters' demonstration that the Section 12 claim must be dismissed for lack of subject matter jurisdiction.

Ryan E. Fitzpatrick, a Vice President at Credit Suisse, testifies as follows:

> The offering was a "firm commitment offering."  Accordingly, all of the shares included in the Offering were purchased by the Underwriters from Century Aluminum, and then sold by the Underwriters to the investors who purchased stock in the Offering.  <u>All such sales occurred on January 29, 2009, at the Offering price of $4.50 per share</u> … I have reviewed in the ordinary course of business the records maintained by Credit Suisse … According to these records, Stuart Wexler, Peter Abrams, Eric Petzchke and Cory McCellan (collectively, "the plaintiffs") <u>were not allocated any Century Aluminum stock in the Offering and did not purchase any Century Aluminum stock from Credit Suisse</u> in the Offering.

Declaration of Ryan E. Fitzpatrick ("Fitzpatrick Decl.") at ¶¶ 2 and 5 (emphasis added).  *See also* the Declaration of Scott A. Gregory ("Gregory Decl.") at ¶¶ 3-5, an employee at Morgan Stanley who submitted similar testimony.

The declarations from Messrs. Fitzpatrick and Gregory -- in addition to Plaintiffs' own certifications -- conclusively demonstrate that <u>none</u> of the Plaintiffs bought <u>in</u> the Offering.  The unrebutted evidence and the certifications demonstrate that the Plaintiffs did not purchase stock

1    from the Underwriters, or at the Offering price of $4.50, or even on January 29, 2009, the date of

2    the Offering.  *Id*.  If  Plaintiffs had any basis at all for claiming that they purchased stock from

3    Credit Suisse or Morgan Stanley in the Offering, they could have submitted a declaration to that

4    effect.  There is no such basis, and, not surprisingly, none of the Plaintiffs has attempted the

5    impossible task of providing one to the Court.

6         Moreover, without a sale by the Underwriters to the Plaintiffs (as the declarations and

7    certifications demonstrate), Plaintiffs lack standing and subject matter jurisdiction under Section

8    12 because they cannot satisfy the statute's "seller" requirement.  *See, e.g., Credit Suisse First*

9    *Boston Corp. v. ARM Fin. Group, Inc.*, 2001 WL 300733, at *10 (S.D.N.Y. Mar. 28, 2001)

10   (allegations that defendants "solicited the sale" of stock are "insufficient to confer standing"); s*ee*

11   *also* MTD at 10 and n.7.

12        Accordingly, the Court can and should dismiss Plaintiffs' Section 12 claim for failure to

13   satisfy the statutory seller requirement under Rule 12(b)(1) as well as Rule 12(b)(6), and in doing

14   so may consider the declarations submitted by the Underwriters.  *Colwell*, 558 F. 3d at 1121.  As

15   shown above, the unrebutted declarations submitted by the Underwriters (as well as Plaintiffs'

16   certifications) conclusively demonstrate that the Underwriters did not sell or pass title to the

17   Plaintiffs, and the Opposition's attempt to convert them into statutory sellers because they

18   performed the kinds of services routinely provided by all underwriters in all securities offerings

19   are wholly unavailing.  *See* prior discussion at p. 5.

20   **C.**    **Plaintiffs Cannot Discharge Their Burden of Establishing Subject**
            **Matter Jurisdiction Over the Section 11 Claim.**
21

22        The established fact that none of the Plaintiffs purchased stock in the Offering also

23   demonstrates the absence of subject matter jurisdiction over their Section 11 claim, because, as

24   the Underwriters have shown, it is impossible for any Plaintiff who did not purchase shares in the

25   Offering to trace fungible shares of common stock to the Offering.  *See* MTD at 10-12.  Plaintiffs'

26   purchases prior to the January 29, 2009 Offering are not part of the tracing universe.  *See, e.g.,*

27   *Peters*, 550 F. Supp. 2d at 1376 n.76.  Although as a conceptual matter shares purchased on or

28   after January 29, 2009 are in the universe, that fact is irrelevant unless it is possible to trace them

1   to the Offering.  With the exception of shares purchased in the Offering, it is not possible to do

2   so.[6]

3       The Prospectus Supplement notes that over 49 million Century Aluminum common shares

4   were traded in the open market prior to the Offering.  RJN Ex. A. at S-8.  An additional

5   24.5 million shares were added to the market once the Offering concluded.  *Id*.  Thus, post-

6   Offering there were almost 75 million fungible shares trading on the open market, and there is no

7   way for Plaintiffs to demonstrate that any of their shares were issued under the subject

8   registration statement.

9       In *Hertzberg*, 191 F.3d at 1080, the Ninth Circuit pointedly emphasized that plaintiffs face

10  a "problem of proof in a case in which stock was issued under more than one registration

11  statement."  (Emphasis added.)  That admonition, which was delivered in a case that did not even

12  involve multiple registration statements, has been applied in numerous cases that dismiss

13  Section 11 claims because plaintiffs failed to satisfy their burden of proof on tracing when there

14  are multiple registration statements.

