1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON (SBN 76342)
2   bruce.ericson@pillsburylaw.com
    JEFFREY S. JACOBI (SBN 252884)
3   jeffrey.jacobi@pillsburylaw.com
    50 Fremont Street
4   Post Office Box 7880
    San Francisco, California 94120-7880
5   Telephone:  (415) 983-1000
    Facsimile:  (415) 983-1200
6
    Attorneys for Defendants
7   CENTURY ALUMINUM COMPANY,
    LOGAN W. KRUGER, MICHAEL A. BLESS, STEVE
8   SCHNEIDER, JOHN C. FONTAINE, JACK E.
    THOMPSON, PETER C. JONES, JOHN P. O'BRIEN,
9   WILLY R. STROTHOTTE, JARL BERNTZEN, WAYNE
    R. HALE, ROBERT E. FISHMAN and CATHERINE Z.
10  MANNING

11                  UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

| 14 | | No. C-09-1001-SI |
|----|----|----|
| 15 | In re CENTURY ALUMINUM COMPANY SECURITIES LITIGATION | [Consolidated with Nos. C-09-1103-SI, C-09-1162-SI, C-09-1205-SI] |
| 16 | | **CENTURY DEFENDANTS' MOTION TO DISMISS THIRD AMENDED** |
| 17 | | **CONSOLIDATED CLASS ACTION COMPLAINT (Doc. 99)** |
| 18 | This document relates to all actions. | |
| 19 | | Date:         Sept. 3, 2010 |
| 20 | | Time:         9 a.m. |
|    | | Courtroom:  10, 19th Floor |

Included Documents:
1. Notice of motion and motion
2. Statement of issues to be decided
3. Supporting memorandum

Filed separately:
1. Request for judicial notice, Doc. 61
2. 2d Supp. request for judicial notice, Doc. 101

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................1

ISSUES TO BE DECIDED ..............................................................................................1

SUPPORTING MEMORANDUM ....................................................................................2

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

II.    STATEMENT OF THE CASE ...............................................................................4

       A.     Background of the case .................................................................................4

       B.     The TAC versus the FAC .............................................................................5

III.   ARGUMENT ..........................................................................................................6

       A.     The Court should dismiss the Exchange Act claims ....................................6

              1.     Standards applicable to Exchange Act claims..................................6

              2.     The allegations of scienter do not suffice.........................................6

       B.     The Court should dismiss the Securities Act claims ..................................10

              1.     Standards applicable to Securities Act claims................................10

              2.     Plaintiffs lack standing to assert Section 11 claims........................11

              3.     New Plaintiff McNulty's claim is barred by the one-year
                     statute of limitations .......................................................................12

       C.     The control person claims do not suffice ...................................................13

       D.     The Court should dismiss with TAC without leave to amend.....................13

IV.    CONCLUSION .....................................................................................................14

1

## TABLE OF AUTHORITIES

2
**Page**

3
### Cases

4
*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ........................................................ 10, 11
5

6
*Barnes v. Osofsky,*
    373 F.2d 269 (2d Cir. 1967) ................................................. 11

7
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................. 10
8

9
*Benak v. Alliance Capital Mgmt. LP,*
    349 F. Supp. 2d 882 (D.N.J. 2004) ...................................... 13

10
*Glazer Capital Mgmt. v. Magistri,*
    549 F.3d 736 (9th Cir. 2008) ............................................... 8
11

12
*Grand Lodge of Pa. v. Peters,*
    550 F. Supp. 2d 1363 (M.D. Fla. 2008) ............................... 11

13
*In re American Funds Sec. Litig.,*
    556 F. Supp. 2d 1100 (C.D. Cal. 2008) ............................... 12
14

15
*In re Daou Systems, Inc.,*
    411 F.3d 1006 (9th Cir. 2005) ............................................. 10

16
*In re Downey Sec. Litig.,*
    No. CV 08-3261-JFW (RZx),
17
    2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ..................... 8

18
*In re Infonet Servs. Sec. Litig.,*
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) ............................... 6, 12
19

20
*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) ............................................... 7

21
*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ............................................... 10, 12
22

23
*In re Verifone Holdings, Inc. Sec. Litig.,*
    No. C-07-06140 MHP,
    2009 WL 1458211 (N.D. Cal. May 26, 2009) ...................... 8
24

25
*Lilley v. Charren,*
    936 F. Supp. 708 (N.D. Cal. 1996) ...................................... 10

26
*McCasland v. FormFactor Inc.,*
    No. C-07-5545-SI,
27
    2009 WL 2086168 (N.D. Cal. July 14, 2009) ...................... 9, 10, 12

28

Century's Motion to Dismiss TAC
Case No. C 09-1376 (SI)

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ........................................................... 10, 11

*Rubke v. Capitol Bancorp Ltd.,*
    460 F. Supp. 2d 1124 (N.D. Cal. 2006),
    *aff'd*, 551 F.3d 1156 (9th Cir. 2009) ....................................................... 13

