FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re* CENTURY ALUMINUM COMPANY SECURITIES LITIGATION | Case No. C 09-1001 SI [Consolidate With Case Nos. C 09-1103 SI, C 09-1162 SI, C 09-1205 SI] |
| This document relates to all actions. | **PLAINTIFFS' OPPOSITION TO UNDERWRITERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | DATE: September 3, 2010<br>TIME: 9:00 A.M.<br>DEPT. 10, 19th Floor<br>JUDGE: Hon. Susan Illston |

## TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. PLAINTIFFS' ADDITIONS TO THE THIRD AMENDED COMPLAINT ....... 3

III. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CLAIMS PRESENTED IN THE THIRD AMENDED COMPLAINT ....... 6

A. Congress Intentionally Drafted Liberal Standing Requirements Under Section 11 ....... 7

B. Rule 12(b)(1) Only Applies To Challenges To A Court's Subject Matter Jurisdiction ....... 9

C. Defendants' Authorities are Inapposite ....... 12

IV. THE THIRD AMENDED COMPLAINT SUFFICIENTLY PLEADS A CAUSE OF ACTION FOR VIOLATION OF § 11 ....... 14

A. The Third Amended Complaint Sufficiently Alleges Standing ....... 15

B. Defendants' Arguments Are Insufficient To Defeat Plaintiffs' Standing Allegations ....... 18

V. THE AFFIRMATIVE DEFENSE OF DUE DILIGENCE CANNOT BE ESTABLISHED AT THE PLEADING STAGE ....... 20

VI. THE THIRD AMENDED COMPLAINT PLEADS A CAUSE OF ACTION FOR CONTROL PERSON LIABILITY UNDER § 15 ....... 23

VII. PLAINTIFF MCNULTY'S CLAIMS ARE NOT TIME BARRED ....... 24

VIII. CONCLUSION ....... 25

# TABLE OF AUTHORITIES

PAGE

## CASES

*Abbey v. Computer Memories, Inc.*,
634 F.Supp. 870 (N.D. Cal. 1986) ........................................ 1, 12

*Abramson v. Brownstein*,
897 F.2d 389 (9th Cir. 1990) ........................................ 5, 16

*Achtman v. Kirby, McInerney & Squire LLP*,
464 F.3d 328 (2d Cir. 2006) ........................................ 11

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ........................................ 24

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967) ........................................ 13

*Catholic Social Services v. I.N.S.*,
232 F.3d 1139 (9th Cir. 2000) ........................................ 24

*Colwell v. HHS*,
558 F.3d 1112 (9th Cir. 2009) ........................................ 7, 12

*Corley v. United States*,
556 U.S. ___, ___, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) ........................................ 8

*Danis v. USN Commn's, Inc.*,
73 F. Supp. 2d 923 (N.D. Ill. 1999) ........................................ 19

*Edwards v. Doe*,
331 Fed. Appx. 563 (10th Cir. 2009) ........................................ 11

*Forest Grove Sch. Dist. v. T.A.*,
129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009) ........................................ 8

*Fox v. Good Samaritan L.P.*,
No. C 04-0874 RS, 2010 U.S. Dist. LEXIS 29768 (N.D. Cal. March 29, 2010) ........................................ 15

*Grand Lodge of Pennsylvania v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008) ........................................ 12, 18

*Guenther v. Cooper Life Sciences, Inc.*,
759 F. Supp. 1437 (N.D. Cal. 1990) ........................................ 1, 12, 19

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed 2d 548 (1983) .......... 14, 21

*Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999) .......... *passim*

*Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007) .......... 15, 16, 20

*In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009) .......... 8, 12

*In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) .......... 14, 22

*In re Countrywide Fin. Corp. Sec. Litig.*, Lead Case No. CV-07-05295-MRP, 2009 U.S. Dist. LEXIS 32951 (N.D. Cal. Apr. 6, 2009) .......... 22

*In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005) .......... 23

*In re Gap Stores Sec. Litig.*, 79 F.R.D. 283 (N.D. Cal. 1978) .......... 22

*In re Global Crossings, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) .......... 1

*In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005) .......... 2, 16, 17, 19

*In re Lilco Securities Litigation*, 111 F.R.D. 663 (E.D.N.Y. 1986) .......... 17

*In re Marsh & McLennan Cos. Secs. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......... 2, 17

*In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993 (N.D. Cal. 1999) .......... 9

*In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260 (E.D. Wash. 2007) .......... 1, 15

*In re Quarterdeck Office Sys. Sec. Litig.*,
No. CV 92-3970-DWW (GHKX), 1993 U.S. Dist. LEXIS 19806 (C.D. Cal. Sept. 30, 1993) .......... 1

*In re Seagate Technologies Securities Litigation*,
115 F.R.D. 264 (N.D. Cal. 1987) .......... 17

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
266 F. Supp. 2d 1150 (C.D. Cal. 2003) .......... *passim*

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
No. 99-0109, 2000 U.S. Dist. LEXIS 15369, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) .......... 24

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir.1996) .......... 14

*In re Sterling Foster & Co., Inc. Sec. Litig.*,
222 F. Supp. 2d 216 (E.D. N.Y. 2002) .......... 1, 2, 17

*In re Stratosphere Corp. Sec. Litig.*,
1 F. Supp. 2d 1096 (D. Nev. 1998) .......... 2, 17

*In re Suprema Specialties*,
334 F. Supp. 2d at 649, *rev'd on other grounds*, 438 F.3d 256 (3rd Cir. 2006) .......... 2, 16, 17

*In re Surebeam Corp. Sec. Litig.*,
Case No. 03 CV 1721 JM, 2004 U.S. Dist. LEXIS 26951 (S.D. Cal. Jan. 3, 2005) .......... 23

*In re Thornburg Mortg., Inc. Sec. Litig.*,
683 F. Supp. 2d 1236 (D. N.M. 2010) .......... 7, 10

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
202 F. Supp. 2d 8 (S.D.N.Y. 2001) .......... 21

*In re Wells Fargo Mortgage Backed Certificates Litig.*,
No. C 09-01376 SI, 2010 U.S. Dist. LEXIS 39825 (N.D. Cal. Apr. 22, 2010) .......... 23, 24

*In re WorldCom, Inc. Sec. Litig.*,
346 F. Supp. 2d 628 (S.D.N.Y. 2004) .......... 21, 22

*In re WRT Energy Sec. Litig.*,
No. 96 Civ. 3610 (JFK), 1999 WL 17849 (S.D.N.Y. March 31, 1999) .......... 22

*In re ZZZZ Best Sec. Litig.*,
No. CV-87-3574-RSWL, 1989 U.S. Dist. LEXIS 8083 (C.D. Cal. May 25, 1989) .......... 2, 17

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) .......... 19

*Kirkwood v. Taylor*,
590 F. Supp. 1375 (D. Minn. 1984) .......... 1

*Krim v. pcOrder*,
210 F.R.D. 581 (W.D. Tex. 2002) .......... 13

*Krim v. pcOrder*,
No. A 00 CA 776 SS, 2002 U.S. Dist. LEXIS 6648 (W.D. Tex. Apr. 12, 2002) .......... 13

*Krim v. pcOrder.com*,
402 F.3d 489 (5th Cir. 2005) .......... 12, 13

*Levine v. AtriCure, Inc.*,
594 F. Supp. 2d 471 (S.D.N.Y. 2009) .......... 7, 10, 19

*Lilley v. Charren*,
936 F. Supp. 708 (N.D. Cal. 1996) .......... *passim*

*Lorber v. Beebe*,
407 F. Supp. 279 (S.D.N.Y. 1976) .......... 1

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) .......... 6, 7, 12, 13

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
295 F.3d 380 (3d Cir. 2002) .......... 10, 11

*Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*,
501 U.S. 252, 111 S. Ct. 2298, 115 L. Ed. 2d 236 (1991) .......... 3, 15, 19

*Milman v. Box Hill Systems Corp.*,
192 F.R.D. 105 (S.D. N.Y. 2000) .......... 19

*Rojas-Vega v. Cejka*,
Case No. 09-CV-2489 BEN, 2010 U.S. Dist. LEXIS 37897 (S.D. Cal. Apr. 15, 2010) .......... 15

*Safron Capital Corp. v. Leadis Technology, Inc.*,
274 Fed. Appx. 540 (9th Cir. 2008) .......... 8, 12

*Schwartz v. Celestial Seasonings, Inc.*,
178 F.R.D. 545 (D. Col. 1998) .......... *passim*

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992)........................................................9

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003)........................................................7, 14

*Warth v. Seldin*,
422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)........................................................15, 19

*Wegner v. Lumisys, Inc.*,
2 F. Supp. 2d 1231 (N.D. Cal. 1998)........................................................22

*W.R. Huff Asset Mgm't Co., LLC v. Deloitte & Touche*
549 F.3d 100 (2d Cir. 2008)........................................................10

**RULES AND STATUTES**

Fed. R. Civ. P.
8........................................................8, 23
9(b)........................................................8, 23
12(b)........................................................20
12(b)(1)........................................................*passim*
12(b)(6)........................................................5, 16, 24

