IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* CENTURY ALUMINUM COMPANY SECURITIES LITITGATION, | Nos. C 09-1001 SI, C 09-1103 SI, C 09-1162 SI, C 09-1205 SI |
| | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

Currently before the Court are the Century and Underwriter defendants' motions to dismiss the Third Amended Complaint ("TAC"). For the reasons discussed below, the Court GRANTS defendants' motions to dismiss and dismisses the Third Amended Complaint WITH PREJUDICE.

**BACKGROUND**

On January 29, 2010, plaintiffs filed a first amended consolidated class action complaint against Century Aluminum Company ("Century"), a number of Century officers and members of the Century Board of Directors ("Century defendants"), and two underwriters, Credit Suisse Securities (USA) LLC and Morgan Stanley & Co. ("Underwriter defendants"). Plaintiffs allege claims under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78 *et seq.*, and under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77 *et seq.*[1]

The background facts of this case have been set forth in detail in the Court's April 27, 2010 Order [Docket No. 90] and need not be repeated here. In short, the gravamen of all of plaintiffs' claims

---

[1] The Exchange Act defendants are the Century defendants, and the Securities Act defendants include all of the Century defendants as well the Underwriter defendants.

is that Century issued false and misleading financial statements in November 2008 and in connection with a January 29, 2009 secondary offering of common stock, and that these false and misleading statements incorrectly portrayed Century as "liquid and cash-rich, when – in reality – it was not." TAC ¶ 18. Plaintiffs allege that the truth about Century's financial condition was revealed when the company issued a restatement on March 2, 2009, and that upon news of the restatement, Century's stock dropped 24% to close at $1.67, compared to the previous trading day's close of $2.22, a loss of $40 million in market capitalization in one day. *Id*. ¶ 14.

The Court granted defendants' prior motions to dismiss plaintiffs' First Amended Complaint, with leave to amend. With respect to the Exchange Act claims against the Century defendants, the Court held that plaintiffs failed to adequately plead scienter. Order at 9-11.[2] The Court also dismissed plaintiffs' Section 20(a) claim for "control person" liability against the Century defendants, as plaintiffs had not adequately alleged a primary violation of Section 10b-5. *Id*. at 14. With respect to the Securities Act claims, the Court dismissed plaintiffs' Section 12(a)(2) claim for failure to sufficiently allege facts that they purchased in the January 2009 offering. *Id*. at 16-17. Similarly, the Court dismissed plaintiffs' Section 11 claim for failure to show that the named plaintiffs' purchases are traceable to the January 29, 2009 offering. *Id*. at 18. Finally, the Court dismissed plaintiffs' Section 15 claim for "control person" liability as plaintiffs had not adequately alleged a primary violation of the federal securities laws. *Id*. at 19.

Plaintiffs filed a Second Amended Consolidated Class Action Complaint on May 11, 2010, and a Third Amended Complaint ("TAC") by stipulation on June 29, 2010. Now before the Court are the Century defendants' and the Underwriters' motions to dismiss the TAC for failure to state a claim. The Underwriter defendants also move to strike plaintiffs' class allegations from the TAC. Plaintiffs oppose defendants' motions, object to the Century defendants' requests for judicial notice and move to strike portions of the Century defendants' memorandum in support of the motion to dismiss, and object to the declarations submitted by the Underwriters.

---

[2] The Court denied the motion to dismiss as to the adequacy of the Exchange Act allegations regarding materiality and loss causation. *Id.* at 12, 14.

2

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.   Exchange Act Claims**

Plaintiffs allege violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs assert that the Exchange Act defendants acted knowingly or were deliberately reckless in issuing materially false or misleading statements and/or failing to disclose material facts concerning the Company's business and financial condition between October 21, 2008 and March 2, 2009.

**A.   Scienter**

On the current motion, the Century defendants challenge plaintiffs' scienter allegations, arguing that plaintiffs have not added sufficient facts in their TAC to demonstrate that an inference of scienter

3

is appropriate here.[3] "[T]o adequately plead scienter, the complaint must [] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  "To adequately demonstrate that the defendant acted with the required state of mind, a complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Id.*, at 991.