15      *Krim* cited *Hertzberg* three times in holding that an expert declaration establishing that it

16  was 99.85% certain that plaintiffs' shares were purchased in the offering at issue was insufficient

17  to meet the requirements of Article III.  402 F.3d at 492-93, 496, 500.  In so doing, the court

18  provided a detailed explication of the statutory and Constitutional underpinnings for the mandate

19  that "aftermarket purchasers seeking Section 11 standing must demonstrate [not merely plead]

20  that their shares are traceable to the challenged registration statement."  *Id*. at 502 (emphasis

21  added).

22      Similarly, *Peters* cited *Hertzberg* in rejecting the argument Plaintiffs proffer here, *i.e.*

23  "that they should not be required to prove, as opposed to allege, at the motion to dismiss stage"

24  that an aftermarket purchase "can be traced to the allegedly false and misleading secondary public

---

25      [6] Plaintiffs' reliance on *In re Intrabiotics Pharma., Inc. Sec. Lit.*, 2006 WL 708594 (N.D. Cal.
26  Jan 23, 2006) is unavailing.  That case did not involve a motion for lack of subject matter
    jurisdiction supported by evidence.  In addition, *Intrabiotics* is pre-*Twombly* and *Iqbal*, and thus
27  the court was not required to analyze whether tracing was "plausible" in a fungible trading
    universe consisting of a pool of millions of publicly trade shares, and is contrary to this Court's
28  decision in *Lilley v. Charren*.

1    offering." 550 F. Supp. 2d at 1374-75 (emphasis added). In *Exodus Commc'n*, Judge Chesney

2    dismissed a Section 11 claim because plaintiffs failed to meet their "burden of <u>proof</u>" on standing

3    and subject matter jurisdiction. 2006 WL 2355071, at *2 (citing *Vacek v. United States Postal*

4    *Service*, 447 F.3d 1248, 1250 (9th Cir. 2006)) (emphasis added).

5        The Opposition, again, makes no attempt to explain how Plaintiffs could possibly trace a

6    single share to the Offering, much less discharge Plaintiffs' evidentiary burden under Rule

7    12(b)(1). Absent such a showing, the Section 11 claim must be dismissed for lack of subject

8    matter jurisdiction under Rule 12(b)(1). *See, e.g., Peters*, 550 F. Supp. 2d at 1376 (dismissing

9    Section 11 claim for lack of subject matter jurisdiction where "plaintiffs have not suggested what

10   evidence they intend to use to show particular shares purchased by [lead plaintiff] can be traced to

11   the stock issued in the SPO").[7]

12 **III.    PLAINTIFFS' '33 ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) ON SEVERAL ADDITIONAL GROUNDS.**

13

14        As demonstrated above, the claims asserted against the Underwriters should be dismissed

15   at the threshold and in their entirety, for failure to state a claim under Rule 12(b)(6) and for lack

16   of subject matter jurisdiction under Rule 12(b)(1). Although the analysis can stop there, it is also

17   clear that the Opposition fails to rebut the MTD's showing that the FAC suffers from several

18   other fatal defects, as outlined below.

19      **A.    <u>Plaintiffs Cannot Plead Facts Showing That the Underwriters Breached A Duty of Due Diligence.</u>**

20

21        The Opposition offers no argument whatsoever in response to the Underwriters' showing

22   that the FAC fails to plead facts sufficient to show that they breached a duty of due diligence.

23   Nor does the Opposition show why it was not reasonable for the Underwriters to have relied on

24   Deloitte & Touche which had audited and reviewed the financial statements used in the Offering

25

26      ───────────────
        [7] Because Plaintiffs' inability to establish subject matter jurisdiction requires dismissal as a

27   matter of law, further analysis is unnecessary. It is nevertheless worth noting that permitting the Section 11 claim to move forward would impose unnecessary costs and burdens on the litigants

28   and the Court. Plaintiffs would never be able to meet their burden of tracing their shares to the Offering.

1  and consented to the use of its name as an expert.  *See* MTD at 22-24.  As part of that showing,

2  the Underwriters cited *In re Countrywide Fin. Corp. Security*, 588 F. Supp. 2d 1132 (C.D. Cal.

3  2008), which holds that underwriters "may reasonably rely on auditors' statements" in connection

4  with claims based on accounting errors, and "have a due diligence defense on the face of the

5  [complaint]."  *Id*. at 1174-75, 1182.  The Opposition cites *Countrywide* three times on peripheral

6  points, but says nothing at all about its central holding.

7       Plaintiffs' allegation in the FAC that the Underwriters knew the financial statements in the

8  Prospectus Supplement were false but hid the truth and went forward with the Offering anyway

9  also runs afoul of other pleading standards.  Such allegations sound in fraud and must be pled in

10  accordance with Rule 9(b).  *See, e.g., In re Iasia Works, Inc. Sec. Litig.*, 2002 WL 1034041, at *5

11  (N.D. Cal. May 15, 2002) (Illston, J.) (allegations that defendants deliberately hid the truth and

12  failed to correct misleading prospectus sound in fraud under 9(b)).