*Rudolph v. UTStarcom,*
    560 F. Supp. 2d 880 (N.D. Cal. 2008).................................................... 13

*Steckman v. Hart Brewing, Inc.,*
    143 F.3d 1293 (9th Cir. 1998) .............................................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................. 2, 3, 10, 13

*Tombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985) ............................................................. 12

*Twinde v. Threshold Pharms. Inc.,*
    No. C 07-4972-CW,
    2008 WL 2740457 (N.D. Cal. July 11, 2008) ......................................... 13

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) .............................................................. 6

**Statutes and Codes**

Private Securities Litigation Reform Act of 1995 ........................................... 1

Securities Act of 1933
    Section 11 ......................................................................... passim
    Section 12(a)(2) .............................................................. 3, 6
    Section 13 ....................................................................... 2, 12
    Section 15 ....................................................................... 6, 13

Securities Exchange Act of 1934
    Section 10(b) .......................................................... 1, 3, 6, 13
    Section 20(a) ................................................................ 6, 13

United States Code
    Title 15, Section 77m .................................................... 2, 12

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 8(a) ......................................................................... 1, 10
    Rule 9(b)....................................................................... 1
    Rule 12(b)(1) ........................................................... 1, 2, 11
    Rule 12(b)(6) ........................................................... 1, 2, 11

Rules of the Securities & Exchange Commission
    Rule 10b-5 .......................................................... 1, 6, 13

- iii -

1      **NOTICE OF MOTION AND MOTION**

2   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on Friday, September 3, 2010, at 9:00 a.m., or as

4   soon thereafter as counsel may be heard, in Courtroom 10 of this Court, located at

5   450 Golden Gate Avenue, 19th Floor, San Francisco, California, before the Honorable

6   Susan Illston, United States District Judge, defendants CENTURY ALUMINUM

7   COMPANY ("Century"), LOGAN W. KRUGER, MICHAEL A. BLESS, STEVE

8   SCHNEIDER, JOHN C. FONTAINE, JACK E. THOMPSON, PETER C. JONES, JOHN

9   P. O'BRIEN, WILLY R. STROTHOTTE, JARL BERNTZEN, WAYNE R. HALE,

10  ROBERT E. FISHMAN and CATHERINE Z. MANNING (the "Individual Defendants")

11  (Century and the Individual Defendants are collectively referred to as the "Century

12  Defendants") will and hereby do move this Court to dismiss, with prejudice, all purported

13  claims asserted against them in Plaintiffs' Third Amended Consolidated Class Action

14  Complaint, filed June 24, 2010 (Doc. 99) ("TAC").

15        This motion is made under Rules 8(a), 9(b), 12(b)(1) and 12(b)(6) of the Federal

16  Rules of Civil Procedure, and the Private Securities Litigation Reform Act ("PSLRA"), on

17  the grounds that Plaintiffs lack standing and the TAC fails to state a claim against the

18  Century Defendants.  This motion is based on this notice of motion and motion, the

19  memorandum that follows, the request for judicial notice filed January 15, 2010, Doc. 61

20  ("RJN"), the second supplemental request for judicial noticed filed herewith, Doc. 101 ("2d

21  Supp. RJN"), the Underwriters' Motion filed herewith ("Underwriters' Motion"), in which

22  Century Defendants join and which they incorporate by reference, the Court's Order

23  Granting Defendants' Motions to Dismiss and Granting Plaintiffs Leave to Amend, filed

24  April 27, 2010 (the "Order," Doc. 90, 2010 WL 1729426), and all pleadings and records

25  filed in this action.

26                    **ISSUES TO BE DECIDED**

27        1.      Should Count I, Plaintiffs' claim under Section 10(b) of the Securities

28  Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, be dismissed under Rule

1   12(b)(6) because the TAC fails to allege facts creating a strong inference of scienter, as

2   required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)?

3         2.      Should Count III, Plaintiffs' claim under Section 11 of the Securities Act of

4   1933 (the "Securities Act"), be dismissed under Rule 12(b)(1) or Rule 12(b)(6) because the

5   TAC does not allege facts showing that Plaintiffs bought stock in or traceable to the

6   secondary "shelf" offering of January 2009 (the "Offering"), without which they lack

7   Section 11 standing and this Court lacks subject-matter jurisdiction?

8         3.      Should Count III, Plaintiffs' claim under Section 11 of the Securities Act, be

9   dismissed as to new plaintiff McNulty because his Section 11 claim is barred by the

10   one-year statute of limitations (Section 13 of the Securities Act, 15 U.S.C. § 77m)?

11         4.      Should Counts II and IV, Plaintiffs' control person claims, be dismissed

12   because Plaintiffs have not alleged any primary violations?