15 U.S.C.
§ 77k........................................................1, 23
§ 77k(a)........................................................8, 19
§ 77k(b)(3)........................................................21
§ 77o........................................................1, 23
§ 78u-4 *et seq.*........................................................2

28 U.S.C.
§ 1331........................................................7
§ 1367........................................................11
§ 1367(a)........................................................11

**OTHER AUTHORITIES**

David I. Michaels, *Annual Review of Banking and Financial Law 2007: No Fraud? No Problem: Outside Director Liability for Shelf Offerings Under Section 11 of the Securities Act of 1933*, 26 Ann. Rev. Banking & Fin. L. 345 (Boston Univ. Ann. Rev. Bank. & Fin. 2007)........................................................9

Hillary A. Sale, Article: *Disappearing Without a Trace: Sections 11 and 12(a)(2) of the 1933 Securities Act*, 75 Wash. L. Rev. 429 (April 2000)........................................................9

Peter B. Oh, *Tracing*, 80 Tul. L. Rev. 849 (Feb. 2006)........................................................9, 20

## I. INTRODUCTION

Defendants[1] attempt to evade the Court's unambiguous holding that the Secondary Offering Registration Statement was materially false and misleading,[2] by demanding that Plaintiffs make an evidentiary "showing" to support their § 11 standing allegations.[3] However, ***no court has ever required this type of insurmountable evidentiary "showing" at the pleadings stage in order to plead a § 11 claim.***[4] Rather, the relevant case law demonstrates that well-pled ***allegations*** of standing alone – such as those in the Third Amended Complaint – are sufficient to withstand a motion to dismiss. *See, e.g., In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1280 (E.D. Wash. 2007) ("While it is not necessary to prove that the securities are traceable at the pleading stage, traceability must be alleged in the complaint") (citation omitted).[5]

The Third Amended Complaint sufficiently alleges that: (1) Plaintiffs purchased shares of

---

[1] "Defendants" refers collectively to all of the named Defendants in this action, *i.e.*, the Century Defendants as well as the "Underwriter Defendants." The term "Underwriters" or the "Underwriter Defendants" is limited to Morgan Stanley & Co. Incorporated ("Morgan Stanley") and Credit Suisse Securities LLC ("Credit Suisse"). This Opposition is also responsive to the Century Defendants' Motion to Dismiss Third Amended Consolidated Class Action Complaint ("Century Mem."), to the extent that that motion raises issues under sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o. *See* Century Mem. at 10-13.

[2] Dkt No. 90, at 12:19-21 ("On balance, . . . the Court finds that whether the misstatement here is material raises factual issues that cannot be resolved on the pleadings at this stage."). To the extent that Underwriter Defendants attempt to re-argue the existence of material misstatements in the Registration Statement, *see* Underwriters' Motion to Dismiss Plaintiffs' Third Amended Consolidated Class Action Complaint ("Underwriters' Motion") [Dkt No. 104] at 19-22, those arguments must fail. The Third Amended Complaint ("TAC") does not alter Plaintiffs' allegations concerning the underlying false and misleading statement in the Registration Statement – the same statement which the Court found sufficient to survive a motion to dismiss in its previous order. *See* TAC ¶¶ 153-65; Dkt No. 90, at *11-*12.

[3] *See* Underwriters' Motion at 5.

[4] The cases cited by Defendants do not alter this conclusion. *See, e.g., Guenther v. Cooper Life Sciences, Inc.*, 759 F. Supp. 1437, 1439 (N.D. Cal. 1990) (decided on a motion for summary judgment after plaintiffs had withstood a motion to dismiss and been given access to discovery); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875-76 (N.D. Cal. 1986) (decided on a motion for summary judgment, not a motion to dismiss); *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1377 (D. Minn. 1984) (same); *Lorber v. Beebe*, 407 F. Supp. 279, 286 (S.D.N.Y. 1976) (same); *see also In re Quarterdeck Office Sys. Sec. Litig.*, No. CV 92-3970-DWW (GHKX), 1993 U.S. Dist. LEXIS 19806, at *8-10 (C.D. Cal. Sept. 30, 1993) (decided on a motion for class certification and merely holding that statistical allegations of standing, rather than traceability to the pertinent offering, were insufficient give plaintiff standing to represent the class).

[5] *See infra*; *In re Global Crossings, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 247-48 (E.D. N.Y. 2002).

Century Aluminum common stock in the aftermarket; and (2) that those shares are traceable[6] to the Secondary Offering[7] and issued pursuant to the Registration Statement.[8] *See* ¶¶ 134-43. Such allegations, without more, have consistently been held sufficient to establish a *prima facie* case for violation of § 11.[9] *See* ¶¶ 134-52; *Hertzberg*, 191 F.3d at 1080; *In re Immune Response Sec. Litig.* ("*In re Immune Response*"), 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005); *In re Suprema Specialties, Inc. Sec. Litig.*, 334 F. Supp. 2d 637, 649 (D. N.J. 2004), *rev'd on other grounds*, 438 F.3d 256 (3rd Cir. 2006); *In re SeeBeyond Techs. Corp. Sec. Litig.* ("*In re SeeBeyond*"), 266 F. Supp. 2d 1150, 1171-72 (C.D. Cal. 2003); and *In re Sterling Foster & Co.*, 222 F. Supp. 2d 216; *In re ZZZZ Best Sec. Litig.*, No. CV-87-3574-RSWL, 1989 U.S. Dist. LEXIS 8083, at *49-*50 (C.D. Cal. May 25, 1989); *see also In re Marsh & McLennan Cos. Secs. Litig.*, 501 F. Supp. 2d 452, 491-92 (S.D.N.Y. 2006); *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 557 (D. Col. 1998); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1119 (D. Nev. 1998).

According to the Defendants, Plaintiffs must submit irrefutable evidence at the pleading stage,[10] which Defendants claim is impossible under current trade clearing practices. Underwriters' Motion at 10:3. This is not the law. Instead, it is well-settled that ***allegations*** that Plaintiffs purchased ***aftermarket*** shares from third parties is sufficient to state a claim under § 11, so long as those shares are alleged to have originated in the pertinent offering. *See Lilley v.*

---

[6] It is well-settled that aftermarket purchasers – *i.e.*, those who bought through intermediaries and/or third parties, and at prices or times different than those of the original offering – are provided standing to sue under § 11. *See, e.g., Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999) (§ 11 standing exists "regardless of whether [the plaintiff] bought in the initial offering, a week later, or a month after that").

[7] In February 2009, Century had completed a public offering of 24.5 million shares of its common stock, raising approximately $104 million in cash (the "Secondary Offering"). *See* TAC ¶ 11.

[8] Nevertheless, the Third Amended Complaint goes further, providing important background to the Secondary Offering which describes the circumstances which facilitated Plaintiffs' purchases of stock issued in the Secondary Offering. *See* TAC ¶¶ 144-52.

[9] Also, Defendants have not yet moved for summary judgment, and due to the strictures of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA") Plaintiffs' have not been afforded the opportunity to conduct any discovery. Accordingly, Underwriters' Motion to Dismiss should be judged solely on the allegations in the Third Amended Complaint.

[10] It is only through discovery that plaintiffs could even attempt to wade through today's complex electronic trading practices and conclusively prove that their shares were "new" Century Aluminum shares.

*Charren*, 936 F. Supp. 708, 716 (N.D. Cal. 1996). This conclusion is due, in part, because: (1) a challenge as to standing is not the same as challenge to the Court's subject matter jurisdiction (necessitating proof at the pleading stage under Rule 12(b)(1));[11] and (2) § 11 does not require that Plaintiffs purchase their shares directly from the Underwriter Defendants or even that Plaintiffs purchase shares on a particular day or at a particular price. *See, e.g., Hertzberg,*, 191 F.3d at 1080 (§ 11 standing exists "regardless of whether [the plaintiff] bought in the initial offering, a week later, or a month after that"); *In re SeeBeyond Techs. Corp. Sec.*, 266 F. Supp. 2d at 1171-72 ("The Court finds that, in this case, whether the plaintiff is able to trace its stock is not a question that can be resolved on [a motion to dismiss]."). Defendants' arguments contravene over 70 years of securities law precedent and undermine the remedial purpose of § 11 by imposing an insurmountable evidentiary hurdle which was not intended by Congress.[12]

Because the Third Amended Complaint sufficiently states a claim for violation of § 11, Plaintiffs respectfully request that the Court deny the Defendants' motions to dismiss in their entirety.