Two exceptions to the rule that "general allegations" will not suffice to plead scienter are applied in the Ninth Circuit.  The first permits general allegations about "management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements" *when* these allegations are buttressed with "detailed and specific allegations about management's exposure to factual information within the company." *South Ferry LP #2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).  The second "permits an inference of scienter where the information misrepresented is readily apparent to the defendant corporation's senior management. Where the defendants 'must have known' about the falsity of the information they were providing to the public because the falsity of the information was obvious from the operations of the company, the defendants' awareness of the information's falsity can be assumed." *Zucco Partners*, 552 F.3d at 1001 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008)).

In its prior Order, the Court found that based on the allegations in the FAC, plaintiffs had "not shown that this case fits within either of the exceptions described in *Zucco*." Order at 10.  The Court specifically rejected plaintiffs' assertions that the "bare allegations that Century officers had access to financial statements and analyzed those" supported the inference that defendants knew about the accounting error.  *Id.* (citing *Glazer Capital Mgmt.*, 549 F.3d at 746).  The Court also rejected plaintiffs' assertion that defendants must have known about the accounting error because it involved a lot of money, noting that despite the accounting error found by Century's outside auditors, the error led to "no effect on net change in cash, assets, liabilities, shareholders' equity, net income (or loss), cash at the opening of the period, or on cash at the end of the period. Century disclosed all of the salient aspects

---

[3] To prove a violation of Rule 10b-5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

4

of the transaction terminating the Hedges, and the termination of the Hedges was a one-time event. There are no allegations in the complaint to suggest that management had any factual basis for knowing that GAAP required that the one-time transaction should be classified under 'Cash Flows From Financing Activities' as 'Issuance of preferred stock' rather than netted against 'Due to affiliates' under 'Cash Flows From Operating Activities.'" *Id*. at 10-11. The Court concluded, "[a]s in *Zucco*, the alleged misrepresentation is 'largely definitional' and the FAC does not allege why the falsity of the original statements would have been obvious to corporate management." *Id*. at 11.

The TAC does not add any specific facts that support a finding that either of the exceptions in *Zucco* applies here. Instead, plaintiffs simply add allegations that certain individual defendants "reviewed, approved and signed" various Century 10-Q and 10-K forms as well as other SEC filings. TAC ¶¶ 34-44. The Court has already noted that signing quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act does not, without more, support an inference of scienter. *See* Order at 9 (citing *Glazer Capital Mgmt.*, 549 F.3d at 747).[4]

Plaintiffs also reword the allegation that the individual defendants were privy to "confidential proprietary information" to specifically identify the confidential information as "involving the Company's liquidity and cash flow, Glencore, the sale of the Company's preferred stock" and "cash flow from operations" information. TAC ¶ 48. That amendment, however, does nothing to address the deficiency identified by the Court: plaintiffs still fail to allege any facts to support the argument that Century's management "had any factual basis for knowing that GAAP required that the one-time transaction" with Glencore to be classified differently until they were alerted to it by Century's outside auditors. April 27, 2010 Order at 11.

The major additions to the TAC with respect to the Exchange Act claims are mostly general

---

[4] With respect to two of the individual defendants, Willy R. Strothotte and Michael A. Bless, plaintiffs also add allegations that both were familiar with the Glencore forward sales contracts, the unwinding of those contracts, and Glencore's subsequent increased stake in Century Aluminum. *See* TAC ¶¶ 40, 44. In general, these allegations are made in an attempt to show that the defendants who signed the 2007 and 2008 10-Ks and the 2008 10-Qs should have known how the Glencore hedges were accounted for prior to their termination and, therefore, should have spotted the accounting error after the hedges were terminated. *See* Oppo. at 9-10. However, there are no allegations explaining why any of the defendants should have known that the Statement of Financial Accounting Standards No. 95 required the one-time transaction with Glencore following the termination to be classified in a specific way.

5

background facts, with additional citations to disclosures the company made to analysts, quotes from some of the individual defendants regarding the termination of the hedges, and additional information regarding the further decrease in the value of aluminum. *See* TAC ¶¶ 54-56, 61, 64-66, 68. These allegations, however, add nothing new to the complaint much less anything that would support a finding of scienter with respect to the specific knowledge on the part of identified individual defendants as to how the Glencore transaction should have been classified under the Statement of Financial Accounting Standards No. 95.