13       The FAC fails to comply with Rule 9(b) because it makes no attempt to plead who had the

14  relevant knowledge, or how it was obtained, and offers none of the specifics required by the rule.

15  Instead, Plaintiffs mistakenly claim that they can make their fraud allegations disappear by

16  sorting some paragraphs in the FAC into a purported fraud category and others not.  *See* Opp. at

17  10 and n.8.

18       Moreover, any suggestion that Underwriters would risk their careers and reputations for a

19  single deal of average fees does not rise above the speculative level and thus fails to state a

20  plausible claim under the requirements set forth in *Twombly* and *Iqbal*.  *See, e.g., Wenger v.*

21  *Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998); *In re WRT Energy Sec. Litig.*, 1999

22  WL 178749, at *9 (S.D.N.Y. Mar. 31, 1999); s*ee also* MTD at 18-19.

23       **B.      Plaintiffs' Allegations Are Based On A False Premise.**

24

25       With respect to Plaintiffs' contentions regarding the Company's financial condition,

26  Plaintiffs are simply wrong that the restatement effected a dramatic revision to the Company's

27

28

1   financial position, cash and liquidity, or that it turned a company that was "cash rich" into one

2   that is "cash poor." Opp. 10-15.[8]

3        In fact, Plaintiffs' assertion that the restatement wiped out a "surplus" of over

4   $204 million in the Company's cash position in favor of a large loss (Opp. at 11) is contradicted

5   by the Company's March 2, 2009 8K (RJN Ex. B) that is referenced in the FAC. The 8K

6   demonstrates that the Company's cash position at the end of the reporting period was the same

7   before and after the restatement. *Id; see also* MTD at 15-16. As the Company notes, Century's

8   beginning and ending cash remained the same -- to the penny. *See* Reply In Support of Century

9   Defendants' Motion To Dismiss Consolidated Class Action Complaint ("Century's Reply") at 3.

10  The restatement also had no effect on the Company's balance sheet, income statement,

11  shareholders equity, and no bottom line effect on cash flows. *Id.*

12       Plaintiffs offer no explanation for the March 2, 2009 8K or other publicly-filed documents

13  that undermine the gravamen of their entire FAC. Nor can they. Moreover, it is the documents

14  themselves that are controlling, not Plaintiffs' attempt to paint an incomplete and therefore

15  incorrect financial picture by ignoring certain parts of the financial statements in favor of others.

16  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1999). Because Plaintiffs'

17  misleading financial and cash position allegations contradict documents relied on by Plaintiffs in

18  the FAC, they also fail to satisfy *Twombly* and *Iqbal's* requirement to plead "plausible" facts in

19  support of a claim.

20       **C.    Plaintiffs Have Abandoned the "Forward-Looking" Liquidity
             Statement.**

21

22       The Underwriters demonstrated in their opening memorandum that a single forward-

23  looking statement regarding the Company's "expectations" for liquidity in the coming 18 months

24  was neither false nor actionable because it was protected under the bespeaks caution doctrine and

25  by the PSLRA's safe harbor. *See* MTD at 19-22; FAC ¶¶ 19, 73. In response, Plaintiffs waste

26  both the Court's and the parties' time arguing that *different* statements, namely the restatement

27  _____

28       [8] The Underwriters join in the Company's reply memorandum which addresses the defects of
        the Opposition on matters of falsity and materiality in more detail.

and related historical statements, are not subject to these doctrines.  Opp. at 16-19 (top).  But the Underwriters' argument was unmistakably addressed only to the single forward-looking statement noted above.  *Id*.  Amazingly, despite their allegations of the falsity of this statement in the FAC (¶¶ 19, 73), Plaintiffs now concede that the forward-looking liquidity statement is not false and claim they never alleged it was.  Opp. at 17:14-17 and 18:1-2.

### D.     **Plaintiffs Fail To Plead A Section 15 Claim For "Control Person" Liability.**

Absent primary liability or standing to assert a Section 11 or 12 claim against the Underwriters, Plaintiffs' claim for control person liability likewise fails.  *See* MTD at 24.

Plaintiffs also offer no response to the Underwriters' showing that Plaintiffs' control person liability claim fails because they cannot plead "facts" showing that the Underwriters' possessed the actual power to control the issuer and its officers and directors.  *Id*. at 24; *Lilley*, 936 F. Supp at 716-17.  The Court should dismiss the Section 15 claim against the Underwriters accordingly.

### CONCLUSION.

For all of the foregoing reasons, the Court should dismiss the FAC with prejudice.

Dated: April 7, 2010                         ORRICK, HERRINGTON & SUTCLIFFE LLP


                                             By: _____*/s/ Robert P. Varian*_____
                                                            Robert P. Varian

                                             Attorneys for Defendants
                                             CREDIT SUISSE SECURITIES (USA) LLC AND
                                             MORGAN STANLEY & CO. INCORPORATED

OHS West:260885402.3

- 15 -

UNDERWRITERS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT (Case No. 3:09-CV-01001-SI)