13                 **SUPPORTING MEMORANDUM**

14   **I.**      **INTRODUCTION AND SUMMARY OF ARGUMENT**

15         The TAC – Plaintiffs' fourth attempt to plead a case – varies the verbiage in the

16   First Amended Complaint ("FAC," Doc. 66) but adds nothing of substance, and certainly

17   nothing that remedies the deficiencies found by the Order in the FAC's allegations of

18   scienter and traceability.  A red-line showing the differences between the FAC and the TAC

19   illustrates how little of substance has changed.  2d Supp. RJN Ex. 66, at 1545-1626.

20         **Scienter:**  Plaintiffs have scarcely touched their scienter allegations, which offer

21   nothing new.  Again, Plaintiffs present the same utterly implausible theme:  that Century

22   portrayed itself as "liquid and cash-rich, when – in reality – it was not."  TAC ¶ 18.  Again,

23   Plaintiffs ignore the prospectus's warnings that Century's operations were cash-flow

24   negative and not providing the liquidity Century needed.  RJN Ex. 22, at 827, 829, 831,

25   833, 852-54, 856-57, 871-74.  Again, Plaintiffs allege that in its earnings release and 10-Q

26   for Q3 Century somehow sought to bamboozle its investors through a GAAP error,

27   presenting one aspect of a transaction on the wrong part of the interim statement of cash

28   flows, as an "operating activity" rather than a "financing activity."  TAC ¶¶ 10-11.  Like its

Century's Motion to Dismiss TAC
Case No. C 09-1376 (SI)

1    predecessors, the TAC fails to set forth scienter allegations that satisfy the *Tellabs* strong

2    inference standard.  There are no new scienter allegations of note in the TAC – just word-

3    smithing of the same material this Court rejected in its Order.  Given that one shareholder,

4    Glencore, purchased the majority of the Offering for $59.6 million (TAC ¶¶ 8, 59; *see* RJN

5    Ex. 22, at 837 ("Glencore has subscribed to purchase 13,242,250 shares in this offering";

6    13,242,250 x $4.50 = $59,590,125), Plaintiffs' suggested inference that the Century

7    Defendants intended to defraud purchasers in the Offering is weaker than weak, and far

8    from the strong inference that *Tellabs* requires.

9        **Traceability:**  Although Plaintiffs have abandoned their claims under Section

10   12(a)(2), the TAC attempts to revive the Section 11 claim with new tracing allegations and

11   by adding a new plaintiff.  Both of these efforts fall far short.

12       Unable to allege facts showing that their purchases – none of which were on the day

13   or at the price of the Offering – are traceable to that Offering, Plaintiffs speculate that they

14   "could have" bought in the Offering because they know of no facts proving that they did

15   not.  But Plaintiffs have the burden, and such negative speculation does not pass muster.

16       Plaintiffs added new plaintiff, Chris McNulty, thinking that he, unlike the others had

17   bought on the day of the Offering, if not at the price.  See Second Amended Complaint

18   ("SAC"), Doc. 93, ¶ 140.  But then they found out otherwise, and had to file the TAC to

19   correct the SAC's error.  *Compare* SAC ¶ 140 *with* TAC ¶ 140 (this is the only difference

20   between the SAC and the TAC).  They thus are left with a new plaintiff, who, just like the

21   original plaintiffs, lacks standing because he too did not buy stock in or traceable to

22   Century's Offering.  Even if he had standing, McNulty's claim would be barred by the

23   statute of limitations because he first asserted his claim more than one year after the

24   original plaintiffs filed their complaints.

25       The TAC thus fails to allege essential elements of each of its purported claims –

26   scienter under Section 10(b), or traceability under Section 11.  The TAC should therefore

27   be dismissed without leave to amend.

28

1    II.      **STATEMENT OF THE CASE**

2    A.       **Background of the case**

3            The Court is familiar with the background of this Action.  *See* Order at 1-5.  The

4    TAC adds nothing new to the underlying story, which is briefly recapped below.

5            In November 2004 and June 2005, Century entered into two hedges with Glencore

6    International ("Glencore"), a supplier and trader of commodities (the "Hedges").  RJN

7    Ex. 1, at 76.  On July 7, 2008, after three years of losses under the Hedges as a result of

8    increasing aluminum prices, Century terminated the Hedges.  RJN Ex. 32, at 1153.  The

9    next day it:  (1) held a conference call with analysts and investors, with a slideshow, to

10   explain the transaction (RJN Ex. 5-6); (2) filed an 8-K announcing that it had agreed with

11   Glencore to terminate the Hedges via the contemporaneous execution of four agreements,

12   each of which were attached in their entirety to the 8-K (RJN Ex. 3, at 186-260); and

13   (3) filed a 13D/A detailing Glencore's purchase of preferred stock from Century, including

14   all the cash that changed hands as part of this transaction (RJN Ex. 4, at 276-80).  *See also*

15   TAC ¶¶ 8, 60-63.  Through these disclosures, Century advised the public that:

16   •   Glencore discharged $1.832 billion of liabilities associated with the Hedges.  RJN

17       Ex. 5, at 295; Ex. 17, at 721.

18   •   Century made a cash payment of $225 million and gave Glencore a note for a deferred

19       settlement amount of $505.2 million.  RJN Ex. 3, at 188-89; Ex. 4, at 280; Ex. 7, at 354,

20       356; Ex. 8, at 412-14; Ex. 17, at 721-23, 752, 771; Ex. 22, at 847.