## II. PLAINTIFFS' ADDITIONS TO THE THIRD AMENDED COMPLAINT

The Third Amended Complaint substantively adds to the standing allegations in a number of important ways. The standing allegations make clear that the all of the named Plaintiffs, Stuart Wexler ("Wexler"), Peter Abrams ("Abrams"), Chris McNulty ("McNulty") and Cory McClellan ("McClellan"), have standing to pursue § 11 claims against the Defendants because, on information and belief, all of the Plaintiffs' purchased shares traceable to the Secondary Offering and pursuant to the Secondary Offering Registration Statement. ¶¶ 134-43. The amended

---

[11] It is for this reason that Plaintiffs move the Court to disregard the self-serving affidavits submitted by the Underwriter Defendants. *See* Plaintiffs' Motion to Strike, Disregard and Refuse to Notice the Declarations of Jill Ford, Ryan E. Fitzpatrick and Scott A. Gregory in Support of Underwriters' Motion to Dismiss Plaintiffs' Third Amended Complaint ("Plaintiffs' Motion to Strike") (filed concurrently herewith); *compare Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise*, 501 U.S. 252, 264, 111 S. Ct. 2298, 115 L. Ed. 2d 236 (1991) ("For purposes of ruling on a motion to dismiss for want of [statutory] standing, both the trial and reviewing courts must accept as true all material allegations of the complaint."), *with* Fed. R. Civ. P. 12(b)(1) (requiring the presentation of evidence once a court's subject matter jurisdiction is challenged).

[12] The Declarations proffered by the Underwriter Defendants should be disregarded by the Court. *See* Plaintiffs' Motion to Strike.

standing allegations also provide further details about the context of Plaintiffs purchases, such as the number of shares set aside for the public at large (at least 24,000,000 shares) and the effective date of the Registration Statement (January 28, 2009).[13] ¶¶ 144-152.

By way of example, the allegations concerning Plaintiff Wexler were amended as follows:

> 134. Lead Plaintiff Stuart Wexler purchased Century Aluminum securities directly traceable to Century Aluminum's Secondary Offering and was damaged thereby.
>
> 135. Upon information and belief, Lead Plaintiff Wexler purchased stock in the Secondary Offering – either directly or indirectly from the Underwriter Defendants – and pursuant to the Registration Statement (as defined supra). Through his agent and broker, Lead Plaintiff Wexler consummated the following purchases of Century Aluminum common stock:
>
> | Name | Security | Purchased | No. Shares | Price |
> |---|---|---|---|---|
> | Stuart Wexler | CENX | 01/28/09 | 5000 | $4.56 |
> | Stuart Wexler | CENX | 01/30/09 | 3000 | $3.56 |
>
> To the best of Lead Plaintiff Wexler's knowledge, each of the purchases of common stock above were made pursuant to the Registration Statement and were satisfied through common stock authorized and issued in the Secondary Offering and distributed by the Underwriter Defendants or their intermediaries and/or designees. Lead Plaintiff Wexler is unaware of any information which would suggest that the shares that his agent and broker purchased on his behalf were not either purchased directly – or through intermediaries – from the Underwriter Defendants under the terms of the Secondary Offering. Therefore, on information and belief, Lead Plaintiff Wexler purchased shares of Century Aluminum common stock that are traceable to the Secondary Offering and governed by the terms of the Registration Statement and distributed by the Underwriter Defendants.

*Id.* at ¶¶ 134-35. The amended allegations as to the other Plaintiffs go even further and provide more information concerning the identity, timing and circumstances of their stock purchases traceable to the Secondary Offering. *See* ¶¶ 136-43. According to Plaintiff Abram's broker, the shares purchased by Abrams came directly from Citigroup, which has a direct brokerage and stock-trading relationship with Defendant Morgan Stanley.[14] *See* ¶ 138.

---

[13] As discussed, *infra*, Underwriter Defendants erroneously state that Plaintiffs allege that the "Offering occurred on January 29, 2009." *See* Underwriters' Motion at 8. This is incorrect. In reality, Plaintiffs quite clearly allege that, for example, "the Underwriter Defendants began offering large amounts of Century Aluminum common stock for sale to the public on January 28, 2009," the date that the Underwriting Agreement – subsequently filed with the SEC – became effective. ¶ 149; *see* Century Aluminum, Current Report (Form 8-K), Ex. 1.1, at *13 (Feb. 3, 2009) (the "Underwriting Agreement") (giving the effective date of the Secondary Offering at "January 28, 2009").

[14] The Joint Venture Contribution and Formation Agreement was dated as of January 13, 2009. *See* Underwriters' Request for Judicial Notice in Support of Motions to Dismiss Third Amended Consolidated

In addition, Plaintiffs allege significant details about the mechanics of the Secondary Offering. *See* ¶¶ 144-52. For example, the Third Amended Complaint outlines the parameters of the Underwriting Agreement, which belies most of Defendants' arguments regarding the timing and sale of Century Aluminum stock in conjunction with the Secondary Offering. *See* ¶¶ 146 *et seq*. Among other things, the Third Amended Complaint alleges that the Underwriting Agreement provided that approximately 24,000,000 shares would be provided to the public at a price of $4.50 per share.[15] ¶ 146. Plaintiffs also alleges that, rather than beginning on January 29, 2009 as Defendants have argued, the Secondary Offering actually commenced on January 28, 2009, the date set forth in the Underwriting Agreement. ¶¶ 147-49. As the Third Amended Complaint provides in pertinent part:

> [T]he average volume of shares traded in Century Aluminum common stock in the year prior to the Secondary Offering was approximately 1.5 million shares per day, far less than the 44+ million shares traded on January 28, 2009 thru January 30, 2009. Accordingly, the only plausible conclusion is that beginning sometime on January 28, 2009 Morgan Stanley and Credit Suisse – either directly or through intermediaries – began flooding the market with Century Aluminum common stock that they had purchased in the Secondary Offering. It was this stock that Plaintiffs purchased, granting them standing under section 11 of the Securities Act.
>
> 148. Moreover, the change in price of Century Aluminum stock on January 28, 2009 is per se evidence that Morgan Stanley and Credit Suisse had begun flooding the market with shares gained directly through the Secondary Offering, which actually began on January 28, 2009, the date of the underwriting agreement between Century Aluminum and the Underwriter Defendants. *See* Century Aluminum, Current Report (Form 8-K), Ex. 1.1, at *13 (Feb. 3, 2009) (the "Underwriting Agreement"). Indeed, as the Underwriting Agreement sets forth:
>
>> 3. Terms of Public Offering. The Company is advised by you that the Underwriters propose to make a public offering of their respective portions

---

Complaint and to Strike ("Underwriters' RJN") [Dkt No. 108], Ex. B at 2 of 6. The Underwriters by inadmissible hearsay, attempt to provide evidence qualifying this relationship. Hearsay evidence is improper as an evidentiary basis and improper on a motion to dismiss. *See* Plaintiffs' Motion to Strike at 1-2. If the Underwriters wish to open discovery so that Plaintiffs may obtain additional clearing details, then the motion should either be converted to one for summary judgment or the PSLRA discovery should be lifted for this purpose.

[15] As discussed, *infra*, in addition to being inadmissible in conjunction with a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, any statement that "[t]he offering was not even priced until after the market closed on January 28, 2009," is belied by the Underwriting Agreement dated January 28, 2009, which specifically states that the offering price will be $4.50 per share. *See* ¶ 146; *see also Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990) (stating that review of a motion to dismiss is confined to the "contents of the complaint").

> of the Shares ***as soon after the Registration Statement and this Agreement have become effective as in your judgment is advisable.***

> *Id.* at *13 (emphasis added).

> 149. **The behavior of Century Aluminum's stock price demonstrates that the Underwriter Defendants began offering large amounts of Century Aluminum common stock for sale to the public on January 28, 2009, the precise date that the above-quoted Underwriting Agreement became effective.** *See* Underwriting Agreement, at *13. Indeed, once the Secondary Offering was commenced on January 28, 2009, the average price of Century Aluminum shares immediately decreased a full two dollars and seventy-five cents ($2.75), from a close of $7.25 on January 27, 2009 to a close of $4.60 on January 28, 2009. The reason for this drastic drop in price is that the Underwriter Defendants were contractually obligated to offer the shares to the public "initially" for no more than "$4.50 a share." *Id.* In fact, the only explanation for this major ($2.75) drop in price is that Morgan Stanley and Credit Suisse (or their agents, assignees or selected "dealers" *see infra*) had begun dumping millions of shares of Century Aluminum shares on the market at an average price of $4.50 – the exact price outlined in the Registrations Statement and required by the Underwriting Agreement. *See* Registration Statement, at 1; *see supra* ¶ 148.

¶¶ 147-49 (emphasis added).

These allegations explain why Plaintiffs' purchases of Century Aluminum stock were made in the aftermarket at prices other than $4.50 per share and explain why the purchases on January 28, 2009 are traceable to the Secondary Offering. *See id.* While the initial offering price was $4.50, the market quickly reacted to the influx of Century Aluminum shares on the market, altering the secondary market price. ¶ 149. Therefore, even though the Plaintiffs may have purchased shares on dates other than January 29, 2009, and for a price slightly different than the Secondary Offering price, the shares that they purchased were, upon information and belief, traceable to the Secondary Offering. *See* ¶¶ 149, 151. Plaintiffs' standing allegations are sufficient as a matter of law and the Defendants' motions to dismiss must be denied. *See infra* Part IV.