The other allegations added to the TAC to support the Exchange Act claims suffer from the same deficiency. Plaintiffs add four paragraphs to the TAC discussing Century's January 2009 registration statement's use of a non-GAAP calculation of "Earnings before Interest, Taxes, Depreciation and Amortization," ("EBITA"). TAC ¶¶ 86-89. Plaintiffs allege that one of the most important line items that investors and shareholders look to in EBITA is the "Adjusted net cash provided by operating activities" line which, because of Century's accounting error, misled investors into thinking that the Company was liquid and had adequate cash on hand to satisfy short-term debts. *Id*. ¶¶ 87-88. These facts were, however, raised in plaintiffs' Opposition to defendants' Motion to Dismiss the FAC, and were not persuasive there. *See* Docket No. 75, at 7:14-8:10. More importantly, not only are these particular allegations irrelevant to scienter, there is no evidence that the restatement of the GAAP presentation would have had any effect on this non-GAAP calculation. Defendants explain that the non-GAAP calculation excluded non-recurring items, like the termination of the Glencore hedges, and therefore, would not have been altered by the restatement. Reply at 4:15-18.

Failing to allege facts to address the deficiencies found in the Court's prior Order, plaintiffs instead make arguments and cite case law that the Court has already reviewed and rejected.[5] As

---

[5] Plaintiffs cite three new cases that were not raised in their Opposition to the prior Motion to Dismiss. All three, however, are inapposite. In *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group*, 2010 U.S. Dist. LEXIS 53754, *19-21 (E.D. Wash. June 2, 2010), confidential witness statements and admissions from executives about their role in tracking the specific data at issue supported a "strong inference" of scienter. In *Burritt v. NutraCea*, 2010 U.S. Dist. LEXIS 17544, * 4-8 (D. Ariz. Feb. 24, 2010), plaintiffs' allegations about defendants' specific knowledge of accounting errors were based on confidential witness statements and admissions. Here, there are no confidential witnesses or admissions to support a claim that defendants knew how to account for the "touch-pass" transaction with Glencore. In *Hodges v. Akeena Solar, Inc*., 2010 U.S. Dist. LEXIS 68320, *16-17

plaintiffs have not provided any facts that would support an inference of scienter, the Court GRANTS the Century defendants' motion and DISMISSES the Section 10b-5 claim WITH PREJUDICE.

### B. Section 20(a) claim

As plaintiffs have failed to adequately allege a primary violation of Section 10b-5, plaintiffs' claim for "control person" liability under Section 20 is DISMISSED WITH PREJUDICE.

## II. Securities Act Claims

In the TAC, plaintiffs reallege their claims under Section 11 and Section 15 against all of the Century defendants and against the two Underwriter defendants.[6] In the April 27, 2010 Order, the Court dismissed the Section 11 claim for failure to allege facts to establish standing. The Court explained that to "have standing under Section 11, a plaintiff must have purchased stock in the offering at issue, or trace later-purchased stock back to that offering." *Id*. at 17. The Court found that plaintiffs "failed to plead any facts that might demonstrate that any of the shares they purchased can be traced to the offering, and instead the FAC only contains the boilerplate conclusion that plaintiffs purchased shares 'pursuant to or traceable to the Secondary Offering.'" *Id*. As the standing issue implicated the Court's subject matter jurisdiction, the Court reviewed evidence submitted by declaration from the Underwriter defendants noting that at the time of the secondary offering of 24,500,000 shares, there were already 49,052,692 common shares trading in the market, and noted that plaintiffs had not – either in their complaint or in their oppositions – articulated how they were going to separate out plaintiffs' shares from the 75 million in the market and show that plaintiffs' shares came from the Secondary Offering. *Id*. at 18.