21   •   Century issued to Glencore 160,000 shares of preferred stock, convertible into

22       16,000,000 shares of common stock.  RJN Ex. 3, at 165, 175-76; Ex. 17, at 771.

23   •   Glencore paid Century, in cash, the purchase price of the preferred stock:

24       $1,090,259,200, which sum Century immediately paid back to Glencore in partial

25       settlement of Century's liabilities associated with the Hedges (as in the previous

26       motion, *see* Order at 3 n.5, we refer to this transfer of cash as the "touch-pass"

27       payment).  RJN Ex. 3, at 165, 175-76, 188-89, 200; Ex. 4, at 276, 280; Ex. 17, at 721.

28           On November 10, 2008, Century filed its 10-Q for the third quarter of 2008.  RJN

702285274v4                                              Century's Motion to Dismiss TAC
                                                         Case No. C 09-1376 (SI)

1  Ex. 17. The 10-Q contained unaudited financial statements, including an interim statement

2  of cash flows. *Id.* at 717. It is this cash-flow statement that Century later restated.

3       On January 29, 2009, following the fall 2008 meltdown of Wall Street and after the

4  recession had taken hold, Century made the Offering of 24.5 million shares of common

5  stock at $4.50. RJN Ex. 22. Glencore bought 54% of the Offering, or 13,242,250 shares.

6  *Id.* at 824, 837. The market perceived the Offering as dilutive; Century's stock price

7  dropped from $7.35 to $4.60 the day before the Offering. 2d Supp. RJN Ex. 68, at 1641.

8  Throughout February, Century's stock price continued downward, starting the month at

9  $3.70 and ending the month at $2.22. *Id.*

10       On Monday, March 2, 2009, Century filed an 8-K announcing the restatement of the

11  Q3 interim statement of cash flows and indicating that the old statement "should no longer

12  be relied upon." TAC ¶¶ 12-13; RJN Ex. 30, at 1063. The analysts who commented on

13  Century in the weeks following March 2, 2009 talked about many things, but never once

14  did any analyst who follows Century comment on the restatement. RJN Ex. 54-60.

15       As it had for months before the restatement, Century's stock price continued to

16  decline and finally bottomed at $1.06 on March 9. Since then, however, it has trended

17  upward. By May 1, 2009, it again exceeded the Offering price of $4.50. The stock price

18  has never been as low as $4.50 again and has closed as high as $18.05 (on January 11,

19  2010). On the last full trading day before the filing of this motion (July 8, 2010), the stock

20  price closed at $9.47. 2d Supp. RJN Ex. 68, at 1641-42.

21  **B.**    **The TAC versus the FAC**

22       Plaintiffs filed their Consolidated Complaint on November 17, 2009. Doc. 51.

23  Defendants filed their first set of motions to dismiss on January 15, 2010. Doc. 61-65.

24  Eleven days later, Plaintiffs announced that they wished to amend, both to add the

25  Section 11 claim they say was inadvertently omitted, and "to add additional allegations."

26  Doc. 66, at 1:6. After studying defendants' motions for nearly two weeks, Plaintiffs filed

27  the FAC. Doc. 66.

28       The Court issued its Order dismissing the FAC on April 27, 2010. Doc. 90. The

1   Order gave Plaintiffs until May 14, 2010 to amend.  Doc. 90, at 21.  Plaintiffs asked for,

2   and Defendants stipulated to, an additional two weeks, until May 28, 2010, to file a second

3   amended complaint ("SAC").  Doc. 93.  On May 28, 2010, Plaintiffs filed their SAC.  Doc.

4   94.  The SAC added a new plaintiff, Chris McNulty, who purportedly bought stock on the

5   day of the Offering, January 29, 2009.  SAC ¶ 140.  But thereafter, Plaintiffs requested that

6   Defendants stipulate to the filing of the TAC, to correct one mistake:  that new plaintiff

7   Chris McNulty purchased Century stock "on January 28, 2009, not January 29, 2009."

8   Doc. 99, at 1:13-17.  Plaintiffs thus filed the TAC after having had the opportunity to

9   review two sets of motions to dismiss, plus almost two months' study of the Order.

10       The TAC abandons the Section 12(a)(2) claim, leaving four claims:  (1) Section

11  10(b) of the Exchange Act and Rule 10b-5; (2) Section 20(a) of the Exchange Act;

12  (3) Section 11 of the Securities Act; and (4) Section 15 of the Securities Act.  For these

13  claims, the key issues before the Court are scienter (§ 10(b)) and traceability (§ 11).