## III. THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CLAIMS PRESENTED IN THE THIRD AMENDED COMPLAINT

Defendants' arguments intentionally intertwine subject matter jurisdiction with standing. However, there are three "irreducible" components to subject matter jurisdiction which Defendants have not challenged: (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130,

119 L. Ed 2d 351 (1992) (internal citations and quotations omitted). This well-settled standard is easily satisfied, as it is in this case. *Id.*

As the Third Amended Complaint sets forth, this Court is vested with original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. ¶ 25. Moreover, Plaintiffs have sufficiently alleged that:

(1) they have been injured in fact, in the form of money damages due to the diminution in value of their shares due to Defendants' false and misleading statements in the Registration Statement, *see* ¶¶ 134, 136, 139, 142, 165, 168, 172, 195-96;

(2) the damage is the direct and proximate result of the false and misleading statements made by Defendants in the documents filed in conjunction with the Secondary Offering, *see* ¶¶ 165, 168, 172, 195;[16] and

(3) the grant of the relief requested will adequately redress the injury Plaintiffs have suffered, *see* Third Amended Complaint at 70.

As the United States Supreme Court has consistently held, allegations such as these are *per se* sufficient to confer subject matter jurisdiction on this Court, without regard to the § 11 statutory of the named Plaintiffs in an action.[17] *See, e.g.*, *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 476-77 (S.D.N.Y. 2009) and *In re Thornburg Mortg., Inc. Sec. Litig.*, 683 F. Supp. 2d 1236, 1254 (D. N.M. 2010).

### A. Congress Intentionally Drafted Liberal Standing Requirements Under Section 11

Only a challenge to one of the three "irreducible" elements of a Court's subject matter jurisdiction triggers Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)"), requiring the presentation of "evidence." *See Colwell v. HHS*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citing Rule 12(b)(1)). On the other hand, a challenge to a Plaintiffs' standing to sue under § 11 does not trigger Rule 12(b)(1) and does not necessitate the presentation of evidence or any particular evidentiary "showing" beyond well-pled allegations. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

The very text of § 11 demonstrates Congress' understanding that subject matter

---

16 *See also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'") (citation omitted).

17 In addition, Defendants have not challenged these elements as missing.

jurisdiction and statutory standing under § 11 are two very separate inquiries, with separate requirements under the law. *See* 15 U.S.C. § 77k(a) ("any person acquiring such security … may, either at law or in equity, in any court of competent jurisdiction, sue"). If Congress had intended that standing under § 11 be treated as a jurisdictional matter, subject to requirement that "evidence" be presented whenever such standing were challenged, there is no doubt that Congress could have included such a provision in the statute. *See, e.g.*, Fed. R. Civ. P. 9(b) (setting forth heightened pleading requirements for claims alleging fraud). Instead, Congress acknowledged the difference between subject matter jurisdiction and standing under § 11 by specifically making reference to a "court of competent jurisdiction" in the text of the statute. 15 U.S.C. § 77k(a). Such reference is not an accident and to conclude that subject matter jurisdiction and standing under § 11 are part and parcel of the same requirement would be to render superfluous Congress' express provision for a "court of competent jurisdiction." *Id.* Such a conclusion is contrary to traditional precepts of statutory construction and should not be countenanced. *See Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2549, 174 L. Ed. 2d 168 (2009). "[O]ne of the most basic interpretive canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant …." *Id.* (quoting *Corley v. United States*, 556 U.S. ___, ___, 129 S. Ct. 1558, 1560, 173 L. Ed. 2d 443 (2009)) (internal quotations omitted).

Therefore, taking into consideration Congress' expressed acknowledgment that statutory standing under § 11 is separate and apart from the question of a court's subject matter jurisdiction under Rule 12(b)(1), it is clear that standing under § 11 was intended by Congress to be subject only to the default notice pleading rules of Fed. R. Civ. P. 8. *See In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 546 (N.D. Cal. 2009) ("Courts generally apply Rule 8 to Section 11 claims where only non-fraud bases for liability are pled or where such claims are adequately distinguished from fraud claims.") (citing *Safron Capital Corp. v. Leadis Technology, Inc.*, 274 Fed. Appx. 540 (9th Cir. 2008)).

This conclusion is bolstered by the fact that it was Congress' intent that the securities laws be interpreted liberally to prohibit false and misleading statements such as those alleged in this

case.[18] Indeed, this was stated Congressional intent behind the Securities and Exchange Act of 1933 in general,[19] and more specifically § 11's ***express liberal allowance for tracing***. *See, e.g., Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992) (holding that plaintiffs are ***not*** required to "prove" traceability in order to withstand a motion to dismiss).[20]

Therefore, it would be contrary to both Congress' intent and the express provisions of § 11 to require that Plaintiffs do more than plead the traceability of their shares under the Secondary Offering.

**B. Rule 12(b)(1) Only Applies To Challenges To A Court's Subject Matter Jurisdiction**

Notwithstanding Congress' intent and the plain text of § 11, each of the Courts that have analyzed § 11 have come to the conclusion that, on a motion to dismiss, standing under § 11 is to be judged based solely on the allegations contained in the complaint. This is illustrated by a

---

[18] *See* David I. Michaels, *Annual Review of Banking and Financial Law 2007: No Fraud? No Problem: Outside Director Liability for Shelf Offerings Under Section 11 of the Securities Act of 1933*, 26 Ann. Rev. Banking & Fin. L. 345, 364 (Boston Univ. Ann. Rev. Bank. & Fin. 2007) ("'Section 11 places a relatively minimal burden on a plaintiff' because all she must show is 'a material misstatement or omission to establish [her] prima facie case.' This marks another significant distinction between Rule 10b-5 and Section 11, but here it is Section 11 that is more plaintiff friendly. Recall that plaintiffs asserting a Rule 10b-5 claim are subject to the rule's burdensome pleading standard – the scienter requirement.") (citations omitted).

[19] *See also In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 999 (N.D. Cal. 1999) (stating that the provisions for liability in § 11 evince "Congress's intent to penalize severely those who issue securities under false registration statements."); *see also* Peter B. Oh, *Tracing*, 80 Tul. L. Rev. 849, 860 (Feb. 2006) ("The express purpose of the Securities Act is to ***protect investors***.") (emphasis added); Hillary A. Sale, Article: *Disappearing Without a Trace: Sections 11 and 12(a)(2) of the 1933 Securities Act*, 75 Wash. L. Rev. 429, 494 (April 2000) (stating that conservative judicial interpretations of "tracing is underinclusive and potentially ***eliminates the consequences the statute was designed to impose***") (emphasis added).

[20] As one commentator has explained:

> In the shadow of the "Black Days," and the ensuing Great Depression, Congress enacted the Securities Act. Otherwise known as the "Truth About Securities" Act, this "remarkable piece of legislation" has the express purpose of "provid[ing] full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof." According to President Franklin Roosevelt, the Securities Act "adds to the ancient rule of caveat emptor, the further doctrine 'let the seller also beware.' It puts the burden of telling the whole truth on the seller." Specifically, through registration requirements, the Securities Act strives to provide investors with adequate disclosures and thereby guard against fraudulent offers and sales of all securities.

Peter B. Oh, *Tracing*, 80 Tul. L. Rev. at 861-62 (Feb. 2006) (citations omitted).

number of recent decisions in which courts analyzed this precise issue: *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.* ("*McKowan*"), 295 F.3d 380, 389-90 (3d Cir. 2002); *Levine*, 594 F. Supp. 2d at 476-77 and *In re Thornburg Mortg., Inc.*, 683 F. Supp. 2d. at 1254.

In *Levine*, defendants argued – as Defendants argue here – that the named plaintiff lacked standing to pursue their § 11 on behalf of the class and, by extension, the court lacked subject matter jurisdiction over plaintiffs' claims. *See Levine*, 594 F. Supp. 2d at 476. The district court disagreed; holding instead that the Supreme Court's precedent in *Lujan* sets forth the ***only*** requirements for subject matter jurisdiction and that mere allegations of traceability were sufficient to satisfy the requirements of Article III jurisdiction under § 11. *See id.* In pertinent part the court concluded:

> While statutory standing is not a substitute for constitutional standing, *see, e.g., W.R. Huff Asset Mgm't Co., LLC v. Deloitte & Touche*, 549 F.3d 100 (2d Cir. 2008), defendants' constitutional and statutory standing arguments rely on the same flawed interpretation of plaintiff's complaint – that its allegations show the absence of both loss causation and an injury-in-fact traceable to defendants actions – and thus fail for the same reason. ***Plaintiff alleges that he purchased AtriCure shares based on a false and misleading registration statement and shortly thereafter sold those shares at a loss. These allegations are sufficient at the pleading stage to satisfy the constitutional requirement of a traceable injury in fact as well as loss causation under §11 (though pleading loss causation is not plaintiff's burden under the statute).*** Plaintiff has not alleged that he resold his shares before the "first" disclosure of corrective information. Nor has he alleged that the decline in the value of AtriCure shares prior to his resale was otherwise not attributable to AtriCure's allegedly misleading registration statements. ***Thus plaintiff has not plead himself out of his complaint and he is entitled to proceed beyond the pleading stage.***

*Id.* (emphasis added). Using *Lujan* as the starting point, the *Levine* court concluded that the traceability requirement of § 11 is not the equivalent of subject matter jurisdiction. *See id.* The same outcome is warranted in this case.