---

(N.D. Cal. May 20, 2010), scienter was adequately pled against two defendants: the company's founder, who allegedly engaged in unusual stock sales that amounted to insider trading, and the CFO, who was not only intimately knowledgeable about the day to day operations of the company but also intimately involved in the financial statements and projections when misleading statements regarding a line of credit were made. Those facts bear no resemblance to the facts alleged here.

[6] The FAC also contained a Section 12(a)(2) claim against the same defendants, which was dismissed by the Court with leave to amend to allege plaintiffs' purchased in the secondary offering. Order at 17. That claim is omitted from the TAC.

7

The Court's Order also noted that at the hearing, plaintiffs counsel suggested it might be possible to trace plaintiffs' purchases. Order at 18, n.13. Specifically, plaintiffs' counsel suggested that, "you can ask for the original certificate and because all the stock is held in the street name, so you have to trace back through the street name and trace back through the broker. So there are ways to do it." Transcript 25:10-14. However, as the FAC did not contain any assertions explaining how plaintiffs' purchases were traceable, the Court dismissed the claim. Order at 18, n.13.

The Court rejected plaintiffs' argument that on a motion to dismiss, mere allegations that plaintiffs stock purchases are traceable to the offering will suffice in a secondary offering case, especially one where there were already 49 million shares in the market before the Secondary Offering. Instead, the Court found that as defendants raised serious questions about plaintiffs' standing, and whether plaintiffs' purchases will be traceable to the Secondary Offering, plaintiffs were required to plead specific facts showing that plaintiffs' purchases are traceable. *Id*.

Finally, as plaintiffs failed to allege a primary violation of the Securities Act, the Court dismissed the Section 15 claim for "control person" liability with leave to amend.

### A. Section 11 claim

In the TAC, plaintiffs failed to follow the Court's instruction to plead facts to show how plaintiffs will be able to establish that their purchases are traceable to the Secondary Offering. Instead, plaintiffs simply reassert – without facts to support – that they purchased securities directly traceable to Century's Secondary Offering. TAC ¶¶ 134, 136, 139, 142. Plaintiffs then incorporate information from plaintiffs' certifications (attached to the FAC and again to the TAC) about the dates on which they purchased Century securities. *Id*., ¶¶ 135, 137, 140, 143. Finally, plaintiffs Wexler, McNulty, and McClellan assert that they are "unaware of any information which would suggest that the shares that [plaintiff's] agent and broker purchased on his behalf were not either purchased directly or indirectly – or through intermediaries – from the Underwriter Defendants under the terms of the Secondary Offering." *See, e.g.*, ¶¶ 135, 141, 143.

Only plaintiff Abrams adds more specific facts. He asserts that he purchased the stock through his agent and broker – Vanguard Brokerage Services – whom he directed to purchase shares in the

8

1 Secondary Offering on his behalf. *Id.* ¶ 137. Abrams also alleged that Vanguard purchased the shares
2 directly through a third-party broker dealer, Citigroup, and that defendant Morgan Stanley was at all
3 times relevant to the complaint involved in a joint venture with Citigroup whereby the two entities were
4 "indistinguishable." *Id.* ¶ 138. Based on those facts, plaintiff Abrams states on information and belief
5 that his purchases were fulfilled by Morgan Stanley with stock directly issued in the Secondary
6 Offering. *Id.*

7 The defendants argue, and the Court agrees, that these additional allegations are not facts
8 showing how plaintiffs can establish that their shares are traceable to the Secondary Offering. Contrary
9 to the assertions made during the oral argument on the prior motion to dismiss, there are no explanations
10 of how, much less whether, the certificates for the purchases at issue have been located. Nor are there
11 any facts explaining how, if located, the certificates can be used to tie each plaintiff's purchase of
12 securities, out of a pool of 75 million shares, to one of the 24 million shares issued in the Secondary
13 Offering, much less one of the 11.3 million shares that were actually available to the public. *See*
14 Century RJN, Ex. 22 at 837 (noting that Glencore bought 13.2 million of the 24.5 shares in the
15 secondary offering). Indeed, even plaintiff Abrams fails to allege how he will establish that third-party
16 Citigroup, who was acting at the request of his brokerage service, actually purchased shares from its
17 supposed "joint-venturer" Morgan Stanley.[7]