14  **III.     ARGUMENT**

15  **A.      The Court should dismiss the Exchange Act claims**

16  **1.      Standards applicable to Exchange Act claims**

17       This Court has delineated the standards for pleading a Section 10(b) claim (Order at

18  5:27-7:21); thus, we need not review them here.  It bears emphasis, however, that Plaintiffs

19  cannot satisfy their pleading obligations by mischaracterizing documents.  If the documents

20  contradict the TAC, the documents control.  *Steckman v. Hart Brewing, Inc.,* 143 F.3d

21  1293, 1295-96 (9th Cir. 1998); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136,

22  1139 (9th Cir. 2003); *In re Infonet Servs. Sec. Litig.,* 310 F. Supp. 2d 1080, 1087-88 (C.D.

23  Cal. 2003).  This is significant because, as the Underwriters' Motion shows, Plaintiffs

24  attempt to manufacture an utterly implausible case mainly by mischaracterizing what

25  Century said to the market, in the prospectus for the Offering and otherwise.  *See*

26  Underwriters' Motion at 19-22.

27  **2.      The allegations of scienter do not suffice**

28       The TAC's scienter section has nothing new to say.  If one compares the "Scienter

1    Allegation" of the FAC (¶¶ 83-95) to the "Scienter Allegation" of the TAC (¶¶ 101-13), one

2    finds that, paragraphs numbers aside, hardly a word has changed.  Indeed, the only changes

3    are a little word-smithing in TAC's paragraphs 104 through 106:  the rephrasing of several

4    legal conclusions in paragraph 104, some additional rhetoric in paragraph 105, and some

5    tweaking of allegations regarding motive in paragraph 106.  *See* 2d Supp. RJN Ex. 66, at

6    1589-95.  Paragraph 106 now alleges that three of the individuals "have the motive to save

7    the Company from financial failure . . . in order to get the necessary capital for the

8    Company to continue."  *Id.* at 1590.  This small change adds nothing new and does not

9    enhance Plaintiffs' previous sparse motive-and-opportunity allegations, which this Court

10    already held insufficient.  "[P]laintiffs proceeding under the PSLRA can no longer aver

11    intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must

12    state specific facts indicating no less than a degree of recklessness that strongly suggests

13    actual intent."  Order at 9:8-10 (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d

14    970, 979 (9th Cir. 1999)).  Plaintiffs' minor changes do not meet this standard.

15        Outside its scienter section, the TAC contains nothing that improves its scienter

16    allegations.  The TAC adds a few paragraphs regarding the "Adjusted net cash provided by

17    operating activities" ("Net Operating Cash") in the January 2009 Registration Statement's

18    "non-GAAP calculation of Earnings before Interest, Taxes, Depreciation and Amortization

19    ("EBITDA")."  TAC ¶¶ 86-89, 155-59.  But the point of these allegations is not apparent.

20    The TAC nowhere alleges that these Net Operating Cash figures were inaccurate.  In

21    addition, "Adjusted net cash provided by operating activities" has nothing to do with

22    Century's EBITDA, aside from the fact that it happens to appear on the same page, in

23    different footnotes addressing different subjects.  *See* RJN Ex. 22, at 847, footnotes (8)-

24    (10).  EBITDA is a non-GAAP adjustment to accrual-basis net income (or loss) as shown

25    on the income statement (TAC ¶¶ 86-87); it has nothing to do with the GAAP statement of

26    cash flows – the one and only thing that the restatement restated.  RJN Ex. 30, at 1063-64.

27    Plaintiffs made exactly the same EBITDA arguments in their unsuccessful opposition to the

28    motion to dismiss the FAC.  *See* Doc. 75, at 7:2-8:10; Doc. 76, at 4:9-5:20.

1       Also outside of its scienter section, the TAC harps on the technical presentation of

2   the "touch-pass" payment in the Q3 interim statement of cash flows, filed four months after

3   the termination of the Hedges.  TAC ¶¶ 75-85.  The TAC does not add new allegations that

4   anything of substance was inaccurate, for example, that the cash at the start of the period

5   was wrong; that the cash at the end of the period was wrong; or that the net changes in cash

6   were wrong.  Rather, Plaintiffs again allege that certain cash flows associated with the

7   transaction should have been presented as "Cash Flows From Financing Activities," instead

8   of "Cash Flows From Operating Activities," and argue that this presentation error somehow

9   misled investors into thinking that Century was "cash rich."  TAC ¶¶ 10, 18, 79-92.  The

10  8-K announcing the restatement, however, provides a revised statement of cash flows and

11  shows that the changes were of no substance:  $929,480,000 moved from operating to

12  financing, *without any bottom line effects*.  RJN Ex. 30, at 1064.