Another district court reached substantially the same conclusion in *In re Thornburg Mortg., Inc.*, 683 F. Supp. 2d. at 1254. In *Thornburg*, the court concluded that that a potential lack of standing by the named plaintiffs does not – and could not – deprive the court of jurisdiction over plaintiffs' § 11 claims. *See id.* As the court reasoned:

> [E]ven if the Court were to find that the lack of a Lead Plaintiff with a cognizable claim against the September/January Offering Defendants were a requirement to properly state a claim against those Defendants, the Court is not convinced that lack-of-standing deprives the Court of jurisdiction over those potential claims. The

> supplemental jurisdiction statute, 28 U.S.C. § 1367, permits the Court to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The claims arising from the September and January offerings appear to be part of the same common nucleus of operative fact as the claims arising from the May and June 2007 offerings, as all are related to the same series of SEC filings by the same company, and so the claims all appear to be part of the same case or controversy. *See Edwards v. Doe*, 331 Fed. Appx. 563, 569 (10th Cir. 2009) (citing *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), for the "common nucleus of operative fact" standard for defining the reach of 28 U.S.C. § 1367(a)). Thus, even if the lack of a Lead Plaintiff with a claim against the September/January Offering Defendants would otherwise deprive the Court of subject-matter jurisdiction, the supplemental jurisdiction statute appears to remedy that jurisdictional problem.

*Id.* Accordingly, as the court in Thornburg concluded, § 11 does not implicate jurisdiction and would not – under any circumstances – deprive a court of jurisdiction. *See id.*

Similarly, in *McKowan*, the United States Court of Appeals for the Third Circuit faced an argument by defendants that the Court of Appeal did not have jurisdiction to decide an appeal of the grant of class certification because the representative plaintiff did not have standing under § 11. *See McKowan*, 295 F.3d at 389-90. The *McKowan* court concluded that the plaintiffs standing under § 11 did not implicate the Court's subject matter jurisdiction over the suit – or in the Third Circuit's case, its jurisdiction to hear an appeal of a decision on class certification. *See id.* In so deciding, the *McKowan* panel held:

> We dispense quickly with Berger's second argument, that the appellees have somehow put Berger's Section 11 standing into play. It is the limitation of Rule 23(f), not any arguments of the appellees, that determines our jurisdiction.

*Id.* at 390.

In a footnote in the *McKowan* opinion, the Third Circuit also positively referenced an *amicus curiae* brief submitted by the SEC in support of plaintiffs' standing claims, noting that: "The SEC filed an amicus curiae brief in this appeal stating its position that Section 11 is not limited to those who purchase in the offering but instead grants standing to all purchasers of registered securities." *McKowan*, 295 F.3d at 390 n.4.

As the *McKowan*, *Levine* and *Thornburg* courts concluded, alleging statutory standing under § 11 and establishing subject matter jurisdiction are two separate inquiries, the former incapable of determination at the pleading stage. *See id.*; *see also Celestial Seasonings, Inc.*, 178

F.R.D. at 557 ("The issue of tracing is a merits issue, not appropriate for consideration here.") Accordingly, a challenge to standing does not implicate Rule 12(b)(1), and does not require reference to evidence extrinsic to the pleadings. *See id.* As such, Plaintiffs are not required to produce evidence at this stage and the allegations in the Third Amended Complaint, taken as true, must govern Defendants' motions. *See infra*; ¶¶ 134-43.[21] The cases cited by Defendants do not alter this conclusion.

**C. Defendants' Authorities are Inapposite**

The cases cited by Defendants dealing with the interplay of subject matter jurisdiction and § 11 standing are inapplicable, non-persuasive and/or easily distinguished. *See* Underwriters' Motion at 7. For example, the two Northern District of California cases cited by the Underwriter Defendants regard standing on a motion for summary judgment – after discovery had been made available and plaintiffs had survived a motion to dismiss. *See Guenther*, 759 F. Supp. at 1439 (discussing statutory standing on a motion for summary judgment); *Abbey*, 634 F. Supp. at 875-76 (same).[22] Indeed, even the cases which appear facially favorable to Defendants hold only that a plaintiff must provide something more than simple boilerplate allegations of traceability to survive a motion to dismiss. *See, e.g., Grand Lodge of Pennsylvania v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008) (holding only that "the mere allegation that the purchase of the stocks were 'traceable to' the tainted registration statement and prospectus" is insufficient to survive a motion to dismiss). Nonetheless, all of these cases recognize that allegations alone – such as those in the Third Amended Complaint – are sufficient to state a claim under § 11.

Strikingly, the only case cited by Defendants that actually deals with the question of whether standing under § 11 is jurisdictional in scope, *Krim v. pcOrder.com*, 402 F.3d 489 (5th

---

[21] *See also In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. at 545-46 ("Courts generally apply Rule 8 to Section 11 claims where only non-fraud bases for liability are pled or where such claims are adequately distinguished from fraud claims.") (citing *Safron Capital Corp.*, 274 Fed. Appx. 540).

[22] Defendants also cite *Colwell v. HHS*, which curiously has nothing whatsoever to do with § 11. *See Coldwell*, 558 F.3d at 1121 *et seq*. Moreover, *Coldwell* merely restates the Supreme Court's Art. III standing requirements under *Lujan*, which as discussed, *supra*, Plaintiffs easily satisfy. *See Lujan*, 504 U.S. at 560.

Cir. 2005), should not be followed for a number of reasons.[23] First. *Krim* is not binding precedent on this Court and to the extent that it conflicts with existing Ninth Circuit and United States Supreme Court decisions, it must be set aside. *Compare Hertzberg*, 191 F.3d at 1080 (no mention of jurisdiction whatsoever), *with Krim*, 402 F.3d at 494 (reviewing the district court's dismissal for lack of jurisdiction under Rule 12(b)(1), an issue which was not challenged at any point, by any party). Second, *Krim* is easily distinguished on the procedural posture of that case: (a) plaintiffs in that action had already survived an initial motion to dismiss based upon their initial allegations of standing;[24] (b) plaintiffs were given the opportunity to conduct extensive discovery; and (c) defendants' motion to dismiss came after the trial court had denied the *Krim* plaintiffs' motion for class certification.[25] *See id.* Finally, and most importantly, the *Krim* panel did not independently analyze the question of whether § 11 standing should be treated as a question of fact or as an issue of subject matter jurisdiction under Art. III. This is extremely important, because it seems that neither party – at any point – challenged the district court's implicit conclusion that § 11 standing is jurisdictional in nature. The Fifth Circuit merely picked up where the district court left off, assuming without independently ascertaining, that § 11 standing implicates subject matter jurisdiction. For these reasons, *Krim* and the other cases cited by Defendants simply do usurp the Supreme Court's conclusion that standing is based on three "irreducible" elements, none of which implicate § 11 standing. *See Lujan*, 504 U.S. at 560.

Accordingly, because Defendants' arguments regarding Plaintiffs' standing do not rise to the level of a cognizable challenge to this Court's subject matter jurisdiction, the Court must accept Plaintiffs' standing allegations as true and need not take into consideration any materials outside the Third Amended Complaint.[26]

---

[23] Another case cited by Defendants, *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967), simply reiterates the unremarkable proposition that plaintiff can only avail himself of a § 11 claim if he bought stock issued pursuant to a particular offering document. *See* Underwriters' Motion at 11.

[24] *See Krim v. pcOrder*, No. A 00 CA 776 SS, 2002 U.S. Dist. LEXIS 6648, at *4-18 (W.D. Tex. Apr. 12, 2002) (denying defendants' motion to dismiss).

[25] *See Krim v. pcOrder*, 210 F.R.D. 581, 584-91 (W.D. Tex. 2002) (order denying class certification).

[26] Nonetheless, as explained, *infra*, even if the Court were to consider the self-serving declarations submitted by the Underwriter Defendants – which it should not – the Declarations do not conclusively deny

## IV. THE THIRD AMENDED COMPLAINT SUFFICIENTLY PLEADS A CAUSE OF ACTION FOR VIOLATION OF § 11

Pleading a violation of § 11[27] of the Securities Act is an extremely straightforward undertaking. A prosecuting party bears only the "relatively minimal burden" of establish that defendants have made a "material misstatement or omission" in connection with a registration statement. *See Herman & MacLean*, 459 U.S. at 382; *see also In re Stac*, 89 F.3d at 1403 ("The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or mis-representation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment").