18 Instead of providing the Court with facts explaining how they will trace their purchases to the
19 Secondary Offering, plaintiffs spend the vast majority of their Opposition explaining why this Court's
20 Order requiring plaintiffs' to allege facts as to how they will be able to trace the shares at issue was
21 wrong. Plaintiffs assert that "***no court has ever required this type of insurmountable evidentiary***
22 ***'showing' at the pleadings stage in order to plead a § 11 claim***." Oppo. to Underwriters' MTD at 1
23 (emphasis in original). Plaintiffs, however, ignore the case law the Court relied on in its Order. *See,*
24 *e.g., Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008) (rejecting plaintiffs'
25 argument that a mere allegation that shares will be "traceable" to a secondary offering is sufficient to

---

[7] Jill Ford and Scott A. Gregory declare that neither Vanguard Brokerage Service nor Citigroup were allocated any Century Aluminum stock in the offering and neither entity purchased any Century Aluminum stock from Credit Suisse or Morgan Stanley. *See* Ford Decl., ¶ 4; Gregory Decl., ¶ 5.

survive a motion to dismiss and requiring plaintiffs to plead "evidence" to show that the particular shares plaintiffs purchased in the aftermarket can be traced to a secondary offering); *see also Davidco Investors, LLC v. Anchor Glass Container Corp.*, 2006 U.S. Dist. LEXIS 11527 (M.D. Fla. Mar. 6, 2006) (dismissing Section 11 claim under Rule 12(b)(1) for lack of standing where plaintiff failed to provide evidence in support of his contention that the shares that he purchased are traceable to misleading prospectus); *Lilley v. Charren*, 936 F. Supp. 708, 716 (N.D. Cal. 1996) (finding allegation that plaintiffs purchased pursuant to IPO insufficient, and requiring plaintiffs to allege the specific dates and facts that establish the representative plaintiffs can trace their stocks where market contained both unregistered as well as registered shares issued pursuant to the IPO); *cf. In re Metro. Secs. Litig.*, 532 F. Supp. 2d 1260, 1281 (E.D. Wash. 2007) (in a case which did not involve secondary offering, court allowed plaintiffs to survive motion to dismiss based on allegation of "traceability," but as "standing is a jurisdictional issue," required plaintiffs to file "an amended certification for each proposed class representative tracing the representative's securities to one or more of the Registration Statements at issue" before moving for class certification).

Plaintiffs also ignore that post-*Twombly* and *Iqbal*, a formulaic recitation of the elements of a cause of action are insufficient and plaintiffs must allege facts sufficient to raise a right to relief above "the speculative level." *See, e.g., Twombly*, 550 U.S. at 555. Here the Court has not asked plaintiffs to plead facts that prove their securities are traceable to the secondary offering here, but to plead facts showing how their shares can be traced. *See* Order at 18 ("Plaintiffs have neither alleged in the FAC, nor have they articulated in their oppositions, how to trace any particular shares in the 75 million share pool that existed after the secondary offering to show that those shares came from the secondary offering.").[8]

Plaintiffs' citations to "a number of recent decisions in which court analyzed [the] precise issue,"

---

[8] While plaintiffs have cited cases holding that, at the pleading stage, mere allegations that shares will be traceable are sufficient to state a claim in a secondary offering case, those cases were decided before *Twombly* and *Iqbal*. *See, e.g.*, *In re SeeBeyond Techs. Corp. Secs. Litig.*, 266 F. Supp. 2d 1150, 1171-1172 (C.D. Cal. 2003); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003) *In Re Sterling Foster & Co.*, 222 F. Supp. 2d 216, 247-248 (E.D.N.Y. 2002); *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 557 (D. Colo. 1998)

that in ruling on a motion to dismiss under Section 11 standing is to be judged solely on the allegations of the complaint, are likewise off the mark. *See* Oppo at 9:9-10:3. The first case relied on by plaintiffs, *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002), dealt with tolling Section 11 claims to allow a new representative plaintiff to enter the case, and did not address the issue of whether Section 11 standing must be judged solely on the pleadings. The Court did, however, decide that the issue of plaintiff's standing for his individual claims under Section 11 could not be addressed on a Rule 23(f) petition, where Rule 23(f) limited the Court's jurisdiction to review of the class certification decision. *Id*. at 389-90.