13      The TAC also contains new allegations that certain Individual Defendants

14  "reviewed, approved and signed" certain SEC filings.  *See* TAC ¶¶ 34-44; 2d Supp. RJN

15  Ex. 66, at 1558-62.  For most of the Individual Defendants, the only SEC filings added by

16  paragraphs 34-44 are Century's 10-Ks from 2007 and 2008 (*id.*), neither of which is alleged

17  to be misleading in any respect.  For the other Individual Defendants, the only SEC filing

18  added by paragraphs 34-44 *and* alleged to be misleading is the 10-Q for Q3 2008.  *See* TAC

19  ¶¶ 34, 44 (alleged only as to Kruger and Bless).  But the Q3 10-Q hardly is news.  The

20  interim statement of cash flows in the Q3 10-Q has always been the focus of this case, since

21  the first complaint.  In any event, the signing of financial statements or SOX certificates

22  does not, without more, support an inference of scienter.  *See Glazer Capital Mgmt. v.*

23  *Magistri*, 549 F.3d 736, 747-48 (9th Cir. 2008); *In re Verifone Holdings, Inc. Sec. Litig.*,

24  No. C-07-06140 MHP, 2009 WL 1458211, at *8 (N.D. Cal. May 26, 2009) (holding that

25  allegations that defendants signed financial reports "add nothing substantial to the scienter

26  inquiry"); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *8-

27  *9 (C.D. Cal. Aug. 21, 2009) (holding individual defendants' signatures  on company's

28  public filings do not give rise to a strong inference of scienter).

Century's Motion to Dismiss TAC
Case No. C 09-1376 (SI)

1    Paragraph 48 (formerly FAC paragraph 47) contains a few additional words whose

2    only apparent purpose is to add to the "core operations" inference that failed in the FAC.

3    *See* Order at 9:12-11:18.  This Court found that the FAC contained "no allegations . . . to

4    suggest that management had any factual basis for knowing that GAAP required that the

5    one-time transaction should be classified under 'Cash Flows From Financing Activities' as

6    'Issuance of preferred stock' rather than netted against 'Due to affiliates' under 'Cash

7    Flows From Operating Activities.'"  Order at 11:2-6.  The same is true of the TAC.

8    Plaintiffs have tweaked one paragraph to allege another conclusion:  that the Exchange Act

9    Individual Defendants "were privy to confidential proprietary information involving the

10   Company's liquidity and cash flow, Glencore, the sale of the Company's preferred stock,

11   and its business, operations, prospects, growth, finances, financial condition, and cash flow

12   from operations."  TAC ¶ 48.  But the TAC still fails to allege any facts to "suggest that

13   management had any factual basis for knowing that GAAP required that the one-time

14   transaction should be classified" in a different way.  *See* Order at 11:3-4.  The TAC also

15   still "does not allege why the falsity of the original statements would have been obvious to

16   corporate management."  *See* Order at 11:6-7.

17       Thus, whether one focuses on the scienter allegations labeled as such (TAC ¶¶ 101-

18   113) or on the TAC as a whole, the TAC's negligible changes do not create the required

19   strong inference of scienter.  The only reasonable inference is that, a few days before

20   finishing their annual audit at the end of February 2009, Century's auditors spotted a

21   technical GAAP issue that they and Century had both missed when reviewing the 10-Q and

22   the prospectus and brought it to Century's attention, and Century then promptly corrected

23   it.  The contrary inference – that Century recklessly or intentionally defrauded its affiliate,

24   Glencore, by selling it over 13 million shares of stock in the Offering for $59.6 million, hid

25   the error until March, and then surfaced it and voluntarily made a restatement – is

26   implausible, and not cogent and compelling.  *McCasland v. FormFactor Inc.,* No. C-07-

27   5545-SI, 2009 WL 2086168, at *7-*8 (N.D. Cal. July 14, 2009) (*FormFactor II*).  The

28   inference Plaintiffs urge – that the Century defendants fiddled with the interim statement of

- 9 -

Century's Motion to Dismiss TAC
Case No. C 09-1376 (SI)

1   cash flows to portray Century as "cash rich" (TAC ¶¶ 18, 92) – is belied by what Century

2   actually said and what analysts actually saw.  The cash payments had been disclosed the

3   day after the termination, back in July 2008.  RJN Ex. 4, at 276.  The agreements that

4   disclosed the cash payment were incorporated by reference into the Q3 10-Q.  RJN Ex. 17,

5   at 786-87.  The prospectus said over and over that Century's operations were cash-flow

6   negative and not providing the liquidity Century needed.  RJN Ex. 22, at 827, 829, 831,

7   833, 852-54, 856-57, 871-74; *see* Underwriters' Motion at 19-22.  As in *FormFactor II,*

8   here Plaintiffs' inference of scienter is implausible and cannot satisfy *Tellabs.*

9   **B.      The Court should dismiss the Securities Act claims**

10  **1.      Standards applicable to Securities Act claims**

11          To state a Section 11 claim, the TAC must allege:  "(1) that the registration

12  statement contained an omission or misrepresentation, and (2) that the omission or

13  misrepresentation was material, that is, it would have misled a reasonable investor about the

14  nature of his or her investment."  *In re Daou Systems, Inc.,* 411 F.3d 1006, 1027 (9th Cir.