This Court has already conclusively ruled that Plaintiffs have sufficiently alleged the presence of material misstatements in the offering documents.[28] *See* Dkt No. 90, at *11-*12 ("On balance, … , the Court finds that whether the misstatement here is material raises factual issues that cannot be resolved on the pleadings at this stage"). Accordingly, the only real issue raised by

---

Plaintiffs' standing. *See* Plaintiffs' Motion to Strike at 1-2. For instance, in her declaration, Jill Ford states that according to her review of the "records maintained by Credit Suisse in the ordinary course of business," she determined that "Vanguard Brokerage Services and Citigroup were not allocated any … stock in the Offering." DKT. No. 107, at *1; *see* DKT. No. 106 (same as to Morgan Stanley). This, however, only seems to suggest that Vanguard did not ***directly*** purchase shares from Credit Suisse. It does not mean that Vanguard did not obtain Secondary Offering shares in the secondary market, which would be traceable sufficient for standing under § 11. *See Hertzberg*, 191 F.3d at 1080. The affidavit of Ryan E. Fitzpatrick says even less, merely stating the obvious: that Plaintiffs' purchases were not at the original offering price of $4.50. However, a plaintiff need not purchase his shares at the exact offering price in order to have standing to sue under § 11. *See Celestial Seasonings*, 175 F.R.D. at 557. Moreover, these are precisely the type of factual questions which preclude dismissal of the Third Amended Complaint. *See Warren*, 328 F.3d at 1140 (holding that, at the pleading stage, a plaintiff "need only show that the facts alleged, if proved, would confer standing upon him").

[27] Section 11 is a "harsh, nearly strict-liability rule designed to make sure those involved in securities offerings meticulously prepare the registration statement." *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1170 n.47 (C.D. Cal. 2008) (emphasis added) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82, 103 S. Ct. 683, 74 L. Ed 2d 548 (1983)); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir.1996) ("*In re Stac*") ("No scienter is required for liability under § 11 [and] defendants will be liable for innocent or negligent material misstatements or omissions.") (citations omitted).

[28] This Court ruled in its previous order, dated April 27, 2010 that the allegations regarding the material misstatements in the offering document were sufficient to withstand a motion to dismiss. *See* Dkt No. 90 at *11-12. Plaintiffs' have not altered the allegations concerning those material misstatements. *See* Third Amended Complaint at ¶¶ 153-165. Accordingly, the same analysis would apply to Plaintiffs' allegations in the Third Amended Complaint. *See* Dkt No. 90, at *11-12; *Cf.* Underwriters' Motion at 19-22.

Defendants is whether Plaintiffs have standing to pursue their claims. As set forth below, the Third Amended Complaint adequately alleges standing.[29]

**A. The Third Amended Complaint Sufficiently Alleges Standing**

There is no heightened nor augmented pleading standard for judging standing allegations pursuant to § 11 of the Securities Act. As the Supreme Court has consistently held: "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts ***must accept as true all material allegations of the complaint***." *Metro. Washington Airports Auth.*, 501 U.S. at 264 (emphasis added), *accord Warth v. Seldin,* 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Defendants have not moved for summary judgment, and under the mandatory stay provisions of the PSLRA Plaintiffs have not been afforded the opportunity to conduct discovery. Therefore, Underwriters' Motion should be judged solely in relation to the allegations contained within in the Third Amended Complaint. *See In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d at 1280 ("While it is not necessary to prove securities are traceable at the pleading stage, traceability must be alleged in the complaint"); *see also Fox v. Good Samaritan L.P.*, No. C 04-0874 RS, 2010 U.S. Dist. LEXIS 29768, at *35 (N.D. Cal. March 29, 2010); *see also Rojas-Vega v. Cejka*, Case No. 09-CV-2489 BEN, 2010 U.S. Dist. LEXIS 37897, at *5 (S.D. Cal. Apr. 15, 2010) ("In deciding whether to dismiss the complaint for failing to state a claim, the court is generally bound by the facts and allegations contained within the four corners of the complaint") (citing *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007)).

The Third Amended Complaint alleges that each of the named Plaintiffs (Wexler, Abrams, McNulty and McClellan): (1) purchased stock in or traceable to the Secondary Offering; (2) pursuant to the Registration Statement. *See* ¶¶ 134-43. Plaintiffs' standing allegations also go further, recounting that, with counsel's assistance Peter Abrams was able to speak with his broker and relay even more information concerning the identity, timing and circumstances of his

---

[29] To the extent that Underwriter Defendants attempt to re-argue the existence of material misstatements in the Registration Statement, *see* Underwriters' Motion at 19-22, those arguments should fail. The Third Amended Complaint does not alter Plaintiffs' allegations concerning the underlying false and misleading statements in the Registration Statement – the same statements which the Court found were sufficient to survive a motion to dismiss in its previous order. *See* ¶¶ 153-65; DKT. No. 90, at *11-12.

purchases of stock traceable to the Secondary Offering. *See* ¶¶ 136-38. According to plaintiff Abram's broker, the shares Abrams purchased came directly from Citigroup, which maintains a direct brokerage and stock-trading relationship with Defendant Morgan Stanley. *See* ¶ 138. Accordingly, as the Third Amended Complaint reflects, Plaintiffs Wexler, Abrams, McNulty and McClellan, on information and belief, have standing to pursue this action against Defendants for violation of § 11. *See* ¶¶ 134-143.

In addition, the Third Amended Complaint alleges numerous details concerning the background of the trades at issue and the mechanics of the Secondary Offering. *See* ¶¶ 144-52. For example, the Third Amended Complaint outlines the parameters of the Underwriting Agreement, which belies most of Defendants' arguments regarding the timing and sale of Century Aluminum stock in conjunction with the Secondary Offering.[30] *See* ¶¶ 146 *et seq*. Among other things, the Underwriting Agreement provided that approximately 24,000,000 shares would be provided to the public at a price of $4.50 per share.[31] ¶ 146. Rather than beginning on January 29, 2009 as Defendants have argued, the Secondary Offering was actually commenced on January 28, 2009, the date that the Underwriting Agreement sets forth. ¶¶ 147-49.

Federal courts around the country have consistently held that such allegations are sufficient to withstand assailment at the pleading stage. *In re Immune Response*, 375 F. Supp. 2d at 1039 (holding that allegations of traceability alone were sufficient to state a claim under § 11); *In re Suprema Specialties*, 334 F. Supp. 2d at 649, *rev'd on other grounds*, 438 F.3d 256 (3rd Cir. 2006)

---

[30] The Underwriter Defendants argue that "probabilities are sharply" against Plaintiffs, because "[o]nly about 11 million of the 24.5 million shares issued in the Offering were available for trading in the after market ..." Underwriters' Motion at 13. Not only is this a factual matter, not appropriate for resolution on a motion to dismiss, *see Hydrick*, 500 F.3d at 985, but the Underwriter Defendants cite no document which supports this conclusory assertion. *See* Underwriters' Motion at 13. Moreover, even if the Underwriter Defendants' statement are true, that still leaves over 13,500,000 shares that were distributed directly to the public as part of the Secondary Offering. If Plaintiffs can trace their shares to *one* of these shares, they have standing under § 11. *See, e.g.*, *Lilley*, 936 F. Supp. at 716.

[31] As discussed *infra*, in addition to being inadmissible in conjunction with a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, any statement that "[t]he offering was not even priced until after the market closed on January 28, 2009," is belied by the Underwriting Agreement dated January 28, 2009, which specifically states that the offering price will be $4.50 per share. *See* ¶ 146; *see also Abramson*, 897 F.2d at 391 (stating that review of a motion to dismiss is confined to the "contents of the complaint").

(same); *In re SeeBeyond*, 266 F. Supp. 2d at 1171-72 (same); and *In re Sterling Foster*, 222 F. Supp. 2d at 243-248 (same); *see also In re Marsh & McLennan,* 501 F. Supp. 2d at 491 ("The pleading requirement for Section 11 standing is satisfied by 'general allegations that plaintiff purchased 'pursuant to' or traceable to [a] false registration statement'"); *Celestial Seasonings, Inc.*, 178 F.R.D. at 557 ("The issue of tracing is a merits issue, not appropriate for consideration here. It would be improper to deny class certification because either representative Plaintiff might have difficulties in proving his or her case"); *In re Stratosphere*, 1 F. Supp. 2d at 1119 (rejecting motion to dismiss where plaintiffs alleged purchases directly in offering at issue); *In re Suprema Specialties*, 334 F. Supp. 2d at 649 ("Because Plaintiffs have alleged that they have purchased 'in' or 'traceable to' the 2000 and 2001 secondary offerings, Plaintiffs have pled standing sufficiently at this motion to dismiss stage").[32]

In a number of recent cases, courts in the Ninth Circuit have reiterated this concept, holding that, while greater hurdles may be applicable at later stages in litigation, facially coherent allegations of traceability will invariably survive a motion to dismiss. For example, in *In re Immune Response*, the Court concluded that simply stating that purchases of stock were made pursuant to the relevant registration statement were sufficient under § 11:

> The Complaint expressly states that the § 11 claim is raised "on behalf of the Class of purchasers of IRC stock pursuant to the Prospectus and Registration Statement issued in connection with IRC's August 8-11, 2000 $15 million secondary public offering[.]" ... While further proof may later be required to establish whether any Plaintiffs actually did purchase through the secondary public offering, the

[32] *See also In re ZZZZ Best Sec. Litig.*, 1989 U.S. Dist. LEXIS 8083, at *49-50 ("[T]he motion before the Court is not one for summary judgment, but one for dismissal for insufficient pleading. Plaintiffs have alleged that they purchased ZZZZ Best securities, "some or all of which had been issued or distributed pursuant to the prospectus, dated December 9, 1986." It is the view of this Court, that plaintiffs' complaint sufficiently raises allegations of stock purchases directly pursuant to the initial offering and the registration statement inclusive therein. ***It is a question of proof regarding which stocks were purchased in the direct offering, and which purchases are too attenuated to invoke § 11 protection***. *Cf. In re Lilco Securities Litigation*, 111 F.R.D. 663, 671 (E.D.N.Y. 1986). *See also, In re Seagate Technologies Securities Litigation*, 115 F.R.D. 264, 267 (N.D. Cal. 1987) (where the Court in determining a class certification motion noted that the decision in @e [sic] was distinguishable because it involved a summary judgment motion which was brought after discovery which then revealed that plaintiffs could not trace their shares back to the registration statement at issue). Accordingly, movants' motion to dismiss this claim is denied") (emphasis added).