The second case plaintiffs cite, *Levine v. AtriCure, Inc*., 594 F. Supp. 2d 471 (S.D.N.Y. 2009), addressed whether or not plaintiffs had adequately alleged "loss causation" for their Section 11 claim to establish that they suffered an "injury in fact" traceable to defendants' conduct that would satisfy constitutional standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *Id*. at 476. The "traceability" being discussed by the *Levine* Court, therefore, is *Lujan's* "traceable injury in fact," which was satisfied by plaintiffs' allegations of loss causation under Section 11. In other words, the Court held that plaintiffs satisfied the constitutional standing requirements by pleading injury in fact based on their statutory allegation of loss causation. *Levine* did not address "traceability" of shares required to establish standing under Section 11, much less whether a Court is required on a Rule 12(b)(1) challenge to determine standing solely on the allegations in the complaint.

In the final case plaintiffs cite, *In re Thornburg Mortg., Inc*., 683 F. Supp. 2d 1236 (D.N.M. 2010), the Court determined that all plaintiffs had Article III standing to pursue claims against all nine defendants, even though plaintiffs apparently lacked statutory standing for their Section 11 and Section 12(a)(2) claims against three of the nine defendants involved because no named plaintiff purchased shares in the two offerings underwritten by those three defendants. *Id*. at 1254-55. The Court concluded that as the claims arising from the two offerings underwritten by the three defendants "appear to be part of the same common nucleus of operative fact as the claims arising from" the other offerings at issue, and as "all are related to the same series of SEC filings by the same company, and so the claims all appear to be part of the same case or controversy," the Court decided to exercise supplemental jurisdiction over the statutory claims against the three defendants. *Id*. Even if this Court agreed with

11

the jurisdictional analysis of the *Thornburg* Court, that case is unlike this one for a significant reason: here no plaintiff has established standing against *any* of the Century or Underwriter defendants because they have not adequately alleged how they intend to trace their stocks to the Secondary Offering as required under Section 11.

Plaintiffs' repeated assertion that it is "well-settled" that aftermarket purchasers are provided standing to sue under Section 11 – and their reliance on *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080 (9th Cir. 1999) – does not provide support for their position that standing has been adequately alleged in *this* case. *See* Oppo at 2:4-12 & n. 6 (citing cases). Indeed in *Hertzberg*, the Court adopted the now-unremarkable position that "any person" can sue under Section 11 where there is only one misleading registration statement at issue, "regardless of whether he bought in the initial offering, a week later, or a month after that." *Hertzberg*, 191 F.3d at 1080. However, the Court noted that the standing issue, "may present a problem of proof in a case in which stock was issued under more than one registration statement." *Id*.

Given the particular facts of this case, where plaintiffs: (1) did not purchase shares in the Secondary Offering, but in the aftermarket; (2) purchased shares through brokers and brokers' third-parties, as opposed to through the underwriters; and (3) the market already contained 49 million shares when 11.3 million shares were made available to the public in the Secondary Offering, plaintiffs' naked allegations that their shares are "traceable" to the Secondary Offering are insufficient as a matter of law. Plaintiffs were given the opportunity to, but failed to explain in their TAC how they intended to trace their shares to the Secondary Offering. For the foregoing reasons, plaintiffs' Section 11 claim is DISMISSED WITH PREJUDICE.

### B. Section 15 claim

As plaintiffs have failed to allege a primary violation under Section 11, plaintiffs' Section 15 claim for "control person" liability must likewise be DISMISSED WITH PREJUDICE.