15  2005) (quoting *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403-04 (9th Cir. 1996)).  To

16  have standing, Plaintiffs must plead and prove that they purchased shares in, or traceable to,

17  the offering.  *Lilley v. Charren,* 936 F. Supp. 708, 715 (N.D. Cal. 1996); Order at 17:10-18.

18          Assuming *arguendo* that Rule 8 applies, a plaintiff must allege "enough facts to

19  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S.

20  544, 555-56, 570 (2007); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir.

21  2009).  This requires facts that add up to "more than a sheer possibility that a defendant has

22  acted unlawfully." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  A plaintiff must

23  provide "more than labels and conclusions, and a formulaic recitation of the elements of a

24  cause of action will not do." *Id.* at 1965; see also Order at 6:1-6.  A complaint asserting

25  allegations that are merely consistent with liability is insufficient because "'it stops short of

26  the line between possibility and plausibility of entitlement to relief.'"  *Moss,* 572 F.3d at 969

27  (quoting *Twombly,* 550 U.S. at 557).  And "the tenet that a court must accept as true all of

28  the allegations contained in a complaint is inapplicable to legal conclusions. . . .

Century's Motion to Dismiss TAC
                                                                Case No. C 09-1376 (SI)

1   '[including] legal conclusion[s] couched as [] factual allegation[s].'"  *Iqbal,* 129 S. Ct. at

2   1949-50 (citation omitted); *see also Moss,* 572 F.3d at 969; Order at 6:7-12.

3        Whether considered under Rule 12(b)(1) or Rule 12(b)(6), the allegations that

4   Plaintiffs bought in the Offering simply are not plausible; indeed, they are both implausible

5   on their face and demonstrably wrong.

6   **2.    Plaintiffs lack standing to assert Section 11 claims**

7        To minimize repetition, the Century Defendants join in, and incorporate by

8   reference, the Underwriters' arguments on this point.  Underwriters' Motion at 4-16.

9        The TAC contains new Section 11 traceability allegations.  TAC ¶¶ 134-152.  It

10  adds Chris McNulty, a new plaintiff, who, like the other Plaintiffs did not buy Century

11  stock on the day of or at the price of the Offering.  TAC ¶¶ 32, 139-141.  It adds several

12  conclusions and wishful thinking, along the lines of 'we don't have any reason to believe

13  we didn't buy in the Offering.'  *E.g.,* TAC ¶ 143.  And it adds some allegations about

14  trading volume and price movements.  TAC ¶¶ 147-149.  But these allegations do not show

15  that the Plaintiffs, new or old, bought in the Offering.  At most they create speculation, and,

16  as this Court has already held, such speculation does not suffice to meet Plaintiffs' burden

17  to show they have standing to pursue a Section 11 claim.  *See* Order at 18:23-19:22.

18       None of the Plaintiffs, including new plaintiff Chris McNulty, bought on the day of

19  or at the price of the Offering.  Instead, they bought the day before the Offering,

20  January 28, 2009, or the day after the Offering, January 30, 2009 – and in either case at

21  prices different from the Offering price of $4.50.  TAC ¶¶ 135, 137, 140, 141.  New

22  Plaintiff McNulty bought on the day *before* the Offering and then again in March 2009,

23  *after* the restatement was announced.  TAC ¶ 140 and Certification, Ex. 1; RJN Ex. 63, at

24  1528; 2d Supp. RJN Ex. 66, at 1602, 1625-26.

25       Purchases before an offering obviously cannot be traced to the offering and thus

26  cannot give the purchaser Section 11 standing.  *Grand Lodge of Pa. v. Peters,* 550 F. Supp.

27  2d 1363, 1376 (M.D. Fla. 2008) (citing *Barnes v. Osofsky,* 373 F.2d 269, 273 (2d Cir.

28  1967)).  Thus, Plaintiffs' purchases on January 28, 2009 give them no standing with respect

1   to the January 29, 2009 Offering.

2        Purchases after the Offering (be they a day after or, in McNulty's case, five weeks

3   after the Offering), cannot be traced to the Offering, because it was a secondary offering of

4   a common stock that had 49,052,692 shares outstanding already (RJN Ex. 22, at 841), so no

5   investor buying through a broker (as these Plaintiffs did) can identify the source of any of

6   the shares purchased.  The TAC thus still "does not allege facts showing that the named

7   plaintiffs' purchases are traceable to the January 29, 2009 offering."  Order at 18:19-22.

8   Therefore, Plaintiffs' Section 11 claims should be dismissed for lack of standing.

9   **3.     New Plaintiff McNulty's claim is barred by the one-year statute of limitations**

10        As noted, McNulty's claim to standing is, if anything, more defective than the

11  existing plaintiffs, because he bought only before the Offering and then five weeks after it.

12  TAC ¶ 140 and Certification, Ex. 1; RJN Ex. 63, at 1528; 2d Supp. RJN Ex. 66, at 1602,

13  1625-26.  But supposing *arguendo* he could be distinguished from the existing plaintiffs in

14  some way that gave him – but not the existing plaintiffs – standing, he would still have no

15  claim as a matter of law because his claim would then be time-barred.