> Complaint provides sufficient grounds for a presumption of standing at this stage of the action.

375 F. Supp. 2d at 1039. A similar case, *In re SeeBeyond*, holds substantially the same, finding that rather minimal allegations that plaintiffs "acquired shares in connection with, or that are traceable to, SeeBeyond's secondary offering" were ample at the motion to dismiss stage. *See In re SeeBeyond*, 266 F. Supp. 2d at 1171. As the *In re SeeBeyond* court concluded, "whether the plaintiff is able to trace its stock is not a question that can be resolved on [a motion to dismiss]." *Id.* Like the plaintiffs in *In re SeeBeyond* and *In re Immune Response*, Plaintiffs' standing allegations are sufficient at this stage of the proceedings.[33]

**B. Defendants' Arguments Are Insufficient To Defeat Plaintiffs' Standing Allegations**

Defendants argue that the allegations in the Third Amended Complaint fail to "show" that Plaintiffs purchased Century Aluminum shares traceable to the Registration Statement and argue that any Plaintiff who bought from any broker (other than one of the Underwriters) faces an insurmountable electronic barrier in tracing their shares. Underwriters' Motion at 10:1-8. Defendants also argue that even if one of the Plaintiffs had bought directly from Defendant Morgan Stanley or Credit Suisse there would still be no basis for tracing shares because those shares could still be part of 49 million shares trading from the Company's initial public offering (not the Secondary Offering) because of the fungibility of shares in brokerage accounts. Underwriters' Motion at 10:25 to 11:2. In essence, the Defendants propose a draconian standard under which ***no Plaintiff could ever trace their shares at the pleading stage, even if they requested shares from the Secondary Offering directly from the*** Underwriters. Underwriters' Motion at 11:15-24. This impossible standard would prohibit any claim under § 11 arising out of a Secondary Offering; what the Defendants propose is ***not*** a pleading standard accepted by any

---

[33] Plaintiffs have gone farther than the usual allegations and, as such, have necessarily pled a prima facie violation of § 11. Even the cases which are facially favorable to defendants hold only that "conclusory" allegations of traceability are insufficient to maintain a claim at the pleading stage. *See, e.g., Grand Lodge of Pennsylvania*, 550 F. Supp. 2d at 1376 (holding only that "the mere allegation that the purchase of the stocks were 'traceable to' the tainted registration statement and prospectus" is insufficient to survive a motion to dismiss); *see also Lilley*, 936 F. Supp. at 716 (holding that plaintiffs must "allege the specific dates and facts that establish the representative plaintiffs' standing"); *Celestial Seasonings*, 178 F.R.D. at 557 (granting class certification and holding that standing had been adequately alleged).

court nor do they offer any authority in support of this argument.

To the contrary, Plaintiffs need not present evidence regarding statutory § 11 standing at the motion to dismiss stage. *See supra*; *Metro. Washington Airports Auth.*, 501 U.S. at 264, *accord Warth v. Seldin*, 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must ***accept as true all material allegations of the complaint***") (emphasis added). Further, because Plaintiffs have conclusively established subject matter jurisdiction sufficient to withstand a motion to dismiss under Rule 12(b)(1), this Court should not consider information outside the pleadings for purposes of statutory standing under § 11. *See Levine*, 594 F. Supp. 2d at 476. While more may be required to withstand a motion for summary judgment, only well-pled allegations are required at the pleading stage. *Cf.* Underwriters' Motion at 6-23; *Guenther*, 759 F. Supp. at 1439-40 (decided on a motion for summary judgment).

Defendants' arguments also invoke the universally renounced argument that Plaintiffs cannot maintain a suit under § 11 if they purchased shares in the aftermarket, as opposed to purchasing directly from the Underwriter Defendants. *Cf.* Underwriters' Motion at 9-13. Such arguments have been long discredited, with courts recognizing that § 11 specifically provides for "tracing," meaning that plaintiffs may bring suit so long as "tracing" has been alleged in the pleadings. *See supra*; *In re SeeBeyond*, 266 F. Supp. 2d at 1171; *In re Immune Response*, 375 F. Supp. 2d at 1039; *see also Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000) ("There is no language limiting claims to those investors who purchase their shares in a public offering").[34] The Ninth Circuit conclusively rejected this argument years ago, holding in *Hertzberg v. Dignity Partners* that a plaintiff could proceed under § 11 based on purchases made in the secondary market for securities. *See Hertzberg*, 191 F.3d at 1080. As the Ninth Circuit stated, a § 11 has standing to pursue his claim "regardless of whether he bought in the initial offering, a week later,

---

[34] *See also Milman v. Box Hill Systems Corp.*, 192 F.R.D. 105, 108 (S.D. N.Y. 2000) ("[T]he plain language of § 11 clearly demonstrates that standing to sue under the statute is not limited to initial purchasers. First, the enabling language of § 11 is broad in scope. By its terms, the statute applies to 'any person acquiring such security.'") (citing 15 U.S.C. § 77k(a)), *accord Danis v. USN Commn's, Inc.*, 73 F. Supp. 2d 923, 931-32 (N.D. Ill. 1999) (holding same).

or a month after that." *Id.* Other courts are in accord. Addressing a similar argument, the United States District Court of Colorado concluded that tracing remains a viable method of obtaining § 11 standing. *Celestial Seasonings*, 175 F.R.D. at 557. As such, the court concluded that other cases which limited the viability of the "tracing" method of standing wrongly decided:

> To the extent that other cases cited by Defendants would deny standing to Plaintiffs in this case, I consider them wrongly decided. None of them address the text of § 11, specifically allowing plaintiffs who purchased even over a year after an offering to bring a claim under that section, subject to proof of reliance, its damage provisions, addressing situations where plaintiffs bought stock at prices other than the offering price, or its relevant legislative history.

*Id.* Like the plaintiffs in *Hertzberg*, *Celestial Seasonings* and the pantheon of other cases which have allowed § 11 claims to proceed against underwriter and corporate defendants based on tracing, Plaintiffs have sufficiently pled their claims under Rule 12(b).

Defendants cannot escape liability for violation of § 11, especially at the pleadings stage, by denying Plaintiffs the statutorily sanctioned right to trace their shares to the Secondary Offering and Registration Statement.[35] *See* Peter B. Oh, *Tracing*, 80 Tul. L. Rev. at 899 (concluding that a restrictive interpretation of tracing under § 11 essentially "deprives security holders of private civil relief"). Moreover, while additional 'evidence' may be required after discovery has been conducted and completed, Plaintiffs need only plead traceability in order to maintain a claim under § 11.

## V. THE AFFIRMATIVE DEFENSE OF DUE DILIGENCE CANNOT BE ESTABLISHED AT THE PLEADING STAGE

Defendants cannot – as a matter of law – establish that they exercised reasonable due

---

[35] Also, Defendants argue that Plaintiffs may not base their standing allegations on statistical probabilities. Plaintiffs agree, § 11 clearly requires that ownership of the relevant securities be traced to the pertinent offering. *See Herzberg*, 191 F.3d at 1080. However, Defendants want to utilize probabilities when such arguments benefit them. For instance, the Underwriter Defendants argue that "probabilities run sharply" against Plaintiffs, because "[o]nly about 11 million of the 24.5 million shares issued in the Offering were available for trading in the aftermarket …" Underwriters' Motion at 13. Not only is this a factual matter, not appropriate for resolution on a motion to dismiss, *see Hydrick*, 500 F.3d at 985, but the Underwriter Defendants cite no document which support this conclusory assertion. *See* Underwriters' Motion at 13. Moreover, even if the Underwriter Defendants' statement are true, that still leaves over 13,500,000 shares that were distributed directly to the public as part of the Secondary Offering. If Plaintiffs can trace their shares to *one* of these shares, they have standing under § 11. *See, e.g., Lilley*, 963 F. Supp. at 716.

diligence sufficient to defeat a § 11 claim at the pleading stage. *See* 15 U.S.C. § 77k(b)(3). The so-called 'due diligence' defense is an affirmative defense, unsusceptible to determination on the pleadings as a mixed question of fact and law. *See, e.g., Herman & MacLean*, 459 U.S. at 382 ("defendants bear the burden of demonstrating due diligence"). Moreover, to the extent that a defense exists based on "accounting-related allegations in one year … because underwriters may reasonably rely on auditors' statements," *see* Underwriters' Motion at 18 n.10, such a defense is unavailable to Defendants because – as the Third Amended Complaint sets forth, the financial statements under consideration in this case were not audited. *See, e.g., In re WorldCom, Inc. Sec. Litig.* ("*WorldCom*"), 346 F. Supp. 2d 628, 683 (S.D.N.Y. 2004) (denying summary judgment as to unaudited financial statement, even where accountants provided "comfort letters" to underwriters).