12

**III.     Century Defendants' Request for Judicial Notice and Plaintiffs' Motion to Strike**

Plaintiffs object to the Century defendants' Request for Judicial Notice [Docket No. 61] comprising exhibits 1 through 63, and the Century defendants' Second Supplemental Request for Judicial Notice [Docket No. 101], attaching exhibits 66 through 68. Plaintiffs specifically object to exhibits 54 - 60, and they argue that it is a waste of judicial resources to take judicial notice of exhibits 2, 9-16, 18-21, 23-29, 31, 33-53 and 67 because the exhibits are not referenced in the Century defendants' brief.[9]

With respect to exhibits 1 through 63, the Court has already granted the Century defendants' Request for Judicial Notice for those documents. *See* April 27, 2010 Order at 20. The Court sees no need to revisit that ruling. With respect to exhibit 67, the Court GRANTS the request for judicial notice of the primary aluminum price chart, as it simply updates prior exhibit 61 which the Court took judicial notice of. *Id*. As plaintiffs do not object to the request with respect to exhibits 66 and 68, the Court GRANTS the request for judicial notice as to those exhibits as well.

Plaintiffs' Motion to Strike is DENIED. The only sentence plaintiffs argue should be stricken is a sentence from the Century defendants' memorandum in support of their motion that relies on exhibits 54-60, which are various analyst reports and news articles that the Court took judicial notice of in its April 27, 2010 Order. Objection at 4:21-5:2. That sentence asserts: "The analysts who commented on Century during the weeks following March 2, 2009 talked about many things, but never once did any analyst who follows Century comment on the restatement." Motion at 5:12-14. Plaintiffs argue that the content of analyst reports are not an adjudicative fact proper for judicial notice. Objection at 5:1-2. However, courts routinely take judicial notice of analyst reports, not in order to take notice of the truth of the matters asserted therein, but in order to determine what may or may not have been disclosed to the public. As noted above, in ruling on the original Request for Judicial Notice, the Court took judicial notice of those reports only for purposes of noting what was or was not discussed in the public realm.

Finally, as all of the documents the Court has taken notice of are appropriate for judicial notice,

---

[9] Plaintiffs do not object to the Underwriter defendants' Request for Judicial Notice [Docket No. 108], and the Court hereby GRANTS that request.

13

1 the Court denies plaintiffs' renewed request to convert defendants' motion to dismiss into a motion for
2 summary judgment. *See e.g.*, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064
3 & n.7 (9th Cir. 2008) (taking judicial notice of publicly-available indices and SEC filing); *In re*
4 *Rackable Sys.*, 2010 U.S. Dist. LEXIS 88927 (N.D. Cal. August 27, 2010) (taking judicial notice of
5 conference call statements, press releases, analyst reports and news articles, not for purposes of noticing
6 the truth of the matters asserted, but for noticing disclosures).

**IV.    Plaintiffs' Motion to Strike**

Plaintiffs also move to strike and ask the Court to disregard the declarations of Jill Ford [Docket No. 107], Ryan E. Fitzpatrick [Docket No. 105], and Scott A. Gregory [Docket No. 106] filed by the Underwriter defendants in support of their motion to dismiss. Plaintiffs' primary argument is a repeat of their assertion that in determining standing under a federal statute, like Section 11, courts are limited to considering the allegations in the complaint alone and are not allowed to look at outside evidence, even on a motion to dismiss brought under Rule 12(b)(1). Plaintiffs cite *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003), but that case dealt only with a facial attack on plaintiffs' standing which necessarily had to be resolved solely on the allegations in the complaint. Warren did not address a Rule 12(b)(1) subject matter jurisdiction challenge based on extrinsic evidence submitted by the moving party. *Cf.*, *Warren* 328 F.3d at 1139 (noting that a jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence).

Plaintiffs also reiterate their argument that the question of standing under Section 11 of the Securities Act does not implicate or undermine this Court's subject matter jurisdiction and, therefore, the declarations which support defendants' challenge to plaintiffs' standing should be ignored. The Court, as discussed above, rejects that argument.

Plaintiffs do not attack specific portions of any of the declarations, or explain why any of the declarations or the exhibits attached thereto are not otherwise relevant to the issue of plaintiffs' standing

under Section 11. As such, the Court DENIES plaintiffs' motion to strike.[10]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss and DISMISSES plaintiff's Third Amended Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: March 3, 2011

SUSAN ILLSTON
United States District Judge

---

[10] As the Court has granted defendants' motions to dismiss, the Underwriters' Motion to Strike the class allegations from the TAC [Docket No. 103] is DENIED as moot.