16        A plaintiff asserting a Section 11 claim must allege and then prove that the claim

17  was brought (i) within one year from the time the challenged statement was discovered or

18  should have been discovered; and (ii) within three years after the underlying security was

19  first offered to the public.  15 U.S.C. § 77m; *see Tombs v. Leone*, 777 F.2d 465, 468 (9th

20  Cir. 1985); *In re Stac*, 89 F.3d at 1410.  The TAC alleges no facts showing that McNulty

21  complied with Section 13 and instead offers mere legal conclusions.  *See* TAC ¶ 197; *see*

22  *also In re Infonet Serv. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003).

23  McNulty knew or should have known about the alleged misstatements more than one year

24  before the SAC was filed on May 28, 2010, because McNulty's claim parrots allegations

25  first raised in plaintiff Eric Petzschke's complaint on March 9, 2009 – more than one year

26  before the TAC was filed.  *See* Doc. 1, at 13-15.  The existence of this complaint placed

27  McNulty on notice of his purported claims.  *See, e.g., In re American Funds Sec. Litig.*,

28  556 F. Supp. 2d 1100, 1108-10 (C.D. Cal. 2008) (holding that the existence of a complaint

1   containing claims that are "factually indistinguishable from those presented in later-filed

2   lawsuits – is nearly dispositive evidence that there was sufficient information in the public

3   sphere to impart inquiry notice on reasonable investors"); *Benak v. Alliance Capital Mgmt.*

4   *LP*, 349 F. Supp. 2d 882, 892 (D.N.J. 2004) (dismissing securities action as time-barred

5   because existence of earlier-filed complaint put plaintiffs on notice).  Thus, even if

6   McNulty had standing (and he does not), his claim would come too late.

7   **C.      The control person claims do not suffice**

8          To state a Section 20(a) claim, Plaintiffs must first state a claim under Section 10(b)

9   or Rule 10b-5.  Order at 14:10-14; *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 (9th

10  Cir. 2000); *Rudolph v. UTStarcom,* 560 F. Supp. 2d 880, 892-93 (N.D. Cal. 2008).  As

11  demonstrated above, the TAC does not state a Section 10(b) or Rule 10b-5 claim because it

12  does not satisfy *Tellabs*; therefore, Plaintiffs' Section 20(a) claim also must fail.

13         Similarly, to state a Section 15 claim, Plaintiffs must first state a violation of

14  Section 11.  Order at 19:23-28; *Twinde v. Threshold Pharms. Inc.*, No. C 07-4972-CW,

15  2008 WL 2740457, at *16 (N.D. Cal. July 11, 2008); *Rubke v. Capitol Bancorp Ltd.,* 460 F.

16  Supp. 2d 1124, 1151 (N.D. Cal. 2006), *aff'd*, 551 F.3d 1156 (9th Cir. 2009).  As Plaintiffs

17  lack standing and cannot trace their stock to the Offering (Underwriters' Motion at 4-16),

18  the Court should dismiss their Section 15 claim as well.

19  **D.      The Court should dismiss with TAC without leave to amend**

20         Plaintiffs drafted the FAC after close to two weeks' review of defendants' first

21  motions to dismiss.  *See* Doc. 61-66.  Plaintiffs filed the TAC after almost two months'

22  review of this Court's Order (Doc. 90).  Despite having been granted leave to do so,

23  Plaintiffs have failed to present the broker evidence and stock certificates they sought leave

24  to present.  See Underwriters' Motion at 4-6.  Sixteen months into this litigation, there is no

25  reason to think that another round of pleadings and motions would allow Plaintiffs to trace

26  their stock to an Offering in which they manifestly did not buy, or otherwise make a silk

27  purse out of this sow's ear.  For all these reasons, the dismissal should be without leave to

28  amend.

702285274v4

Century's Motion to Dismiss TAC
Case No. C 09-1376 (SI)

1   **IV.    CONCLUSION**

2         The Court should dismiss the TAC without leave to amend.

3         Dated:  July 9, 2010.

4                                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                                           BRUCE A. ERICSON
5                                          JEFFREY S. JACOBI
                                           50 Fremont Street
6                                          Post Office Box 7880
                                           San Francisco, California 94120-7880
7
                                           By /s/ Bruce A. Ericson
8                                                       Bruce A. Ericson

9                                          Attorneys for Defendants
                                           CENTURY ALUMINUM COMPANY,
10                                         LOGAN W. KRUGER, MICHAEL A. BLESS,
                                           STEVE SCHNEIDER, JOHN C. FONTAINE,
11                                         JACK E. THOMPSON, PETER C. JONES, JOHN
                                           P. O'BRIEN, WILLY R. STROTHOTTE, JARL
12                                         BERNTZEN, WAYNE R. HALE, ROBERT E.
                                           FISHMAN and CATHERINE Z. MANNING

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

702285274v4