The Third Amended Complaint specifically alleges that the Underwriter Defendants breached their duty of due diligence by unreasonably failing to heed red flags concerning the misstatements in the Registration Statement. *See* ¶¶ 166-71. These allegations are –without more – sufficient to withstand a motion to dismiss. *See, e.g., In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.* ("*Turkcell*"), 202 F. Supp. 2d 8, 12 (S.D.N.Y. 2001) (summarily refusing to grant a motion to dismiss on due diligence grounds).[36] This is particularly true where, as it is in this case, the misstatements at issue were part of an unaudited financial statement such as an interim statement of cash flows. For example, in *WorldCom* the United States District Court for the Southern District of New York held that:

> In order to succeed with a due diligence defense, the Underwriter Defendants will have to show that they conducted a reasonable investigation of the non-expertised [unaudited] portions of the Registration Statements and thereafter had reasonable ground to believe that the interim financial statements were true. In assessing the reasonableness of the investigation, their receipt of the comfort letters will be important evidence, but it is insufficient by itself to establish the defense.

---

[36] In pertinent part, the *Turkcell* court stated:

> Section 11 does provide a due diligence defense for underwriters, but the burden of proof for the defense is on the defendants. The plaintiffs need not allege that defendants breached their duty of due diligence. Moreover, plaintiffs need not plead defendants' knowledge as there is no scienter requirement in section 11.

*Id.*

*WorldCom*, 346 F. Supp. 2d at 683. Considering the fact that the quotation above is from a motion for summary judgment (where defendants were able to introduce evidence to substantiate their affirmative defense) – as opposed to a motion to dismiss (where the complaint is the sole touchstone) – illustrates the great difficulty that the Underwriter Defendants will have satisfying their considerable burden of demonstrating the affirmative defense of due diligence in this action. *See id.* Nonetheless, there is no question that Plaintiffs' allegations fail to satisfy the Underwriter Defendants' burden. *See, e.g., In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 302 (N.D. Cal. 1978) (acknowledging that the due diligence defense is exceedingly difficult for an underwriter defendant to prove and stating that: "Either he must show that he conducted a reasonable investigation of the registration statement (which he probably was not in a position to have done) or a reasonable investigation of the manager's methods.")

Disregarding the actual allegations in the Third Amended Complaint, the Underwriter Defendants suggest that the Court take the extraordinary step of accepting their due diligence defense on the pleadings. *See* Underwriters' Motion at 17-19. Indeed, ***none of the cases cited by Defendants actually dismissed a § 11 claim against an underwriter defendant based on the due diligence defense***. *See* Underwriters' Motion at 18-19; *see Wegner v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998) (analysis under § 10(b), no mention of reasonableness or due diligence under §11); *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610 (JFK), 1999 WL 17849, at *9-10 (S.D.N.Y. March 31, 1999) (analysis concerning scienter under § 10(b), no mention of § 11 or the affirmative due diligence defense there under); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1174-75 (decision reversed in a later option by the same court dated April 6, 2009).[37]

---

[37] Defendants' reliance on *In re Countrywide Fin. Corp. Sec. Litig.* is misplaced; the District Court initially dismissed plaintiffs' claims with leave to amend, a later order of the court upheld plaintiffs' claims regarding due diligence. In doing so the court concluded:

> The SAC, unlike the CAC, sufficiently articulates why the due diligence defense is not apparent on the SAC's face. Claims against Underwriter Defendants for accounting-related statements for fiscal years 2006 and later may proceed.

*In re Countrywide Fin. Corp. Sec. Litig.*, Lead Case No. CV-07-05295-MRP, 2009 U.S. Dist. LEXIS 32951, at *16 (N.D. Cal. Apr. 6, 2009). As in the follow-up Countrywide case, Plaintiffs have sufficiently articulated that the Underwriter Defendants' due diligence defense is not apparent from the face of the

In a desperate attempt to bolster their claims, Defendants simply assume that Fed. R. Civ. P. 9(b) would apply to Plaintiffs' allegations against them. However, as discussed, *supra*, none of Plaintiffs' § 11 claims – including Plaintiffs' allegations regarding due diligence – sound in fraud; therefore, they are not subject to Fed. R. Civ. P. 9(b), but Fed. R. Civ. P. 8. *See, e.g., In re Surebeam Corp. Sec. Litig.*, Case No. 03 CV 1721 JM, 2004 U.S. Dist. LEXIS 26951, at *24 (S.D. Cal. Jan. 3, 2005) ("Lead Plaintiffs' allegations against the Underwriter Defendants, on the other hand, do not contain any allegations of fraud or intentional behavior. ... The Section 11 claims against the Underwriter Defendants are not subject to Rule 9(b)'s pleading requirements.").

## VI. THE THIRD AMENDED COMPLAINT PLEADS A CAUSE OF ACTION FOR CONTROL PERSON LIABILITY UNDER § 15

As demonstrated above, Plaintiffs have sufficiently pled a primary violation of § 11 of the Securities Act. *See supra*. Accordingly, pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o,[38] the Third Amended Complaint must only allege that each named defendant was a "control person" within the meaning of the statute in order to state a *prima facie* case for joint and several liability for the false and misleading statements in the Secondary Offering Registration Statement. *See In re Daou Sys.*, 411 F.3d 1006, 1029-30 (9th Cir. 2005); *see also In re Wells Fargo Mortgage Backed Certificates Litig.* ("*Wells Fargo*"), No. C 09-01376 SI, 2010 U.S. Dist. LEXIS 39825, *44-45 (N.D. Cal. Apr. 22, 2010) ("To state a claim for 'control person' liability, a plaintiff must plead (1) a primary violation of Section 11 or Section 12 and (2) 'that the alleged controlling person possessed, directly or indirectly, the power to direct or cause the direction of the

---

Third Amended Complaint due to their failure to heed the red flags concerning Century Aluminum's grossly overstated earnings numbers in conjunction with the Secondary Offering.

[38] As § 15 provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under [section 11 or 12] 15 USC § 77k or 77l, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

management and policies of the individual allegedly liable for the primary violation.'") (quoting *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. 99-0109, 2000 U.S. Dist. LEXIS 15369, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000)).

The Third Amended Complaint sufficiently alleges control on the part of the Underwriter Defendants. Specifically, Plaintiffs allege that the Underwriter Defendants had sufficient control over the Registration Statement and Secondary Offering to influence and/or change the information that was provided to investors. *See* ¶¶ 170-71. In addition, Plaintiffs allege that the Underwriter Defendants[39] should have known of the false statements in the Registration Statement due to their access to confidential information, participation in the Secondary Offering and duty to conduct due diligence. *See* ¶¶ 169-71. These allegations are sufficient, for purposes of Rule 12(b)(6), to allow Plaintiffs to proceed with their § 11 claims. *See Wells Fargo*, 2010 U.S. Dist. LEXIS 39825, at *44-45.

**VII. PLAINTIFF MCNULTY'S CLAIMS ARE NOT TIME BARRED**

The Century Defendants add an argument that Plaintiff McNulty's claims are outside of the applicable statute of limitations for a Securities Act claim. *See* Century Defendants' Motion to Dismiss at 12-13. This argument is meritless to the extent that it is contrary to the ubiquitous understating that, in federal court, the statute of limitations is tolled so long as a later-added plaintiff was a member of the class in the original complaint. *See, e.g., American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974); *Catholic Social Services v. I.N.S.*, 232 F.3d 1139, 1146-47 (9th Cir. 2000).

---

[39] As to the remaining Securities Act Defendants, the control person allegations under § 15 are even more compelling, as those Defendants actually held positions of authority at Century Aluminum and/or signed the Secondary Offering Registration Statement. *See* ¶¶ 191, 198-201; *Wells Fargo*, 2010 U.S. Dist. LEXIS 39825, *44-45 ("plaintiffs have adequately alleged that both Wells Fargo Bank and the individual defendants managed and directed the activities of Wells Fargo"). Therefore, for the same reasons that such control person allegations are sufficient to withstand a motion to dismiss and for the same reason they are sufficient under § 20, they are likewise sufficient to state a claim under § 15. *See* Century Mem. at 17.

## VIII. CONCLUSION

For the reasons set forth herein the Century Defendants' and Underwriter Defendants' Motions[40] to Dismiss Plaintiffs' §§ 11 and 15 claims should be DENIED in their entirety.

DATED: July 30, 2010

Respectfully submitted,

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT

Betsy C. Manifold

BETSY C. MANIFOLD

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: : 619/234-4599

Lead Counsel for Plaintiffs

CENTURYALUMINUM:17708v

40 The Century Defendants' Motion to Dismiss is sufficiently similar to the Underwriter Defendants' Motion regarding standing, and for the same reasons should be dismissed. *See supra*; Century Defendants' Motion to Dismiss at 10-12.